Matthew B. Hayhurst
Randy J. Tanner
BOONE KARLBERG P.C.
201 West Main, Suite 300
P.O. Box 9199
Missoula, MT 59807-9199
(406) 543-6646
mhayhurst@boonekarlberg.com
rtanner@boonekarlberg.com

*Attorneys for Defendants Jennings Law Office, P.C.;
Wayne Jennings; and Amy Hanson*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| PETER THOMPSON,<br><br>                Plaintiff,<br><br>        v.<br><br>CITY OF BOZEMAN, a Montana Municipal Corporation, et al.,<br><br>                Defendants. | CV 18–75–BU–BMM–JCL<br><br><br>**DEFENDANTS JENNINGS LAW OFFICE, P.C.; WAYNE JENNINGS; AND AMY HANSON'S BRIEF IN SUPPORT OF MOTION TO DISMISS** |

# TABLE OF CONTENTS

BACKGROUND ............................................................................................. 2

STANDARD .................................................................................................5

I.      Rule 12(b)(6).................................................................................5

II.     Rule 12(b)(5).................................................................................7

ANALYSIS....................................................................................................7

I.      Thompson's claims against Jennings should be dismissed with
        prejudice under Rule 12(b)(6)....................................................7

        A.      Thompson has no claim for abuse of process or malicious
                prosecution............................................................................ 7

        B.      Thompson has no claim for a § 1983 civil rights conspiracy...... 12

        C.      Thompson's claims are barred by res judicata and the
                *Rooker-Feldman* doctrine...........................................................17

                1.      Thompson's claims are barred by res judicata........................18

                2.      Thompson's claims are barred by *Rooker-Feldman*.............22

        D.      Thompson's claims are barred by the statute of limitations......23

II.     Alternatively, Thompson's First Amended Complaint is untimely
        and should be dismissed under Rule 12(b)(5)...................................26

CONCLUSION................................................................................... 28

CERTIFICATE OF COMPLIANCE.......................................................... 29

# TABLE OF AUTHORITITES

## Cases

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................ 5, 6, 11

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................... 5, 6

*Blum v. Barrett Hosp. Dev. Corp.*,
2016 U.S. Dist. Lexis 186199 (D. Mont. Sept. 30, 2016) ................................. 7

*Brault v. Smith*,
679 P.2d 236 (Mont. 1984)................................................................ 8, 9, 10

*Bray v. Alexandria Women's Health Clinic*,
506 U.S. 263 (1993) ........................................................................ 12

*Brockmeyer v. May*,
383 F.3d 798 (9th Cir. 2004) ................................................................. 7

*Cattail Creek Community Association v. Peter Thompson*,
DV–15–636CX (Mont. 18th Jud. Dist.) ........................................................ 2

*Chao v. A-One Medical Services*,
346 F.3d 908 (9th Cir. 2003) ............................................................... 18

*Cheetham v. Swanson*,
2010 U.S. Dist. Lexis 133037 (D. Mont. Dec. 16, 2010)................................. 24

*Christian v. Atl. Richfield Co.*,
358 P.3d 131 (Mont. 2015) ................................................................. 24

*Clemens v. Wells Fargo Bank, N.A.*,
2014 U.S. Dist. Lexis 178025 (D. Kan. Dec. 30, 2014) ................................. 18

*Fairbank v. Underwood*,
986 F. Supp. 2d 1222 (D. Or. 2013) ........................................................ 7

*Fischer v. Ocwen Loan Servicing, LLC*,
2014 U.S. Dist. Lexis 164767 (D. Mont. Nov. 25, 2014) ................................. 2

*Franklin v. Fox*,
312 F.3d 423 (9th Cir. 2002) .................................................................. 14, 15

*Griffin v. Breckenridge,*
403 U.S. 88 (1971) ........................................................................ 12

*Guillen v. Callaghan*,
2013 U.S. Dist. Lexis 182670 (D. Mont. Dec. 5, 2013).................................15

*Harmston v. City and County of San Francisco*,
627 F.3d 1273 (9th Cir. 2010)........................................................... 12

*Hart v. Parks*,
450 F.3d 1059 (9th Cir. 2006) ........................................................ 14

*Henry v. Farmer City State Bank*,
808 F.2d 1228 (7th Cir. 1986) ........................................................ 18

*Jonas v. Jonas*,
2014 U.S. Dist. Lexis 32923 (D. Mont. March 12, 2014) ..............18, 19, 20, 23

*Kamal v. County of L.A.*,
2018 U.S. Dist. Lexis 153157 (C.D. Cal. Sept. 6, 2018) ................................. 16

*Kawelo v. Nationstar Mortgage LLC*,
2018 U.S. Dist. Lexis 155141 (D. Hawaii Sept. 12, 2018) .............................. 18

*Kimes v. Stone*,
84 F.3d 1121 (9th Cir. 1996) .........................................................13

*Kirtley v. Rainey,*
326 F.3d 1088 (9th Cir. 2003) .......................................................15

*Laforge v. Down*,
2018 U.S. Dist. Lexis 102478 (D. Mont. May 4, 2018) ...................... 13, 15, 16

iv

*Looman v. State*,
2012 WL 6775021 (D. Mont. Nov. 30, 2012). ................................................ 26

*McAlpin v. Schweitzer*,
2012 U.S. Dist. Lexis 163527 (D. Mont. Nov. 15, 2012) ................................. 24

*McCalden v. California Library Association*,
955 F.2d 1214 (9th Cir. 1990), ......................................................................... 12

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
521 F.3d 1097 (9th Cir. 2008) ............................................................................ 6

*Naruto v. Slater*,
888 F.3d 418 (9th Cir. 2018) ............................................................. 18, 20, 22

*Newell v. Lake Co./Lake Co. Ct.*,
2010 U.S. Dist. Lexis 17581 (D. Mont. Feb. 24, 2010) ................................... 23

*Noel v. Hall*,
341 F.3d 1148 (9th Cir. 2003) ...................................................................... 22, 23

*Norbeck v. Flathead Co.*,
2019 MT 84 (Mont. 2019) ................................................................................. 24

*Oram v. City of Dillon*,
2016 U.S. Dist. Lexis 176043 (D. Mont. Dec. 2016) ...................................... 14

*Pfau v. Mortensen*,
858 F. Supp. 2d 1150 (D. Mont. 2012) .............................................................. 6

*Plotner v. AT&T Corp.*,
224 F.3d 1161 (10th Cir. 2000) ......................................................................... 18

*Plouffe v. Mont. DPHHS*,
45 P.3d 10 (Mont. 2002) ..................................................................................... 9

*Pochiro v. Prudential Ins. Co.*,
827 F.2d 1246 (9th Cir. 1987) ...................................................................... 20, 22

*Redman v. Bank of Am., N.A.,*
2015 U.S. Dist. Lexis 175743 (D. Mont. Oct. 7, 2015) ...................................... 3

*Reusser v. Wachovia Bank, N.A.,*
525 F.3d 855 (9th Cir. 2008) .............................................................. 22, 23

*Ruiz v. Snohomish Co. Public Utility Dist. No. 1,*
824 F.3d 1161 (9th Cir. 2016) ................................................................ 18

*Salminen v. Morrison & Frampton, PLLP,*
339 P.3d 602 (Mont. 2014) ..................................................................... 8

*Schucker v. Rockwood,*
846 F.2d 1202 (9th Cir. 1988 ................................................................. 15

*SEC v. Ross,*
504 F.3d 1130 (9th Cir. 2007) ............................................................ 7, 27

*Seipel v. Olympic Coast Investments,*
188 P.3d 1027 (Mont. 2008) ............................................................... 9, 10

*Spoja v. White,*
317 P.3d 153 (Mont. 2014) ..................................................................... 9

*Spreadbury v. Bitterroot Public Library,*
2011 U.S. Dist. Lexis 115651 (D. Mont. July 21, 2011) .........................15, 16, 17

*Thompson v. City of Bozeman et al.,*
CV–15–79–BU–BMM–JCL ................................................................... 27

*Thompson v. Coulter et al.,*
CV–10–27–BLG—RFC........................................................................ 27

*TwoRivers v. Lewis,*
174 F.3d 987 (9th Cir. 1999)................................................................. 24

*Weilburg v. Shapiro,*
488 F.3d 1202 (9th Cir. 2007) ....................................................... 10, 22, 25

## **Statutes**

42 U.S.C. § 1983.....................................................................................1, 12, 14
42 U.S.C. § 1985 ............................................................................................ 12
42 U.S.C. § 1986 ............................................................................................ 12
42 U.S.C. § 1988 ............................................................................................12
Mont. Code Ann. § 27−2−204(1) ...........................................................23-24
Mont. Code Ann. § 27−2−102(1)(a) ........................................................... 24

## **Rules**

Fed. R. Civ. P. 4 (m)................................................................................... 2, 27
Fed. R. Civ. P. 9(b)...........................................................................................13
Fed. R. Civ. P. 12(b)(5) ........................................................................ *passim*
Fed. R. Civ. P. 12(b)(6) ........................................................................ *passim*

## **Other Authorities**

Thayer, Ernest L., "Casey at the Bat," *The Daily Examiner*
(June 3, 1888)...................................................................................................17

Defendants Jennings Law Office, P.C.; Wayne Jennings; and Amy Hanson (collectively, "Jennings") move to dismiss with prejudice Plaintiff Peter Thompson's claims against Jennings.  Thompson alleges claims against Jennings for abuse of process, malicious prosecution, and civil rights conspiracy under 42 U.S.C. § 1983.

All of Thompson's allegations arise from an underlying state-court action between Thompson and the homeowners association to which he belonged—Cattail Creek Community Association.  Jennings represented the Association in the underlying action, and Amy Hanson is the legal assistant for the Jennings firm.  The Association prevailed in that action.

Through this case, Thompson is simply attempting to relitigate issues that either were addressed or raise issues that could have been addressed in the underlying action.  He cannot plead facts to establish the essential elements of those claims, and they are otherwise barred by res judicata, *Rooker-Feldman*, and the statute of limitations.  For these reasons and others, Thompson has failed to state a claim for which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6).

The claims against Jennings should be dismissed with prejudice because none of the deficiencies in Thompson's First Amended Complaint can be cured by amendment.  Alternatively, the First Amended Complaint

should also be dismissed with prejudice because it was not timely served.
*See* Fed. R. Civ. P. 4(m); 12(b)(5).

## BACKGROUND

Although Thompson has sued more than 50 different persons and
entities and filed a 104-page First Amended Complaint, the core facts related
to Jennings are straightforward and judicially established.  Thompson's
allegations against Jennings arise solely and exclusively out of a dispute that
was litigated in state court in Bozeman, Montana, before Judge Rienne
McElyea—*Cattail Creek Community Association v. Peter Thompson*,
DV–15–636CX (Mont. 18th Jud. Dist.).  In that underlying action, Cattail
Creek Community Association, a homeowners association (referred to as
"HOA" in this brief), was forced to seek relief from the state court because
Thompson repeatedly violated the HOA Covenants and failed to pay his
HOA dues.  Jennings represented the HOA in the underlying action.

An affidavit from Wayne Jennings, attesting to the authenticity of
certain filings in the underlying action is attached as **Exhibit 1**.  *See Fischer
v. Ocwen Loan Servicing, LLC*, 2014 U.S. Dist. Lexis 164767 (D. Mont.
Nov. 25, 2014) (taking judicial notice of state court filings supported by
declaration of authenticity).  A copy of the HOA's Complaint in the
underlying action is attached to the Affidavit of Wayne Jennings as

**Exhibit A**.  The case was tried at a bench trial before Judge McElyea, and a copy of her Findings of Fact and Conclusions of Law are attached to the Affidavit of Wayne Jennings as **Exhibit B**.  Jennings requests the Court take judicial notice of these and other filings in the underlying state-court action.[1]

The HOA's Complaint in the underlying state-court action explains why it was forced to seek relief from the Court.  Thompson owned real estate in the Cattail Creek Subdivision near Bozeman on which he planned to build a house.  (Ex. A, ¶ 4.)  The HOA approved Thompson's building plans, and Thompson began construction in spring 2008.  (Ex. A, ¶ 7.)  The Design Regulations in the HOA Covenants required Thompson to complete his construction within one year after the building plans were approved.  (Ex. A, ¶ 9.)  Despite repeated demands that Thompson complete the construction, Thompson still had not done so by spring 2015, approximately six years after he was supposed to complete the project.  (Ex. A, ¶¶ 11–16.)  Thompson also had neglected or refused to pay his HOA dues.  (Ex. A, ¶¶ 19–22.)  And he refused to move a horse trailer he had parked in his front or side yard, in

---

[1] The Court may take judicial notice of these documents and consider them in ruling on Jennings' motion to dismiss.  *Redman v. Bank of Am., N.A.*, 2015 U.S. Dist. Lexis 175743 (D. Mont. Oct. 7, 2015) ("In considering a Rule 12(b)(6) motion to dismiss, the court may consider matters of which it may take judicial notice . . . .  [T]he court may take judicial notice of documents on file in federal or state courts." (citations and internal quotation marks omitted)).

violation of the HOA Covenants, despite repeated requests to do so.  (Ex. A, ¶ 24.)

Following a bench trial, Judge McElyea issued Findings of Fact and Conclusions of Law entirely in favor of the HOA, Jennings' client.  (Ex. B.) Judge McElyea found that Thompson had repeatedly been uncooperative with the HOA and its attempt to work with Thompson to bring him into compliance with the HOA Covenants.  (Ex. B, pp. 24–25.)  As Judge McElyea observed, Thompson rebuffed the HOA's efforts and instead claimed the HOA was "a terrorist group and indicated he would not voluntarily comply with the covenants."  (Ex. B, p. 14.)  Judge McElyea found that the HOA had given Thompson several opportunities to comply with the Covenants and that the HOA had, in fact, reasonably delayed the litigation, hoping that Thompson would comply.  (Ex. B, p.  25.)  Judge McElyea concluded, "[U]ntil he is forced to do so, Mr. Thompson will not complete his exterior construction."  (Ex. B, p. 26.)  Judge McElyea issued an injunction in the HOA's favor, requiring Thompson to complete the work on his house within 90 days or vacate the premise.  (Ex. B, pp. 26–27.)  She also awarded the HOA its attorney's fees and costs.  (Ex. B, p. 27.)  Thompson appealed Judge McElyea's decision, and that appeal is currently pending before the Montana

Supreme Court.  (*See* Notice of Appeal and docket sheet, attached to the Affidavit of Wayne Jennings as **Exhibit C**.

Thompson filed this lawsuit on November 30, 2018.  (Doc. 1.)  All of his claims arise directly from the underlying state-court action that he lost. Generally speaking, Thompson claims that Jennings improperly litigated the underlying action and conspired with others in doing so.  Thompson's allegations are nothing more than a rehashing of issues that either were raised below or could have been raised below.  The claims fail for a host of reasons, and Jennings respectfully requests they be dismissed with prejudice.

**STANDARD**

Jennings moves to dismiss Thompson's Complaint under both Rule 12(b)(6) (failure to state a claim for which relief may be granted) and 12(b)(5) (insufficient service of process).

## I.    Rule 12(b)(6)

Under Rule 12(b)(6), a complaint must be dismissed if it fails to state a claim for which relief may be granted.  In *Iqbal* and *Twombly*, the United States Supreme Court established a two-step process for determining whether a complaint fails to state a claim.  *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

5

In the first step, the court determines which allegations are merely "labels and conclusions," "formulaic recitations," or "naked assertion[s]." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557).  The reviewing court need not accept the truth of such allegations.  *Id.* Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.*

The second step requires the court to determine whether the remaining allegations "plausibly give rise to an entitlement to relief."  *Id.* at 679.  When determining plausibility, the court "is required to engage in a context-specific task drawing on the court's 'judicial experience and common sense.'"  *Pfau v. Mortensen*, 858 F. Supp. 2d 1150, 1152 (D. Mont. 2012) (quoting *Iqbal*, 556 U.S. at 679).  A claim is plausible only when the court can draw a "reasonable inference" from the facts alleged that the defendant is liable for the misconduct alleged.  *Iqbal*, 557 U.S. at 679.

In other words, dismissal is required "where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not shown-that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679.

## II.   Rule 12(b)(5)

Under Rule 12(b)(5), a complaint must be dismissed if service of process was insufficient.  *Blum v. Barrett Hosp. Dev. Corp.*, 2016 U.S. Dist. Lexis 186199, at *5 (D. Mont. Sept. 30, 2016).  "Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4."  *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004).  "[I]n the absence of proper service of process, the district court has no power to render any judgment against the defendant's person or property unless the defendant has consented to jurisdiction or waived the lack of process."  *SEC v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007).  "'The court may consider evidence outside the pleadings in resolving a Rule 12(b)(5) motion.'"  *Blum*, 2016 U.S. Dist. Lexis 186199, at *4–*5 (quoting *Fairbank v. Underwood*, 986 F. Supp. 2d 1222, 1228 (D. Or. 2013)).

## ANALYSIS

### I.   Thompson's claims against Jennings should be dismissed with prejudice under Rule 12(b)(6).

#### A.   Thompson has no claim for abuse of process or malicious prosecution.

Thompson's abuse of process claim against Jennings (which he alternatively pleads as malicious prosecution) boils down to three allegations.  First, Thompson argues Jennings and other defendants

7

committed abuse of process by using the underlying state-court action to force Thompson to pay his HOA dues.  (Doc. 9, ¶¶ 169–71.)  Second, Thompson argues Jennings and others "maliciously burden[ed]" him with litigation rather than properly inviting him to participate in "mediation," as "recommended" by the HOA covenants.  (Doc. 9, ¶ 173–74.)  Finally, Thompson claims Jennings and others committed abuse of process by using the underlying state-court action to retaliate against Thompson because Jennings and others feared Thompson would "expose them and their skullduggery."  (Doc. 9, ¶ 175.)

Under Montana law, there are "two essential elements" for an abuse of process claim: "(1) "willful use of process not proper in the regular conduct of the proceeding" and (2) "that the process was used for an ulterior purpose." *Salminen v. Morrison & Frampton, PLLP*, 339 P.3d 602, 610 (Mont. 2014).  In order to constitute abuse of process, "[t]he legal process must be put to a use perverted beyond its intended purpose." *Id.* (citation and internal quotation marks omitted).  "Pressing valid legal claims to their regular conclusion, even with an ulterior motive, does not by itself constitute abuse of process." *Brault v. Smith*, 679 P.2d 236, 240 (Mont. 1984).  In other words, if a plaintiff's abuse of process claim is based solely on a "valid

8

legal claim" made by the defendant, then the abuse of process claim fails as a matter of law.  *See id.*

The elements of malicious prosecution are similar but somewhat more specific:

> (1) a judicial proceeding was commenced and prosecuted against the plaintiff;
>
> (2) the defendant was responsible for instigating, prosecuting or continuing the proceeding;
>
> (3) the defendant acted without probable cause;
>
> (4) the defendant was actuated by malice;
>
> (5) the judicial proceeding terminated favorably for plaintiff; and
>
> (6) the plaintiff sustained damages.

*Seipel v. Olympic Coast Investments*, 188 P.3d 1027, 1029 (Mont. 2008); *see also Plouffe v. Mont. DPHHS*, 45 P.3d 10, 14 (Mont. 2002).  "[I]f one element of malicious prosecution is not proven by prima facie evidence, judgment as a matter of law is warranted." *Spoja v. White*, 317 P.3d 153, 156 (Mont. 2014).

Taken together, the elements for both an abuse of process claim and a malicious prosecution claim make one thing abundantly clear: If the claims in the underlying case were valid and successful, a later claim for abuse of process or malicious prosecution fails as a matter of law.  That is precisely

the situation here.  Judge McElyea specifically found that the claims of

Jennings' client were both factually and legally meritorious.  The case ended

successfully for the HOA and, by extension, Jennings, not Thompson.

The HOA "[p]ress[ed] valid legal claims to their regular conclusion" and

prevailed.  *See Brault*, 679 P.2d at 240.  There are, therefore, no set of facts

that would change this fatal deficiency in Thompson's abuse of process

and malicious prosecution claims.  *See id.*; *Seipel*, 188 P.3d at 1029.

Consequently, these claims should be dismissed with prejudice.

*See Weilburg v. Shapiro*, 488 F.3d 1202, 1205 (9th Cir. 2007) (holding that

a pro se plaintiff's complaint should be dismissed with prejudice when it is

""absolutely clear that the deficiencies of the complaint could not be cured by

amendment.").

     Moreover, Thompson's claims do not meet the pleading standards

articulated in *Iqbal* and *Twombly*.  All Thompson has done is levy general

allegations of wrongdoing without providing sufficient factual details to

support those allegations.  Thompson, for instance, argues Jennings and

other defendants filed the underlying state-court action to force him to pay

the HOA dues, but he offers no explanation at all for why the underlying

action was improper or why the HOA dues were not owed.  In fact, the HOA

10

(Jennings' client), prevailed in the underlying action, and Thompson paid the HOA dues during those proceedings.  (Ex. B, pp. 17, 23.)

Thompson also alleges Jennings and others "maliciously burden[ed]" him with litigation rather than properly inviting him to participate in "mediation," as "recommended" by the HOA covenants.  (Doc. 9, ¶ 173–74.) Thompson raised this issue with Judge McElyea, and she found that Jennings had done nothing wrong.  Jennings sent Thompson an invitation to mediate the dispute via certified mail but, as Judge McElyea found, "Mr. Thompson testified he refuses to accept certified return receipt letters because they are an inconvenience to him."  (Ex. B, p. 17.)

Finally, Thompson alleges the underlying state-court action was retaliatory, but he offers no facts all to support that allegation.  He simply makes a blanket allegation of "skullduggery" without any basis.

The bottom line is that Thompson's allegations against Jennings are nothing more "than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *See Iqbal*, 556 U.S. at 678.  There is no way to draw a "reasonable inference" from Thompson's allegations that Jennings engaged in any misconduct, and the abuse of process and malicious prosecution claims should therefore be dismissed with prejudice.  *Id.* at 679.

## B.    Thompson has no claim for a § 1983 civil rights conspiracy.

In Count Six, Thompson claims Jennings and other defendants engaged in an unlawful "civil rights conspiracy."  (Doc. 9, ¶¶ 176–78.)  While Thompson does not say so expressly, his conspiracy claim appears to be alleged under § 1983 because he argues Jennings and the other defendants conspired to violate his civil rights under "color of law."[2]  (Doc. 9, ¶ 177.)

---

[2] Thompson references 42 U.S.C. §§ 1985, 1986, and 1988 in his First Amended Complaint, but he does not assert those claims against Jennings (or any defendant, specifically).  Nor could he assert those claims.

As U.S. Bank writes in support of its motion to dismiss (Doc. 17), § 1985 addresses several broad areas of conspiratorial conduct that are not applicable here, including conspiracy to interfere with the performance of duties by federal officers and the administration of federal courts.  42 U.S.C. §1985(1), (2).  The only remotely plausible basis for Thompson's § 1985 claim is § 1985(3), which prohibits persons from conspiring "for the purpose of depriving, either directly or indirectly, any person or class of persons equal protection under the laws."  42 U.S.C. § 1985(3).  Section 1985(3), however, is not intended to serve as a "general federal tort law."  *Griffin v. Breckenridge,* 403 U.S. 88, 102 (1971).  In order to state a claim for a private conspiracy under this part of § 1985(3), the plaintiff must allege, among other things, that the conspiracy was: (1) motivated by a class-based invidiously discriminatory animus; and (2) aimed at interfering with rights that are protected against private, as well as official, encroachment.  *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 267–68 (1993) (internal quotations and citations omitted).  Thompson makes no attempt at all to plead these allegations, so his claim fails.

Since Thompson's § 1985 claim fails, so too does his claim under § 1986.  A viable claim under § 1985 is a necessary predicate for establishing liability under § 1986.  *McCalden v. California Library Association,* 955 F.2d 1214, 1223 (9th Cir. 1990), *superseded by rule on other grounds as stated in Harmston v. City and County of San Francisco,* 627 F.3d 1273, 1279–80 (9th Cir. 2010).  U.S. Bank makes the same arguments in its motion to dismiss, and Jennings joins in and adopts all of those arguments by reference.

Finally, § 1988 does not provide a cause of action.  The statute relates to the applicability of statutory and common law in matters litigated under Title 42, Chapter 21 of the United States Code, as well as attorney's fees and expert fees.  To the extent Thompson is making a claim for attorney's fees under § 1988, he is not entitled to an award of fees because he is appearing pro se and, for the reasons explained throughout this brief, he cannot be a prevailing party.

Thompson claims Jennings engaged in a conspiracy through his representation of the HOA in the underlying state-court action.  (Doc. 9, ¶ 176.)  Thompson lists a variety of actions Jennings and other defendants purportedly took or did not take in the underlying state-court action, which constitute the alleged conspiracy:

- not meeting and conferring with Thompson in the underlying state-court action on scheduling matters,

- preventing the court from considering Thompson's counterclaims and third-party claims,[3]
- not meeting and conferring to establish undisputed facts prior to trial,

- committing fraud upon the court at the hearing on awarding costs,[4]

- not providing the proposed findings of fact and conclusions of law soon enough, and

---

[3] Thompson makes this allegation in paragraph 178 of his First Amended Complaint and cites *Kimes v. Stone*, 84 F.3d 1121 (9th Cir. 1996) for the proposition that "[p]rivate parties who corruptly conspire with [a] judge in conjunction with the judge's performance of official act are acting under color of state law for purposes of federal civil rights statute[s], even if [the] judge himself is immune from civil liability."  Even if it's theoretically possible for a private attorney and judge to conspire under § 1983, Thompson has pleaded no such conspiracy.  Thompson lays out the entire basis of this claim in the excerpted transcript in ¶ 178.  The alleged wrongdoing occurred when the Judge McElyea asked Jennings whether he believed Thompson's purported counterclaims were, in fact, counterclaims.  Jennings responded, "I believe at best they rise to the level of affirmative defenses Your Honor."  (Doc. 9, ¶ 178.)  An attorney does not commit civil conspiracy by simply responding to a question asked by a judge.  *See Laforge v. Down*, 2018 U.S. Dist. Lexis 102478, *8 (D. Mont. May 4, 2018) ("An attorney's role in representing a client in civil litigation and invoking state legal procedures does not constitute 'joint action' or 'conspiracy' with state officials sufficient to satisfy section 1983's state action requirement." (citation omitted)).  Thompson has not alleged any of his constitutional rights were violated by this exchange between Jennings and the Judge McElyea or that there was any "meeting of the minds" to violate Thompson's constitutional rights.  Nor could he.  This allegation therefore fails.

[4] This claim also fails because Thompson has not pleaded the nine elements of fraud with particularity, as required by Rule 9(b).

- offering proposed findings of fact and conclusions of law without allowing Thompson to cross-examine witnesses.

(Doc. 9, ¶ 177.)

Contrary to Thompson's allegations, Jennings did not engage in a "conspiracy" by litigating the underlying state-court action. Jennings pursued valid legal claims in the underlying state-court action, and his client prevailed. Moreover, as explained in more detail below, Thompson's complaints about procedural matters in the underlying state-court action could have been and should have been addressed in that action, not this one. They are therefore barred by res judicata and *Rooker-Feldman*. Nevertheless, even assuming Thompson's claims are not barred, Thompson has failed to allege a colorable civil conspiracy claim under § 1983.

A plaintiff alleging a civil rights conspiracy under § 1983 must establish "an agreement or 'meeting of the minds' to violate constitutional rights" and "an actual deprivation of constitutional rights." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002); *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006); *see Oram v. City of Dillon*, 2016 U.S. Dist. Lexis 176043, at *6 (D. Mont. Dec. 2016) ("In the absence of an underlying violation of a federal or constitutional right actionable under 42 U.S.C. § 1983, a theory of liability alleging defendants conspired to violate a person's constitutional rights lacks viability.").

A private party, like Jennings, may be liable under § 1983 for a civil conspiracy <u>only</u> if the private party "conspired or entered joint action with a state actor." *Franklin*, 312 F.3d at 441.  More specifically, the plaintiff must show the state actor became "interdependent with a private actor, and accept[ed] the benefits of the private actor's conduct." *Laforge v. Down*, 2018 U.S. Dist. Lexis 102478, at *8 (D. Mont. May 4, 2018) (citing *Kirtley v. Rainey*, 326 F.3d 1088, 1093 (9th Cir. 2003)).  Absent this showing, a § 1983 civil conspiracy claim against a private actor fails as a matter of law and must be dismissed.  *See, e.g.*, *Guillen v. Callaghan*, 2013 U.S. Dist. Lexis 182670, at *4–*6 (D. Mont. Dec. 5, 2013).

This Court, on multiple occasions, has dismissed § 1983 civil conspiracy claims made against private attorneys like Jennings.  *See, e.g.*, *Laforge*, 2018 U.S. Dist. Lexis 102478, at *8; *Spreadbury v. Bitterroot Public Library*, 2011 U.S. Dist. Lexis 115651 (D. Mont. July 21, 2011).  This Court explained: "An attorney's role in representing a client in civil litigation and invoking state legal procedures does not constitute 'joint action' or 'conspiracy' with state officials sufficient to satisfy section 1983's state action requirement." *Laforge*, 2018 U.S. Dist. Lexis 102478, at *10 (quoting *Schucker v. Rockwood*, 846 F.2d 1202, 1205 (9th Cir. 1988)); *see also Spreadbury*, 2011 U.S. Dist. Lexis 115651, at *17 (dismissing § 1983 civil

15

conspiracy claims against private attorneys and explaining: "Specifically, private attorneys . . . are not state actors, and conclusory allegations of an attorney's involvement in a conspiracy seeking to establish state action are insufficient." (citation omitted)).

Here, all of Thompson's claims against Jennings are based on Jennings' representation of the HOA in the underlying state-court action. Thompson's allegations are concerned solely and exclusively with Jennings' "role in representing a client in civil litigation." *Laforge*, 2018 U.S. Dist. Lexis 102478, at *10. Thompson's "[a]llegations of ordinary legal advocacy . . . are insufficient to state a claim that [Jennings was] acting under color of state law." *Kamal v. County of L.A.*, 2018 U.S. Dist. Lexis 153157, *50 (C.D. Cal. Sept. 6, 2018). His § 1983 civil rights conspiracy claim should therefore be dismissed with prejudice on this basis alone; this deficiency cannot be cured by amendment. *See Spreadbury*, 2011 U.S. Dist. Lexis 115651, at *17.

Alternatively, Thompson has utterly failed to explain with any level of particularly who Jennings allegedly "conspired" with or how Jennings' representation of the HOA violated any of Thompson's constitutional rights. Thompson has thus failed to satisfy the pleading standards articulated in *Iqbal* and *Twombly*. What constitutional right, for instance, did Jennings

16

violate when he allegedly failed to meet and confer with Thompson on scheduling matters?  What constitutional right did Jennings violate when he allegedly did not provide his proposed findings of fact and conclusions of law soon enough?  Thompson provides no answers to these questions.  His complaint spans over 100 pages, but, with all due respect, "the air is shattered by the force of [Thompson's] blow."[5]  There were, in fact, no constitutional violations in the underlying state-court action, and Thompson has pleaded no such violations.

As with his abuse of process claim, there is no set of facts Thompson could plead to save his § 1983 civil conspiracy claim.  He cannot cure this claim because it does not implicate a "state actor" under § 1983, and the claim should therefore be dismissed with prejudice.  *See Spreadbury*, 2011 U.S. Dist. Lexis 115651, at *17.

### C.  Thompson's claims are barred by res judicata and the *Rooker-Feldman* doctrine.

All of the allegations Thompson makes against Jennings could have and should have been raised in the underlying state-court action. Thompson's claims are therefore barred by res judicata.  They are also barred by the *Rooker-Feldman* doctrine because the claims are "inextricably intertwined" with the underlying state-court action.

---

[5] Thayer, Ernest L., "Casey at the Bat," *The Daily Examiner* (June 3, 1888).

### 1.   Thompson's claims are barred by res judicata.

Res judicata "bars litigation in a subsequent action of any claims that were raised <u>or could have been raised</u> in the prior action." *Naruto v. Slater*, 888 F.3d 418, 434 (9th Cir. 2018) (emphasis added).[6]  If a plaintiff's federal claims arise "out of the same transactional nucleus of facts" that were at issue a state court case, then the federal claims are barred by res judicata. *Chao v. A-One Medical Services*, 346 F.3d 908, 921 (9th Cir. 2003).

In particular, this Court has observed that res judicata bars a state-court litigant from suing an opposing party's attorney in federal court over alleged errors or wrongdoing in the state court action.  *See Jonas v. Jonas*, 2014 U.S. Dist. Lexis 32923, at *15–*19 (D. Mont. March 12, 2014).  In *Jonas*, a state court litigant sued the opposing party's attorney in federal court, alleging a variety of wrongdoings and irregularities in the underlying state-court action.  This Court concluded the claim was barred by res judicata because "Plaintiffs' claims against [the defendant's] attorneys would require rehearing the issues . . . brought before the Montana state courts."

---

[6] Res judicata requires parties in the subsequent action to be the same as or in privity with the parties in the underlying action.  *See Ruiz v. Snohomish Co. Public Utility Dist. No. 1*, 824 F.3d 1161, 1164 (9th Cir. 2016) (citation omitted).  "Courts have found that counsel subject to suit for actions taken in the context of representing parties in a prior lawsuit are in privity with those parties." *Kawelo v. Nationstar Mortgage LLC*, 2018 U.S. Dist. Lexis 155141, at *14 (D. Hawaii Sept. 12, 2018) (citing *Plotner v. AT&T Corp.*, 224 F.3d 1161, 1169 (10th Cir. 2000); *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1235 n.6 (7th Cir. 1986); *Clemens v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. Lexis 178025 (D. Kan. Dec. 30, 2014)).

*Id.* at *18.  The Court explained those claims could have been asserted in the underlying action and the plaintiff had the ability to "fully and fairly litigate" those claims in state court—"[t]hus, Plaintiffs' claims against [the defendant's] attorneys are barred by collateral estoppel."  *Id.*

The principle in *Jonas* applies with equal force here.  All of Thompson's claims against Jennings are barred by res judicata.  As to the abuse of process claim, Thompson makes three allegations:

- Jennings and his client used the underlying state-court action to force Thompson to pay his HOA dues (Doc. 9, ¶¶ 169–71),

- Jennings and his client "maliciously burden[ed]" Thompson with litigation rather than participating in "mediation," as "recommended" by the HOA covenants (Doc. 9, ¶¶ 173–74), and

- Jennings and his client used the underlying state-court action to retaliate against Thompson (Doc. 9, ¶ 175).

These issues not only could have been raised below, they actually were raised and addressed below.  Jennings' client did, in fact, claim that Thompson owed HOA dues.  During the underlying litigation, Thompson paid those dues, rendering that issue moot.  (Ex. B, pp. 17, 23.)  Judge McElyea also found that Thompson did not accept Jennings' invitation to participate in mediation because Jennings sent the invitation by certified mail, and "Mr. Thompson testified he refuses to accept certified return receipt letters because they are an inconvenience to him."  (Ex. B, p. 17.)

19

Finally, Judge McElyea found no ill motive on the part of the HOA for making its claim against Thompson.  Instead, she concluded the HOA gave Thompson numerous chances to comply with the HOA Covenants and to avoid litigation.  (*See, e.g.*, Ex. B, pp. 14, 25.)  In the end, Judge McElyea ruled entirely in the HOA's favor, ordering Thompson to finish the construction of his home or vacate the premises in 90 days.  (Ex. B, pp. 26–27.)

In short, Thompson's abuse of process allegations have already been raised and addressed in the underlying state-court action, and they were decided against him.  Even if any of his claims could be construed as not actually having been raised in the underlying action, they certainly could have been raised.  In fact, the Ninth Circuit has held that an abuse of process claim is a compulsory counterclaim in the underlying state-court action under Rule 13(a) and that res judicata prevents a plaintiff from asserting the claim in a subsequent action.  *See Pochiro v. Prudential Ins. Co.*, 827 F.2d 1246, 1251–53 (9th Cir. 1987).  Thompson's abuse of process claim against Jennings is therefore barred by res judicata.  *Naruto*, 888 F.3d at 434; *Pochiro*, 827 F.2d at 1251–53; *Jonas*, 2014 U.S. Dist. Lexis 32923, at *15–*19.

Thompson's § 1983 civil rights conspiracy claim is likewise barred.  As discussed above, rather than alleging any conspiracy, Thompson's claim simply lists what he believes are procedural irregularities or issues with the litigation.  He claims Jennings and other defendants conspired by:

- not meeting and conferring with Thompson in the underlying state-court on scheduling matters,

- preventing the court from considering Thompson's counter- and third-party claims,

- not meeting and conferring to establish undisputed facts prior to trial,

- committing fraud upon the court at the hearing on awarding costs,

- not providing the proposed findings of fact and conclusions of law soon enough, and

- offering proposed findings of fact and conclusions of law without allowing Thompson to cross-examine witnesses.

(Doc. 9, ¶¶ 176–78.)  All of these claims, of course, could have been and should have been raised in the underlying state-court action.  And some were raised in the underlying action.  In fact, in support of at least part of his conspiracy claim, he excerpts a hearing transcript addressing one of the very claims he now raises—i.e., the dispute over whether his counterclaim was actually an affirmative defense.  (*See* Doc. 9, ¶ 178.)  That issue and others were teed up to and addressed by Judge McElyea.  All of Thompson's allegations arise solely out of the underlying litigation and either were or

could have been addressed in that case, not this one.  Thompson's § 1983 civil rights conspiracy claim is therefore barred by res judicata.  *Naruto*, 888 F.3d at 434; *Pochiro*, 827 F.2d at 1251–53.

Importantly, no amendments to the First Amended Complaint can change the fact that Thompson's claims are barred by res judicata—all of his claims either were, could have been, or should have been addressed in the underlying action.  They should all therefore be dismissed with prejudice because no additional amendments can cure this deficiency.  *See Weilburg*, 488 F.3d at 1205.

### 2.  Thompson's claims are barred by *Rooker-Feldman*.

At their core, Thompson's claims against Jennings are an attempt to appeal alleged errors in the underlying state-court action.  In addition to being barred by res judicata, then, his claims are also barred by the *Rooker-Feldman* doctrine.

*Rooker-Feldman* bars "de facto appeal[s]" of state court decisions, including all issues that are "inextricably intertwined" with the state court decision.  *Noel v. Hall*, 341 F.3d 1148, 1158 (9th Cir. 2003).  The doctrine also bars any claim that would "require the district court to interpret the application of state laws or procedural rules."  *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 859 (9th Cir. 2008).

22

Here, at a minimum, Thompson's claims are "inextricably intertwined" with the underlying state-court action, and the Court would necessarily have to interpret and apply state "procedural rules" when addressing Thompson's allegations regarding scheduling matters in the underlying state-court action, the viability of his counterclaims and third-party claims, rules governing meet and confer, the deadline for providing proposed findings of fact and conclusions of law, etc.  And for at least some of the issues (e.g., Thompson's complaint about not participating in mediation prior to the underlying litigation), Thompson is asking this Court to directly review Judge McElyea's decision.  (Ex. B, p. 17.)  That would be improper particularly since the underlying case is already on appeal before the Montana Supreme Court.

All of Thompson's claims are barred by *Rooker-Feldman* and should be dismissed with prejudice.  *See Jonas*, 2014 U.S. Dist. Lexis 32923, at *15–*19; *Reusser*, 525 F.3d at 859; *Noel v. Hall*, 341 F.3d at 1158; *see also Newell v. Lake Co./Lake Co. Ct.*, 2010 U.S. Dist. Lexis 17581, at *4 (D. Mont. Feb. 24, 2010) (dismissing complaint as barred by *Rooker-Feldman*).

### D.   Thompson's claims are barred by the statute of limitations.

The statute of limitations for both an abuse of process claim and a § 1983 civil rights conspiracy claim is three years.  *See* Mont. Code Ann.

§ 27–2–204(1); *McAlpin v. Schweitzer*, 2012 U.S. Dist. Lexis 163527, at *3 (D. Mont. Nov. 15, 2012) (citation omitted).  Generally, a claim accrues "when all elements of the claim or cause exist."[7]  *Norbeck v. Flathead Co.*, 2019 MT 84, ¶ 18 (Mont. 2019) (citing Mont. Code Ann. § 27–2–102(1)(a)). However, "the plaintiff need not have actual and complete knowledge of the facts constituting the claim in order for the claim to accrue."  *Christian v. Atl. Richfield Co.*, 358 P.3d 131, 153 (Mont. 2015).  Instead, the claim accrues when a plaintiff "received notice of a possible claim."  *Id.* (citation omitted).

Here, Thompson's abuse of process claim is based entirely on the very institution and inception of the underlying state-court action, which was filed on August 6, 2015, and served on Thompson on August 22, 2015. (Ex. A.)  Thompson's claim accrued on August 22, 2015, because he was (or should have been) fully aware of the allegations in the complaint, and he was therefore aware of each of the allegations he makes in support of his abuse of process claim:

- Thompson was aware of the relief the HOA sought in the underlying state-court action.  (*See* Doc. 9 at ¶¶ 169–71 (alleging Jennings and others improperly sought to compel Thompson to pay his HOA dues);

---

[7] Federal law governs the accrual of the § 1983 civil rights conspiracy claim, but the standard is similar.  The claim "accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action."  *See Cheetham v. Swanson*, 2010 U.S. Dist. Lexis 133037, at * 10 (D. Mont. Dec. 16, 2010) (citing *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999)).

*see* Ex. A, ¶¶ 19–22 (underlying complaint, alleging Thompson owed HOA dues));

- Thompson was obviously aware the HOA had filed a complaint and had not participated in mediation.  (Doc. 9 at ¶¶ 173–74 (alleging Jennings and others "maliciously burden[ed]" Thompson with litigation rather than participating in "mediation," as "recommended" by the HOA covenants)); and

- Thompson was aware of the reasons the HOA was pursuing legal action against him (which were not, as Thompson alleges, based on any retaliatory motive).  (Doc. 9 at ¶ 175.)

Since Thompson was served with the underlying complaint on August 22, 2015, and therefore had full knowledge of the allegations in the underlying complaint and the relief the HOA was requesting, that means he had three years—until August 22, 2018—to file his abuse of process claim, which was based solely on those allegations.  He did not do so.  Thompson filed his Complaint in this case on November 30, 2018, more than three months too late.  His abuse of process claim is therefore barred by the statute of limitations, and it should be dismissed with prejudice because there are no facts he could allege that would cure that deficiency.  *See Weilburg*, 488 F.3d at 1205.  Nothing can cure this deficiency.

Thompson's § 1983 civil rights conspiracy is also barred by the statute of limitations.  Like his abuse of process claim, Thompson's conspiracy claim arises out of the underlying action, which was instituted more than three years before Thompson filed his Complaint in this case.

## II. Alternatively, Thompson's First Amended Complaint is untimely and should be dismissed under Rule 12(b)(5).

Under Rule 4(m) of the Federal Rules of Civil Procedure, a plaintiff has 90 days to serve the complaint after filing.  If a plaintiff fails to accomplish service within the permitted timeframe, dismissal is required under Rule 12(b)(5) ("insufficient service of process").  *See, e.g.*, *Looman v. State*, 2012 WL 6775021 (D. Mont. Nov. 30, 2012).

Thompson served his initial Complaint on November 30, 2018.  (*See* Doc. 1.)  On January 21, 2019, Thompson—fully aware of Rule 4(m)'s deadline—filed a motion requesting that he be given 104 days (instead of 90 days) to accomplish service.  (Doc. 7.)  Thompson indicated he intended to serve an amended complaint within that timeframe.  (Doc. 7.)  Thompson specifically asked "this humble Court to issue an order allowing that Plaintiff <u>must</u> serve Defendants summons on or before March 14, 2019 . . . ."  (Doc. 7, p. 4 (emphasis added).)  The Court granted Thompson's motion and ordered that Thompson "shall [have] until March 14, 2019, within which to effect service on Defendants."  (Doc. 8.)

Thompson did not accomplish service on Jennings Law Office, Jennings, or Hanson (or, apparently, any other defendants) by March 14, 2019.[8]  Instead, the First Amended Complaint was served on Jennings on

---

[8] Thompson did not even have the summons issued until March 15, 2019.

April 1, 2019.  (*See* Exs. 1, 2.)  Thompson's First Amended Complaint is therefore untimely under Rule 4(m) and in violation of the Court's January 23, 2019 order (Doc. 8).  Jennings has not "consented to jurisdiction or waived the lack of process."  *See Ross*, 504 F.3d at 1138. Accordingly, the First Amended Complaint should be dismissed with prejudice.  *See id.*; Fed. R. Civ. P. 12(b)(5).

This is not an instance where a pro se plaintiff's untimeliness should be excused on account of being unfamiliar with the rules.  Thompson has previously filed cases in this Court (including another, separate case against the City of Bozeman),[9] and expressly asked for an extension of Rule 4(m)'s 90-day deadline in this case, which the Court granted.  (Docs. 7 and 8.) Thompson therefore failed to comply with the very deadline he requested, in violation of the Court's order.  No good cause exists to extend the deadline yet again, and this provides an alternative and independent basis for dismissing Thompson's First Amended Complaint with prejudice.  *See* Fed. R. Civ. P. 4(m) and 12(b)(5).

---

[9] *See, e.g.*, *Thompson v. City of Bozeman et al.*, CV–15–79–BU–BMM–JCL; *Thompson v. Coulter et al.*, CV–10–27–BLG—RFC.  Thompson dismissed the *City of Bozeman* case immediately after the preliminary pretrial conference.  (*See* CV–15–79, Doc. 25.)

### CONCLUSION

Jennings respectfully requests the Court dismiss Thompson's claims against him with prejudice under Rule 12(b)(6).  There are no additional facts Thompson could plead to cure the deficiencies in his First Amended Complaint.  Alternatively, the Court should dismiss Thompsons First Amended Complaint with prejudice under Rule 12(b)(5) because Thompson did not timely serve it on Jennings, in violation of Rule 4(m) and the Court's prior order.

DATED this 22nd day of April 2019.

/s/ Randy J. Tanner
Matthew B. Hayhurst
Randy J. Tanner
BOONE KARLBERG P.C.
*Attorneys for Defendants Jennings Law Office, P.C.; Wayne Jennings; and Amy Hanson*

28

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(d) (2)(E), I certify that the foregoing brief is double-spaced, 14-point Georgia font, and contains approximately 6,497 words, excluding the Caption, Table of Contents, Table of Authorities  and Certificate of Compliance.

DATED this 22nd day of April 2019.

> /s/ Randy J. Tanner
> Matthew B. Hayhurst
> Randy J. Tanner
> BOONE KARLBERG P.C.
> *Attorneys for Defendants Jennings Law Office, P.C.; Wayne Jennings; and Amy Hanson*