Matthew B. Hayhurst
Randy J. Tanner
BOONE KARLBERG P.C.
201 West Main, Suite 300
P.O. Box 9199
Missoula, MT 59807-9199
(406) 543-6646
mhayhurst@boonekarlberg.com
rtanner@boonekarlberg.com

*Attorneys for Defendants Jennings Law Office, P.C.;
Wayne Jennings; and Amy Hanson*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| PETER THOMPSON,<br><br>              Plaintiff,<br><br>     v.<br><br>CITY OF BOZEMAN, a Montana<br>Municipal Corporation, et al.,<br><br>              Defendants. | CV 18–75–BU–BMM–JCL<br><br>**AFFIDAVIT OF<br>WAYNE JENNINGS** |

Wayne Jennings, being first duly sworn on oath, declares as follows:

1.      I am over the age of 18 and competent to testify.

2.      I am a practicing attorney in Bozeman, Montana, at Jennings

Law Office P.C.  I am the sole shareholder of Jennings Law Office.

3.      In the above-captioned case, Plaintiff Peter Thompson has



1
**EXHIBIT 1**

named me, Jennings Law Office, and Amy Hanson, a legal assistant at Jennings Law Office, (collectively, "Jennings") as defendants.

4.      I was never served, in any capacity, with the initial complaint that was filed in this case on November 30, 2018.

5.      I was served the Summons and First Amended Complaint on April 1, 2019, in my individual capacity and my capacity as sole shareholder of Jennings Law Office.

6.      The claims made against Jennings arise entirely from an underlying state-court action— *Cattail Creek Community Association v. Peter Thompson*, DV–15–636CX (Mont. 18th Jud. Dist.).  I represented the Cattail Creek Community Association, a homeowners association ("HOA") to which Thompson belonged.  In that underlying case, the HOA filed a complaint against Thompson based on violations of HOA covenants.

7.      Through my brief in support of my Motion to Dismiss, I have respectfully requested the Court take judicial notice of the following documents from the underlying state-court action:

    a. The HOA's August 6, 2015 Complaint (attached to this affidavit as **Exhibit A**);

    b. The District Court's April 23, 2018 Findings of Fact, Conclusions of Law, and Order (attached to this affidavit as **Exhibit B**); and

    c. Thompson's Notice of Appeal and the docket sheet for his

appeal to the Montana Supreme (attached to this affidavit as **Exhibit C**);

Each of these filings and exhibits are true, correct, and authentic copies of the filings in the underlying state-court action.

FURTHER AFFIANT SAYETH NOT.

_____
Wayne Jennings

Subscribed and sworn before me
this __19__ day of _____April_____, 2018 19

by_____Wayne Jennings_____.
*Print name of signer(s)*

_____
*Notary Signature*

LAURA M TERRAZAS
Notary Public
for the State of Montana
Residing at:
Belgrade, Montana
My Commission Expires:
October 28, 202[ ]

(Notarial Seal)

3

Wayne Jennings
Jennings Law Office, P.C.
1704 W. Babcock, Ste. A
P.O. Box 1625
Bozeman, MT  59715
(406) 582-1801
wayne@jenningslawmt.com

Attorney for plaintiff

## IN THE EIGHTEENTH JUDICIAL DISTRICT COURT, GALLATIN COUNTY

| | | |
|---|---|---|
| CATTAIL CREEK COMMUNITY ASSOCIATION, a Montana nonprofit corporation, | ) ) ) ) | Cause No.    DV-15- |
| Plaintiff, | ) ) | **COMPLAINT** |
| -vs- | ) ) | |
| PETER THOMPSON, | ) ) | |
| Defendant. | ) ) ) | |

For its cause of action against the defendant, the Cattail Creek Community Association, acting by and through its attorney, Wayne Jennings, alleges and complains as follows:

1.     That the plaintiff is the entity charged with administration of the Cattail Creek Subdivision, in accordance with the Amended & Restated Covenants, Phases 1, 2 & 3, recorded May 15, 2008, as document no. 2300076, records of Gallatin County, Montana.

2.     That by the terms and conditions of the Amended & Restated Covenants, all lots within Cattail Creek Subdivision are subject to such covenants.

3.     That by the terms and conditions of the Amended & Restated Covenants, all owners of lots

1

## EXHIBIT A

within the subdivision are members of the Cattail Creek Community Association.

4.      That defendant Peter Thompson is the owner of a lot within Cattail Creek Subdivision, described as follows:

> Lot 7 in Block 9 of the Plat of Cattail Creek Subdivision, Phases 2A & 2B, City of Bozeman, Gallatin County, Montana. [Plat J-369]

5.      That defendant Thompson acquired his interest in the property described above by means of a warranty deed recorded February 27, 2008, as document no. 2292799, records of Gallatin County, Montana.

6.      That subsequent to acquisition of his lot within the subdivision, defendant Thompson commenced construction of a residence on that lot.

7.      That the Cattail Creek Community Association issued its approval of building plans in March of 2008, a construction permit was issued to defendant Thompson by the City of Bozeman on April 30, 2008 and work began on the house shortly thereafter.

8.      That at the same time as the adoption of the Amended & Restated Covenants, the plaintiff also adopted Design Regulations which were incorporated by reference into the Amended & Restated Covenants.

9.      That by the terms of the Design Regulations, construction of any approved structure must be completed within one year of the date that approval of the structure is issued by the Cattail Creek Design Committee.

10.     That section 5.7 of the Design Regulations provides that:

> If any structure is commenced and is not completed in accordance with the plans and specifications within one year, the Directors of the Community Association, at their option, may take such action as may be necessary, in their judgment, to improve the appearance so as to make the property

2

harmonious with other properties and to comply with these Covenants, including completion of the exterior of the combination thereof, or removing the uncompleted structure or similar operations. The amount of any expenditure made in so doing shall be an obligation of the owner. A lien on the property may be recorded and shall be enforceable by an action at law. In lieu thereof, the Association may take such action as is available by law, including an injunction, or action for damages.

11.   That by 2012 defendant Thompson had completed a substantial portion of the exterior of the house, but had not completed all of the work.

12.   That demand was made upon defendant Thompson in March of 2012 to complete the necessary work and to correct other violations of the covenants.

13.   That defendant Thompson responded by questioning the validity of the Amended & Restated Covenants and by voicing numerous complaints about the association board and the activities of other members within the subdivision.

14.   That following the March 30, 2012 demand letter to defendant Thompson, the plaintiff continued trying to get defendant Thompson to adhere to the covenants, with limited success.

15.   That by the spring of 2015 the work remaining to be completed on the Thompson property was completion of the driveway, completion of the top floor balcony, construction of a railing around the other balcony and staining of the wood on the house.

16.   That a demand was once again sent to defendant Thompson to complete those items, but no response was made to such demand and the items remain incomplete.

17.   That even though the covenants provide that the association may enter the property and complete the work, that solution is impractical for the following reasons:

     a.   the association has limited funds with which to carry out its activities, which do not include completing the homes of owners who will not adhere to the

3

      requirements of the covenants;

    b.    the Thompson house is subject to a bank mortgage and any lien placed against the property by the association for completing the construction will be junior to that bank mortgage; and

    c.    that anybody entering onto the Thompson property under the circumstances will run the risk of an encounter with defendant Thompson.

18.    That as a result, the only practical remedy, if defendant Thompson will not follow the covenants, is an injunction preventing him from occupying the residence until he has completed the work on the exterior of the house.

19.    That in addition, defendant Thompson has neglected or refused to pay his association dues for more than four years and currently owes the sum of $825.

20.    That the Amended & Restated Covenants provide that owners of lots within the subdivision are responsible for the payment of such dues or assessments.

21.    That the Amended & Restated Covenants provide that in the event that dues are not paid in a timely manner, interest shall accrue on the unpaid balance at the rate of 12% per year.

22.    That the plaintiff is entitled to recover all unpaid dues from defendant Thompson, together with interest on the unpaid balance until paid in full.

22.    That section 5.1(I) of the Amended and Restated Covenants provides that:

    (I) Recreational vehicles, boats, trailers, snowmobiles, and other rolling equipment other than automobiles and pick up trucks shall not be stored in open view on any residential lot, driveway, or road. Parked cars shall not obstruct pedestrian traffic. Vehicles parked in violation of these Covenants will be notified by means of a verbal notice to the vehicle owner or verbal notice to the lot owner, or by written notice from the CCDC stating that the vehicle is in violation of these Covenants and requesting immediate removal

4

of the vehicle. If the violation is not corrected within twenty-four (24) hours of notification, the CCDC may cause the vehicle to be towed and impounded at the expense of the vehicle's owner. The Homeowner's Association may cause a vehicle to be towed immediately without notification if the CCDC determines the vehicle impedes emergency vehicles or, in any way, represents a threat to health and safety.

24.  That defendant Thompson has parked a horse trailer in his front or side yard in open view and refuses to remove the horse trailer in spite of notices from the association.

25.  That it is impractical for the association to remove, or attempt to remove the trailer for the following reasons:

a.  risk of confrontation with Mr. Thompson upon entering onto his property; and

b.  the access to the trailer is often blocked by other vehicles on the Thompson property.

26.  That the Amended & Restated Covenants contemplate that the association may seek injunctive relief in the event of a breach of the covenants and the association is entitled to an order of the Court enjoining defendant Thompson from living in his residence until it is completed and from parking his horse trailer on a city street, or in open view upon his lot.

27.  That by the terms of the Amended & Restated Covenants, in the event of legal action to enforce the terms and conditions of the covenants, the prevailing party is entitled to recover all reasonable attorney fees and court costs.

28.  That it has become necessary for the plaintiff to retain the services of Wayne Jennings, an attorney licensed to practice law in Montana and the plaintiff is entitled to recover all reasonable fees for such services.

WHEREFORE, plaintiff prays for relief as follows:

1.  For an injunction against defendant Thompson precluding him from residing in his house

5

until completed;

2.   For an injunction against defendant Thompson precluding him from parking his horse trailer on his lot in open view, or upon the city streets within Cattail Creek Subdivision;

3.   For a judgment against defendant Thompson for all unpaid assessments, together with prejudgment interest;

4.   For all court costs incurred in this action;

5.   For all reasonable attorney fees incurred in this action; and

6.   For such other and further relief as the Court may deem just and proper.

Dated this 6th day of August 2015.


_____
Wayne Jennings

Wayne Jennings
Jennings Law Office, P.C.
1704 W. Babcock, Ste. A
P.O. Box 1625
Bozeman, MT  59715
(406) 582-1801
wayne@jenningslawmt.com



Attorney for plaintiff

## IN THE EIGHTEENTH JUDICIAL DISTRICT COURT, GALLATIN COUNTY

| | |
|---|---|
| CATTAIL CREEK COMMUNITY ASSOCIATION, a Montana nonprofit corporation, | ) ) ) ) Cause No.   DV-15-636 C |
| Plaintiff, | ) ) |
| -vs- | ) **SUMMONS** ) |
| PETER THOMPSON, | ) ) |
| Defendant. | ) ) ) |

THE STATE OF MONTANA, To the above named defendant Peter Thompson; you are hereby summoned to answer the Complaint in this action, which is filed in the office of the Clerk of this Court, a copy of which is herewith served upon you, and to file your answer and serve a copy thereof upon the plaintiff's attorney within twenty-one (21) days after the service of this summons, exclusive of the day of service; and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

WITNESS my hand and the seal of the Eighteenth District Court, Gallatin County, Montana, this 6 day of August 2015 .

JENNIFER BRANDON
Clerk of Court

By: _Paula Cox_____
Deputy Clerk

AFFIDAVIT OF SERVICE

STATE OF MONTANA)                           Cause No. DV-15-636C

COUNTY OF GALLATIN)

John A. Adams being duly sworn, states that I am over the
age of eighteen (18) years of age, and I am not a party to,
nor an attorney for, any person involved in these
proceedings, and that I received the within **SUMMONS AND
COMPLAINT** on the 11th of August, A.D., 2015, and **served** the
same on **PETER THOMPSON**, I knew to be the person named in the
papers served and the person intended to be served on the
**22nd of August, A.D., 2015**, at 9:14 PM hours at his place of
residence, 2988 BLACKBIRD DRIVE, BOZEMAN, MONTANA,
informing him of its contents, and leaving a copy with him.

Dated this 23rd of August, A.D., 2015.

CIVIL PROCESS SERVICE OF BOZEMAN

_____

John A. Adams, Levying Officer
State of Montana, Lic. No. 8915

SUBSCRIBED AND SWORN TO before me, a Notary Public for the
State of Montana, this 23rd of August, A.D., 2015.

JUDY M ADAMS
Notary Public
for the State of Montana
NOTARIAL
SEAL
Residing at:
Bozeman, Montana
STATE OF MONTANA
My Commission Expires:
July 26, 2016

_____
Notary Signature
Judy M. Adams
_____
Printed Name

SERVICE:   $50.00
MILEAGE:   $15.00
TOTAL:     $65.00

GALLATIN COUNTY CLERK
OF DISTRICT COURT
JENNIFER A. ......

2018 APR 23  PM 4: 08

FILED

BY_____ *QP*_DEPUTY

MONTANA EIGHTEENTH JUDICIAL DISTRICT COURT, GALLATIN COUNTY

\* \* \* \* \* \* \*

| | | |
|---|---|---|
| CATTAIL CREEK COMMUNITY ASSOCIATION, a Montana nonprofit corporation, | ) ) ) | Cause No. DV-15-636CX |
| | ) | **FINDINGS OF FACT,** |
| Plaintiff, | ) ) | **CONCLUSIONS OF LAW AND ORDER** |
| | ) | |
| vs. | ) ) | |
| PETER THOMPSON, | ) ) | |
| Defendant. | ) ) | |

This matter was tried before the Court, sitting without a jury, on February 20, 21 and 22, 2018. Present were officers of the Cattail Creek Community Association, (CCCA) and Wayne Jennings, attorney for Plaintiff. Defendant Peter Thompson (Thompson) was also present representing himself. From the evidence presented, the Court makes the following findings of fact:

## FINDINGS OF FACT

1.  Cattail Creek Subdivision is a subdivision in Bozeman, Montana, consisting of three phases.

2.  The final plat for the first phase, consisting of 37 lots designated for multi-family use, residential-office or light manufacturing, was filed in the office of the Gallatin County Clerk and Recorder on August 20, 2002, as document no. 2078629. Plaintiff's Exh. 1.

**EXHIBIT B**

163

3.     The plat for phases 2A and 2B, consisting of 73 single-family and multi-family lots, was filed in the office of the Gallatin County Clerk and Recorder on November 12, 2003, as document no. 2131566. Plaintiff's Exh. 3.

4.     The plat for phase 3, consisting of 66 single-family, multi-family, residential office and light manufacturing lots, was filed in the office of the Gallatin County Clerk and Recorder on October 20, 2005, as document no. 2206251. Plaintiff's Exh. 5.

5.     On the same day as each plat was filed, covenants were recorded for that particular phase. The covenants for phase 1, titled *Cattail Creek Subdivision-Phase I Declaration of Covenants and Restrictions*, were recorded as document no. 2078633. Plaintiff's Exh. 2. The covenants for phases 2A and 2B, titled *Cattail Creek Subdivision - Phase II Declaration of Covenants and Restrictions*, were recorded as document no. 2131569. Plaintiff's Exh. 4. The covenants for phase 3, titled *Cattail Creek Subdivision -Phase III Declaration of Covenants and Restrictions Final*, were recorded as document no. 2206253, all in the records of Gallatin County, Montana. Plaintiff's Exh. 6.

6.     The individual sets of covenants for the three phases all provide, in the third paragraph of each set of covenants, that:

> Declarant hereby declares that all land described in Exhibit "A" shall be held, sold, conveyed, encumbered, leased, occupied, and improved subject to the Cattail Creek covenants meaning the limitations, covenants and restrictions set forth in this declaration and any subsequent amendments hereto, all of which are intended to enhance the desirability and attractiveness of the land. These limitations, covenants and restrictions shall run with the land and shall be binding upon all person [sic] having or who acquire any right, title or interest in and to the land, and shall inure to the benefit of the Declarant, the Association and each person who becomes an owner of the land.

2

7.     Article I, of each set of covenants described above, which is titled "DEFINITIONS,"

       states in paragraph b. that:

           "Association" shall mean the Cattail Creek Community Association, and
           its successors and assigns which shall serve and may be referred to as the
           Homeowners' Association.

8.     Article II, Section 2 of each set of covenants states:

       Section 2. The Declarant may, pursuant to the following provisions of the section,
       from time to time and in Declarant's sole discretion, annex to Cattail Creek all or
       any part of the land described in future exhibits (not then constituting a part of
       Cattail Creek) owned by Declarant at the time of such annexation.

       a.     The annexation of such land shall be effectuated by Declarant recording a
              declaration describing the land to be annexed; setting forth such additional
              limitations, restrictions, covenants and conditions as are applicable to such
              land; and declaring the land is to be held, sold, conveyed, encumbered,
              leased, occupied and improved subject to Cattail Creek covenants.

9.     In addition, except as noted below, the individual sets of covenants state, in Article VI of

       each set of covenants, as follows:

           SECTION 1. The Cattail Creek Community Association is charged with
           the duties and empowered with the rights set forth herein and By-Laws
           that may be adopted for governing the Board of Directors.

           SECTION 2. Every owner or contract purchaser of a lot shall be a member
           of the Association. Membership shall be appurtenant to and may not be
           separate from the ownership of any lot. Each owner shall be responsible
           for advising the Association of their acquisition of ownership, of their
           mailing address, and of any changes of ownership or mailing address. The
           initial address of the Association shall be P.O. Box 1254 Bozeman,
           Montana 59771-1254. The address of the Association may be changed by
           the Board of Directors upon notice to the owners.

           SECTION 3. The Association, acting through its Board of Directors, shall
           have the power and authority to take such actions as shall be necessary or
           reasonable to care for, protect and maintain the easements, parkways,
           boundary fences, drainage easements, [and][1] open space; to enforce these

---

[1]The word "and" is not found in the covenants for Phase 1, but is contained in the covenants for
phases 2 and 3.

3

Covenants; to collect assessments; to set annual and/or special meetings; and to act in any other matters set forth herein or which may serve the development, including the formation of special improvement districts, either public or private, for such improvements as the Association shall approve.

10.    The individual sets of covenants for the three phases all list the address of the Association as P.O. Box 1254, Bozeman, Montana 59771-1254.

11.    The individual sets of covenants for the three phases all state that there shall be a Cattail Creek Design Committee (CCDC). The CCDC "has the right to exercise control over all construction in the Cattail Creek Subdivision." Article V, Section 2.

12.    The address of the CCDC stated in each of the individual sets of covenants for the three phases is P.O. Box 1254, Bozeman, Montana 59771-1254. Article IV, Section 2.

13.    Articles of Incorporation were filed with the Montana Secretary of State on April 25, 2006, to create a non-profit corporation named Cattail Creek Community Association, Plaintiff herein. Plaintiff's Exh. 9.

14.    By its terms, the Articles of Incorporation apply to the three phases of Cattail Creek Subdivision that were in existence at that time and were created, in part, "[t]o implement, administer, and enforce the Covenants, Conditions and Restrictions for the Subdivision [Cattail Creek] ...." Sandi Hamilton, Daniel Madison and Rob Pertzborn signed the Articles of Incorporation. Sandi Hamilton and Daniel Madison are principals in Sandan, LLC, the developer of the subdivision, and Rob Pertzborn is an architect who is a longstanding member of the Cattail Creek Design Committee.

15.    An organizational meeting of the CCCA was held in June of 2006. The parties present discussed the effects of three sets of covenants within the subdivision, in spite of the

4

Articles of Incorporation envisioning a single association and that the initial covenants for each phase state the owners within such phase shall be members of the Cattail Creek Community Association ("CCCA").

16.     In the course of that organizational meeting, three directors were chosen from each phase of the subdivision and they constituted the one CCCA board. The members consisted of volunteers. There were not separate boards for each phase.

17.     In the course of that organizational meeting, a discussion was held concerning the difficulties in having three different vendors for the three different phases of CCCA. The board held a number of meetings trying to determine the best way to move forward.

18.     In 2007, an effort was made to consolidate all three covenants and a meeting of the homeowners was called. A letter was sent on July 1, 2007 and included a mail in ballot. Plaintiff's Exh. 10. The purpose was to ask the owners of all three phases to combine the three phases into one. Although the covenants for the subdivision do not specifically provide for a mail ballot, the decision was made to conduct the vote by mail due to the fact that there were many owners who did not have houses within the subdivision and many owners lived out of the state of Montana, making attendance at a meeting of the association problematic. Without the ability to get enough owners together in a meeting, the initial directors believed that it would be virtually impossible to obtain a quorum for a valid vote to consolidate.

19.     As part of the process for the second consolidation ballot, the letter also advised of a meeting scheduled for August 7, 2007 for owners to attend and ask questions. Owners were also allowed to turn in their ballots during that meeting.

5

20.     The result of that 2007 vote was that the number of owners deemed necessary to pass the measure voted and the proposal passed.  The board considered the 2007 vote an advisory vote to authorize the board to work toward consolidation.  The board members continued to work as one board.

21.     At no time prior to, during, or following the 2007 vote to consolidate did any owner object to the procedure followed for that vote.

22.     Following the 2007 vote to consolidate, the board then started the process to amend the covenants for consolidation in keeping with the vote that was taken, and create a single set of covenants that would be binding on the subdivision as a whole, rather than separate covenants for each phase.

23.     By January 25, 2008, the new, proposed amended and restated covenants and bylaws were completed.   CCCA sent each owner a cover letter and ballot.  The cover letter described some of the changes included in the consolidated covenants and advised owners how to secure a copy of the full documents for review.  Plaintiff's Exh. 13.  The ballot included a notice that it served as a waiver of the meeting.  Plaintiff's Exh. 14.  By the terms of the cover letter, all ballots were to be returned by March 10, 2008, in order to be counted.  However, the ballot enclosed with the cover letter indicated the counting of the ballots would be taken at the meeting.  The ballot states, "[t]his is a proxy vote and waiver of attendance at the meeting.  This vote shall be counted at the special meeting called by the Board of Directors and shall be held on March 26, 2008 at 6:30 p.m. at Borders Book Store, Bozeman, Montana."  Plaintiff's Exh. 14.

6

24.   The ballots and the cover letter by which the ballots were transmitted to the owners within Cattail Creek Subdivision stated the purpose of the vote, provided an opportunity for owners to vote for or against the proposal and provided a date by which ballots were to be returned.

25.   The ballots did not directly state the percentage of votes needed to pass the measure. The ballots did not state a quorum requirement but did ask all owners to vote.

26.   The covenants for all three phases of Cattail Creek Subdivision all contain the same language with respect to the requirements to amend the covenants:

> The vote of Owners having not less than three-quarters (3/4) of the total votes of each class of Owners of lots then within Cattail Creek Covenants at a meeting of the Association duly held. For the purposes of this section, an Owner will be allowed a number of votes equal to the number of dwelling units assessed to his/her lot at the time of the proposed election. The notice of the meeting shall state that the purpose of the meeting is to consider the amendment or repeal of the Cattail Creek Covenants, giving the substance of any proposed amendments or indicating the provisions to be repealed, as the case may be.

27.   The meeting was held on March 26, 2008. When the ballots for the proposal to amend and restate the covenants were counted, it was calculated that 294 votes constituted 75% of the eligible votes. A total of 314 votes were received. 10 votes were cast in opposition to the proposal. 294 votes were received in favor of amending and restating the covenants and that the measure was deemed passed by the board of directors. Plaintiff's Exh. 15.

28.   Following the counting of the ballots for amending the covenants in 2008, the Cattail Creek Amended & Restated Covenants Phases 1, 2 & 3 were recorded in the office of the

7

Gallatin County Clerk and Recorder as Document No. 2300076, on May 15, 2008.

Plaintiff's Exh. 7.

, 29.    By the terms of those Amended & Restated Covenants, the Cattail Creek Community

Association constituted a part of the "Declarant" named therein and those covenants

provide:

> NOW THEREFORE, Declarant does hereby amend the previously
> recorded Covenants for each Phase of Cattail Creek Subdivision as more
> particularly described above, and impose upon the property the following
> amended and Restated Covenants, which run with the land and shall be
> binding upon and be for the benefit and value of the Declarant and persons
> claiming under them, their grantees, successors and assigns, and shall be
> for the purpose of maintaining a uniform and stable value, character,
> architectural design, use and development of the property. The Amended
> and Restated Protective Covenant [sic] shall apply to the entire property
> and to all improvements placed or erected thereon unless otherwise
> specifically excepted and shall have perpetual existence, unless terminated
> by law or amended as herein provided.

30.    The duties of the Cattail Creek Community Association stated in those Amended &

Restated Covenants were similar to the duties stated in the original covenants for the

three phases, as stated in section 4.1 of the Amended & Restated Covenants:

> The Cattail Creek Community Association is charged with the duties and
> empowered with the rights set forth herein and in the Cattail Creek
> Community Association Bylaws.
>
> The Association, acting through its Board of Directors, shall have the
> power and authority to take such actions as shall be necessary or
> reasonable to care for, protect and maintain the parks, open spaces,
> common areas and facilities, ponds, watercourses, easements, and
> boundary fences; to enforce these Covenants; to adopt a development
> review fee schedule; to collect assessments and fines; to adopt a fine
> schedule; to set annual and/or special meetings; and to act in any other
> matters set forth herein or which may serve the development, including
> the formation of special improvement districts, either public or private,
> for such improvements as the Association shall approve.

8

31.     Following the January 25, 2008 mailing of ballots for the proposal to amend and

restate the covenants, Peter Thompson acquired his interest in a lot within Cattail

Creek Subdivision by means of a warranty deed executed on February 8, 2008,

describing the following real property:

> Lot 7 in Block 9 of the Plat of Cattail Creek Subdivision, Phases 2A &
> 2B, City of Bozeman, Gallatin County, Montana. [Plat J-369]

32.     The warranty deed by which Peter Thompson acquired his interest in the property

described above was recorded on February 27, 2008, as Document No. 2292799,

records of Gallatin County, Montana. Plaintiff's Exh. 16.

33.     At the same time the warranty deed described above was recorded, a Deed of Trust

was also recorded in the office of the Clerk and Recorder of Gallatin County,

Montana, as document no. 2292800. Plaintiff's Exh. 17.

34.     By the terms of that Deed of Trust, Peter Thompson gave to US Bank, N.A., as

"Lender," a security interest in Lot 7 in Block 9 of the Plat of Cattail Creek

Subdivision, Phases 2A & 2B, City of Bozeman, Gallatin County, Montana. [Plat J-

369], which is the same property Mr. Thompson obtained from Richard Embry.

35.     The interest given to US Bank, N.A. was to secure a loan in the sum of $380,000, plus

interest, with a 30-year term.

36.     Peter Thompson was not sent a ballot in January of 2008. Mr. Thompson was not an

owner at the time the ballots were sent to owners of lots within Cattail Creek. Richard

Embry was the owner of Lot 7 in Block 9 of the Plat of Cattail Creek Subdivision,

Phases 2A & 2B, at the time the ballots were mailed.

9

36. Prior to the purchase of his lot, Peter Thompson was aware of the 2007 vote to consolidate and that an effort was underway to amend the covenants for the subdivision. Peter Thompson was aware of the covenants for Phase II prior to his purchase of the property.

37. Mr. Thompson testified Rob Pertzborn told him not to worry about completing his property within one year. Mr. Thompson testified he had this conversation with Mr. Pertzborn before he purchased the property. Mr. Thompson understood Rob Pertzborn was on the design review board. Mr. Thompson testified that he estimated it would take him 18 months to complete the property if he was able to work 60 hours per week. He further testified it might take him 5 to 7 years to complete construction. Mr. Thompson admitted that he had nothing in writing from Mr. Pertzborn, any other member of the design review board, or any other member of the board.

37. No owner within Cattail Creek Subdivision complained about the mail ballot conducted in 2008 to amend the covenants until Peter Thompson began complaining about the process years later, after the CCCA sought to enforce the covenants against Mr. Thompson.

38. Peter Thompson submitted his building plans for the house he wanted to construct on the lot described above. Those plans were approved by the Cattail Creek Design Committee March 6, 2008. Plaintiff's Exh. 20.

39. A construction permit was issued to Peter Thompson by the City of Bozeman on April 30, 2008 and construction began. Plaintiff's Exh. 21.

10

40.     By the terms of Section 1 of Article IV of the covenants for Phase II of Cattail Creek
        Subdivision, in effect at the time of Mr. Thompson's purchase of his lot, no structure
        was to be built in Cattail Creek Subdivision without the prior approval of the CCDC.

45.     By the terms of Section 3 of Article IV of the original Phase II covenants, "[a]ny
        structure to be erected in accordance with an approval so given must be erected and
        completed within one year from the date of approval." Identical language is found in
        the covenants for Phases I and III of Cattail Creek Subdivision. Peter Thompson
        confirmed his familiarity with this requirement prior to his purchase of the lot.

46.     Section 3 of Article IV of the covenants for Phases I, II, and III of Cattail Creek
        Subdivision also provide that the CCCA may take such action as the board of directors
        deems appropriate, including finishing the exterior of the building, and the cost of
        doing so shall be the responsibility of the owner. In lieu of such an action, the
        covenants further provide that "the Association may take such action as is available by
        law, including an injunction, or for damages." Plaintiff's Exh. 2, 4 and 6.

47.     By the terms of the Amended & Restated Covenants from 2008, all developments
        within Cattail Creek Subdivision were made subject to the Cattail Creek Design
        Regulations, which were contained in a separate writing.

48.     Section 5.7 of the Design Regulations referenced in the Amended & Restated
        Covenants, contains the same language with respect to completion as the original
        covenants, in that "[a]ny structure to be erected in accordance with an approval so
        given must be erected and completed within one (1) year from the date of approval."
        Plaintiff's Exh. 7.

11

49. Section 5.7 of the Design Regulations also provides remedies for failure to complete a structure in a timely manner in accordance with the approved plans that is almost exactly the same language found in Section 3 of Article IV of the original Phase II covenants with respect to the available remedies, including the provision that "the Association may take such action as is available by law, including an injunction, or action for damages."

50. By March of 2009, or one year after Mr. Thompson received approval for his house plans, the Thompson residence was not complete and remained incomplete through the time of trial in this matter.

51. Jaymie Larsen served as a board member for CCCA. Ms. Larsen testified the Board for CCCA agreed to pursue the enforcement process for exterior problems of buildings, landscaping and the like. The Board agreed they did not need to pursue covenant compliance for the interior of buildings.

51. On April 30, 2010, a notice of trustee's sale was recorded in the office of the Gallatin County Clerk and Recorder, as document no. 2359896, for the sale of Mr. Thompson's former residence in Cimarron Subdivision No. 2, Gallatin County, Montana. Plaintiff's Exh. 39.

53. By the terms of that notice, Mr. Thompson failed to make his monthly payment for his former house, beginning on October 1, 2009 and continuing through the date of the notice.

54. By the terms of the notice, the sale of Mr. Thompson's former residence was to take place on September 7, 2010.

12

55. On September 8, 2010, a Trustee's Deed was recorded in the office of the Gallatin County Clerk and Recorder as Document No. 2369520. Plaintiff's Exh. 40.

56. By the terms of that trustee's deed, Peter Thompson's interest in his former residence in Cimmaron Subdivision No. 2, Gallatin County, Montana, was conveyed to US Bank, N.A., as the highest bidder at the trustee's sale on September 7, 2010.

57. On September 24, 2010, Mr. Thompson obtained a certificate of occupancy from the City of Bozeman Building Inspection Division allowing him and his family to occupy a portion of their house, characterized as the "lower area." The Certificate was revoked on July 30, 2013. Plaintiff's Exh. 33.

58. Upon receiving the certificate of occupancy, Mr. Thompson and his family began residing in the house, even though portions of the interior and the exterior were incomplete.

59. On April 28, 2011, CCCA sent a letter to Peter Thompson asking him to complete the exterior plans, landscaping and driveway" by June 30, 2011. Plaintiff's Exh. 22. This letter was sent 3 years after Peter Thompson began his construction. Ms. Larsen testified she expected a follow-up response from Mr. Thompson if he was unable to comply with this timetable. The April 28, 2011 letter indicates Peter Thompson was sent prior notices of his failure to comply with the covenants. However, CCCA was unable to locate a copy of the prior notices and Peter Thompson denies receiving any. The April 28, 2011 letter sent by Above and Beyond is addressed to Peter Thompson at his former address.

60. Peter Thompson wrote a letter to Travis Munter on March 23, 2012. Peter Thompson believed Mr. Munter was the acting president of HOA board. Defendant's Exh. M. In

13

that letter, Peter Thompson refers to various disputes he had with the management companies for the homeowner's association.

60. At the time CCCA sent Peter Thompson the compliance letter dated April 28, 2011, CCCA was also dealing with several developers who had built foundations for structures, but found themselves unable to complete the structures due to the nationwide recession that was hampering the building industry. CCCA put pressure on all owners who owned incomplete structures, including Peter Thompson.

62. Peter Thompson responded to the demands of the association by questioning the validity of the Amended & Restated Covenants and by voicing numerous complaints about the CCCA board and the activities of other members within the subdivision, which eventually resulted in the association hiring legal counsel in an attempt to move Mr. Thompson along with his construction. Mr. Thompson personally spoke with the management company, Above and Beyond property management. As a result of his behavior with Above and Beyond staff, Above and Beyond advised CCCA they would no longer assist with enforcement issues concerning Peter Thompson and his property.

62. CCCA board hired attorney Wayne Jennings. Mr. Jennings sent a letter to Peter Thompson on March 30, 2012 requiring terms for the completion of the house and a response within seven days. Plaintiff's Exh. 28.

63. In response, Mr. Thompson sent a letter to attorney Jennings on April 12, 2012. Plaintiff's Exh. 29. Mr. Thompson likened the association to a terrorist group and indicated he would not voluntarily comply with the covenants. Mr. Thompson also complained that the efforts of the association were interfering with his ability to complete his house because he had to spend so much time dealing with the complaints

14

of his neighbors. In the five-page letter, Mr. Thompson includes his suggestion that the consolidation of the covenants was not properly completed.

64.    In his letter on page 3, Mr. Thompson suggested that the association give him until February of 2013 to finish his landscaping, exterior decks, and get his paving going, which he said he would likely complete over the upcoming summer. Plaintiff's Exh. 29.

65.    At about that same time, CCCA learned that Mr. Thompson had entered into an agreement with the City of Bozeman Building Inspection Division on June 9, 2011, concerning his house and the unfinished work. Plaintiff's Exh. 32.

66.    The June 9, 2011 agreement with the Building Inspection Division stated that Mr. Thompson no longer had a valid building permit for the property and no occupancy of the structure was approved at that time, but that the Building Inspection Division was trying to work with Mr. Thompson to allow him and his family to continue living in the structure upon certain conditions. The agreement provided that Mr. Thompson was to complete the structure 18 months from the date of the agreement, although it went on to erroneously state that the ending date was to be December 20, 2013, which was actually just over 30 months from the date of the agreement.

67.    The CCCA decided to wait to pursue legal action in the hope that Mr. Thompson would complete the structure as agreed with the City of Bozeman Building Inspection Division.

68.    Mr. Thompson did not complete the work on his house by December of 2012. On or about July 30, 2013, a copy of Mr. Thompson's certificate of occupancy for the "lower

15

area" was sent to him marked "Revoked." However, Mr. Thompson and his family continued to live in the house.

69. In spite of the representation contained in his April 12, 2012 letter, Mr. Thompson did not complete the exterior work on his house by February 2013.

70. By the spring of 2015, most of the other owners with incomplete projects had either completed their construction work, or were in the process of completing their projects. Peter Thompson's exterior problems remained. Specifically, the work remaining to be completed on the Thompson property at that time was completion of the driveway, completion of a top floor balcony, construction of a railing around another balcony that was partially constructed, and staining the wood on the house.

71. In August of 2015, the present case was initiated by the CCCA, seeking money damages from Mr. Thompson for his failure to pay his required dues to the CCCA, seeking an injunction against Mr. Thompson for parking a horse trailer in his yard, and an injunction against Mr. Thompson preventing him from continuing to live in his house until it was finished.

72. Mr. Thompson alleges the case should be dismissed on the basis of latches. Mr. Thompson argues he received no notification of enforcement regarding the exterior of his home from March 30, 2012, when he received the letter from Wayne Jennings, until 2015, when he was served in this action. Mr. Thompson also argues there was no effort to mediate the matter prior to bringing a lawsuit.

73. Ms. Larsen testified the board was hopeful Mr. Thompson would resolve his completion issues with the City of Bozeman. She testified the board did not think it

16

was fair to pursue Mr. Thompson when the City was actively addressing the construction issues. The board pursued this matter when the City's actions failed.

74. Mr. Jennings made an additional effort to secure compliance from Mr. Thompson prior to filing the lawsuit. Mr. Jennings sent Mr. Thompson a certified return receipt letter on June 3, 2015 addressed to Mr. Thompson at his preferred address, 2988 Blackbird Dr., Bozeman, MT 59718. The letter requested mediation. The certified return receipt letter was returned unopened to Mr. Jennings. Plaintiff's Exh. 43. Mr. Thompson testified he refuses to accept certified return receipt letters because they are an inconvenience to him.

75. Although Mr. Thompson initially disputed owing the dues and has continually denied the validity of the CCCA and its ability to prosecute the present action against him, in December of 2016, Mr. Thompson paid the dues that were being sought by the CCCA and also paid his dues for 2017.

76. The dues sought by the CCCA in this case were only the dues charged to each member and did not include any late fees. In the course of paying his dues, Mr. Thompson acknowledged that the amount paid was undisputed and contended that the CCCA had prevented him from paying such undisputed amount to that point, although Mr. Thompson was unable to provide any competent evidence to that effect.

77. At some point prior to initiation of this case, Mr. Thompson removed his horse trailer from the subdivision and the horse trailer has not been seen within the subdivision during the time that this case has been pending.

78. Since the initiation of this case, Mr. Thompson has also completed the concrete work for his driveway, which was one of the items sought by the CCCA to be completed.

17

79. As of the time of trial in this matter, however, Mr. Thompson did not have a valid certificate of occupancy to occupy the premises as a residence, he did not have a valid building permit, and the exterior of the house was incomplete. Specifically, one upper deck of the house was partially constructed, but in need of a railing, and another deck, which was not included in the approved plans for the house approved by the CCDC, had not been started.

80. Although the covenants for Cattail Creek Subdivision all provide that the CCCA may enter the property and take such steps to complete the project as it may deem necessary, the CCCA did not elect to follow that procedure due to the hostility displayed by Mr. Thompson, Mr. Thompson's demand that the CCCA representatives not enter his property, and a concern that after causing any work to be done on the Thompson residence, the CCCA would be inundated with warranty claims by Mr. Thompson, or by claims of injuries to persons or property resulting from such work.

81. The covenants also provide that the CCCA may seek a claim for money damages, but the CCCA felt that it would be extremely difficult to place a monetary value on the failure of Mr. Thompson to complete his house.

82. In addition, the CCCA believed that with the existing mortgage in place on the Thompson property, and the fact that Mr. Thompson's previous residence was the subject of a trustee's sale, a money judgment would be of no value.

83. The CCCA felt that it could not simply ignore the violation by Mr. Thompson due to the concern that if, in the future, it initiated a claim against other members of the CCCA, they would contend that the CCCA had failed to enforce the covenants and

that the covenants were therefore waived, which was one of the defenses raised by Mr. Thompson in the present case.

84. Mr. Thompson confirmed he can complete the exterior work necessary to satisfy the requirements of the CCCA in ninety days.

85. Article VI, Section 13 of each of the initial sets of covenants for the three phases contains a provision for the recovery of attorney fees in the event of litigation, as does Article 7, Section 7.1 of the Amended and Restated Covenants.

86. Mr. Thompson claims CCCA does not have standing to sue. Mr. Thompson testified that the Cattail Creek Phase II Covenants do not give authority to secure incorporation.

87. Cattail Creek phase II Covenants defines "Association" in Article I, Section 1 as, "shall mean the Cattail Creek Community Association, and its successors and assigns..." Plaintiff's Exh. 4. The Articles of Incorporation for the Cattail Creek Community Association apply to "Cattail Creek subdivision . . . Phases I, II and III." Plaintiff's Exh. 9. Nothing in the Cattail Creek Phase II Covenants prevents the Association from incorporating. The Cattail Creek Community Association nonprofit corporation is an "assign" of the Cattail Creek Community Association.

88. Peter Thompson argues CCCA is not complying with state law concerning nonprofit corporations and should not have authority to enforce the covenants.

89. Any factual findings contained in the following conclusions of law are hereby incorporated into these findings of fact.

From the foregoing findings of fact, the Court makes the following conclusions of law:

19

## CONCLUSIONS OF LAW

1.   The Court has jurisdiction over this matter.

2.   Cattail Creek Subdivision is a subdivision located in Gallatin County, Montana, created in three phases between August 20, 2002 and October 20, 2005.

3.   As the final plat for each phase was recorded, the developer of the subdivision also recorded protective covenants for each phase in accordance with §70-17-201, MCA, et seq. The covenants for each phase all ran with the land, as provided for in §70-17-20, MCA, which states, "every covenant contained in a grant of an estate in real property that is made for the direct benefit of the property or some part of the property then in existence runs with the land."

4.   All of the properties contained within the Cattail Creek Subdivision were initially bound by the Declaration of Covenants and Restrictions applicable to the particular phase as the time such covenants were recorded in the office of the Gallatin County Clerk and Recorder, by the terms of the Declarations.

5.   Peter Thompson became the owner of Lot 7 in Block 9 of the Plat of Cattail Creek Subdivision, Phases 2A & 2B, City of Bozeman, Gallatin County, Montana. [Plat J-369], on February 27, 2008. Peter Thompson's lot was subject to the Cattail Creek Subdivision Phase II Declaration of Covenants and Restrictions, recorded in the office of the Gallatin County Clerk and Recorder as Document No. 2131569, on November 12, 2003 at the time of his purchase.

6.   When Peter Thompson purchased his interest in the property described above, he took title to such property subject to the covenants described in Conclusion of Law no. 5,

20

above, which constituted a contract between the owners within the subdivision. See *Creveling v. Ingold*, 2006 MT 57, 331 Mont. 332, 132 P.3d 531.

6.     Each set of the original covenants, including the covenants for Phase II, provided that "[t]he Cattail Creek Community Association is charged with the duties and empowered with the rights set forth herein and By-Laws that may be adopted for governing the Board of Directors."

7.     The Amended & Restated Covenants, Phases 1, 2 & 3, recorded May 15, 2008, as document no. 2300076, records of Gallatin County, Montana, contain language almost identical to the language in the first three sets of covenants, to-wit: "The Cattail Creek Community Association is charged with the duties and empowered with the rights set forth herein and in the Cattail Creek Community Association Bylaws."

8.     When interpreting documents containing restrictive covenants, courts are to apply the same rules of construction as are applied to contracts, reading the covenants as a whole in order to ascertain their meaning, understanding the language in its ordinary and popular sense. At the same time, however, restrictive covenants are to be strictly construed. *Micklon v. Dudley*, 2007 MT 265, ¶10, 339 Mont. 373, 170 P.3d 960.

9.     In the course of interpreting restrictive covenants, "it is not the proper role of the judiciary to insert modifying language into clearly written and unambiguous instruments where the parties to the instrument declined to do so." *Creveling v. Ingold*, 2006 MT 57, ¶12, 331 Mont. 332, ¶12, 132 P.3d 531, ¶12.

10.    Regardless of whether one is examining the original covenants for Phase II, or the Amended and Restated Covenants adopted in 2008, it is clear that by the terms of the

21

covenants, the Cattail Creek Community Association is granted the right and the authority to enforce the terms and conditions of the covenants.

11.     The Plaintiff, Cattail Creek Community Association, therefore has a personal stake in this litigation and has standing to enforce the terms and conditions of the above-referenced covenants, regardless of the applicable version of the covenants. See, *Bryan v. Yellowstone County Elementary School District No. 2*, 2002 MT 264, 312 Mont. 257, 60 P.3d 381.

12.     Mr. Thompson has contended that the corporate entity which is the Plaintiff in this matter was improperly formed and/or that the combination of the boards for the three phases into a single board was improper. That contention is without merit for the following reasons:

      a.     In order to conclude that there were to be three associations and/or boards contemplated by the developer when the covenants for Cattail Creek Subdivision were created, it is necessary to add language to the covenants. As stated in each set of covenants, an owner within Cattail Creek Subdivision is a member of the Cattail Creek Community Association. The developer did not describe three different associations, each particular to a certain phase. Mr. Thompson's contention would require that the covenants for Phase II describe the association as the Cattail Creek Community Association -*Phase II.* None of the covenants for any of the phases reference an association particular to that phase. "In the construction of an instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance contained

22

therein, not to insert what has been omitted, or to omit what has been inserted." § 1-4-101, MCA

b.  "Several contracts relating to the same matters, between the same parties, and made as parts of one transaction are to be taken together." § 28-3-203, MCA. As stated in *Knutson v. Bitterroot Intern. Systems, Inc.*, 2000 MT 203, 300 Mont 511, 5 P.3d 554, that statute is generally not applicable in cases in which no ambiguity exists in the writing, but in looking at all of the covenants for the entire subdivision, Plaintiff's position is bolstered. All of the covenants for Cattail Creek Subdivision, whether original or amended, consistently describe the Cattail Creek Community Association as the single association of owners within Cattail Creek and the Articles of Incorporation for the Cattail Creek Community Association reference a single association for all three phases of Cattail Creek Subdivision.

c.  In addition to the foregoing, all of the initial covenants contemplate that additional land could be added to the subdivision and the covenants for Phase III include the word "*Final*" in the title. "The whole of a contract is to be taken together so as to give effect to every part if reasonably practicable, each clause helping to interpret the other." § 28-3-202, MCA. If the covenants for each phase in Cattail Creek Subdivision were to be independent of the others, then the word "*Final*" in the Phase III covenants is meaningless.

13. In the present case, the payment of the association dues by Peter Thompson and the removal of the horse trailer from the subdivision have rendered those issues moot, leaving only the issue of whether Peter Thompson has breached the covenant requiring

23

the completion of his house within one year, and the appropriate remedy in such situation.

14.     It is unnecessary for the Court to determine whether the 2008 Amended and Restated Covenants are valid in this situation, since the language requiring construction to be completed within one year of plan approval is virtually identical in all three sets of phase covenants and the Amended and Restated Covenants. If the Amended and Restated Covenants are valid, then they govern in this instance. A determination of invalidity of the Amended and Restated Covenants would leave the initial Phase II covenants operative. *Bordas v. Virginia City Ranches Association*, 2004 MT 342, 324 Mont. 263, 102 P.3d 1219. Therefore, regardless of the version of the covenants applicable in this case, the outcome will be the same and the version to be applied is immaterial.

15.     The language in the covenants concerning completion of construction is unambiguous. Peter Thompson received approval for his construction plans on March 6, 2008 and was therefore required to complete his construction on or before March 6, 2009. When Mr. Thompson failed to complete his construction by that date he was in breach of the covenants and the CCCA was authorized to seek appropriate remedies. From the evidence presented, the Court concludes that the breach by Mr. Thompson was intentional and continues to be intentional.

16.     Even after Mr. Thompson failed to complete his construction in a timely manner, he was given opportunities to comply with the covenants, but he failed to avail himself of those opportunities. When he entered into the agreement with the City of Bozeman Building Inspection Division in June of 2011, he had been constructing his house for

24

more than three years. By the terms of that June 2011 agreement, he was to complete his construction in an additional 18 months. Although Mr. Thompson was not in compliance with the covenants, the CCCA was willing to go along with that plan in the hope that Mr. Thompson would get his house completed.

17. At about the same time as the CCCA learned about the agreement with the Building Inspection Division, it also received a letter from Mr. Thompson in which he represented that he could finish his house by February of 2013. The CCCA was working on getting Mr. Thompson to finish his house, along with several other projects that were incomplete, so the CCCA reasonably gave Mr. Thompson additional time. In fact, this case was not filed until 2015, when it appeared that Mr. Thompson would be the last to complete his project and that he would not do so until forced.

18. It is the conclusion of this Court that the reasons given by CCCA for delaying action against Peter Thompson are reasonable, as are the reasons given for not suing Mr. Thompson for monetary damages or engaging in self-help to complete the Thompson residence. The Court finds that pecuniary compensation would not afford adequate relief in this case and that money damages would be difficult to ascertain in any event.

19. "For every wrong there is a remedy." § 1-3-214, MCA. The Court concludes that the remedy in this matter is injunctive relief. The elements of § 27-19-102, MCA have been met by the Plaintiff and injunctive relief is appropriate. This case can be distinguished from *Westland Enterprises, Inc. v. Boyne, USA, Inc.*, 237 Mont. 186, 772 P.2d 309 (1989), in which it was determined that injunctive relief was inappropriate, due to the fact that the underlying contract could not be specifically

25

enforced. In that case, Westland Enterprises acknowledged that its rights under the contract in question were not clear. The Court responded that if Westland's rights were not clear, then Boyne's corresponding duties were not clear. *Westland*, 237 Mont. at 191, 772 P.2d at 312. As a result, the contract in question was found to be ambiguous and not specifically enforceable. The covenants for Cattail Creek, regardless of the phase or the version, all provide that construction must be completed within one year of plan approval. There is no ambiguity in that covenant and there is no reason that it cannot be specifically enforced. Therefore, neither the *Westland* case, nor § 27-19-103(5), MCA, upon which Westland was decided, are applicable in the present case.

20.    The Court further concludes that until he is forced to do so, Mr. Thompson will not complete his exterior construction. Mr. Thompson has not met the conditions of the Cattail Creek covenants and he failed to meet the conditions of his June 2011 agreement with the City of Bozeman Building Inspection Division. It has been more than five years since the date by which Mr. Thompson agreed to complete construction on his house with the City. It has been more than 2 ½ years since this case was initiated and Mr. Thompson has not completed the work that he has indicated could be completed within 90 days. Absent an order from this Court, there is no reason to believe that Mr. Thompson will complete the work on his house.

21.    The Court therefore concludes that the only way to prevent the continuing breach of the covenants by Mr. Thompson and to prevent Mr. Thompson from benefitting from his own wrongdoing, is to issue an injunction precluding Mr. Thompson from residing in his house while he remains in breach of the Cattail Creek covenants. The Court

further concludes, however, that requiring Mr. Thompson and his family to immediately vacate the premises while work is completed, without giving him an opportunity to correct the problem, would work an unnecessary hardship on Mr. Thompson and his family. Therefore, the Plaintiff is entitled to a mandatory injunction requiring Mr. Thompson to complete his exterior construction within 90 days, or vacate the premises. In order to avoid any arguments over whether the terms of the judgment are met, Mr. Thompson shall complete the upper level deck on the east side of his house and shall complete a deck or stairway beneath the unapproved second floor door on the south side of his house, above the back side of the garage, within ninety days of the date of this Order. Such work shall be inspected and approved by the City of Bozeman Building Inspection Division and Mr. Thompson shall submit a copy of the inspection approval to the Plaintiff and the Court within that ninety-day period. If Mr. Thompson cannot obtain an approved inspection within that ninety-day period, then he and his family shall immediately remove themselves from the premises until such approval is obtained.

22. Plaintiff is entitled to recover its reasonable attorney fees and court costs, regardless of the applicable version of the covenants. Within fourteen (14) days from the date of this Order, counsel for Plaintiff shall provide Mr. Thompson, and file with the Court, an affidavit of Plaintiff's reasonable attorneys' fees and costs incurred in this action.

23. Within fourteen (14) days thereafter, Mr. Thompson shall either pay the attorneys' fees and costs as stated by Plaintiff, or file with this Court a notice of objection, specifying his objections to Plaintiff's requested attorney's fees and costs. In the event of such an objection, Plaintiff's attorney shall request a hearing date from the Court.

Dated this 23 day of April, 2018.

Hon. Rienne H. McElyea
District Judge

c:    Wayne E. Jennings  emailed
      Peter Thompson    4.24.18

28

ORIGINAL

FILED

09/14/2018

Form 4(2)

Ed Smith
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 18-0539

Name    Peter Thompson

_____

Bozeman,    Montana    59718
_____
City    State    Zip
_____
[e-mail address]    thompson0089@msn.com
_____
[Designation of Party]    Defendant \ Appellant



FILED

SEP 14 2018

Ed Smith
CLERK OF THE SUPREME COURT
STATE OF MONTANA

IN THE SUPREME COURT OF THE STATE OF MONTANA

No. DA 18-0539
_____
[to be assigned by Clerk of Supreme Court]

Peter Thompson
_____,

    Appellant,

    v.                                    **NOTICE OF APPEAL**

Cattail Creek Community Association, a
Montana nonprofit corporation
_____,

    Appellee.

    Notice is given that _____Peter Thompson_____, the Appellant
                                            [Name]
named above and who is the ____Defendant_____ in
                                        [Designation of party]
the cause of action filed in the ___Eighteenth_____Judicial District, in
                                            [Judicial district]
__Gallatin_____County as Cause No. __DV-15-636CX__
                                                            [District Court Cause No.]
appeals to the Supreme Court of the State of Montana from the final written

judgment or order entered in the District Court on the __3rd__ day of



© Montana Supreme Court

**EXHIBIT C**

_____July_____, 20 18 _____.
*[Date final judgment was entered]*

**I CERTIFY:** [Check one]

☐ This appeal is subject to the mediation process required by M. R. App. P. 7, or

☒ This appeal is not subject to the mediation process required in M. R. App. P. 7.

**I CERTIFY:** [Check one]

☒ This appeal is NOT an appeal from an order certified as final under M. R. Civ. P. 54(b), or

☐ This appeal is an appeal from an order CERTIFIED as final under the M. R. Civ. P. 54(b).  A true copy of the District Court's "CERTIFICATION ORDER" is attached as exhibit "A."

**I FURTHER CERTIFY:**  [Check one]

☐ All relevant transcripts of the proceedings in this cause have been ordered from the court reporter, or

☒ I have complied with the provisions of M. R. App. P. 8(3).

**INCLUDED WITH THIS NOTICE IS:** [Check one]

☒ A copy of the order or judgment from which I am appealing, or


© Montana Supreme Court

☐ I will file a copy of the order or judgment from which I am appealing as soon as possible.  I have requested a copy of the order or judgment from the Clerk of District Court.

[Check one of the following]

☒ the filing fee of $100.00.

☐ a Motion to Proceed Without Payment of Filing Fee.

Respectfully submitted this __14th__ day of ___September___, 20 __18__.

_____
[Signature]
            Peter Thompson
_____
[Printed name]
Appellant

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was email delivered, per the direction of Mr. Jennings staff, this 14th day of September, 2018, to:

Wayne Jennings
Jennings Law Office, P.C.
517 South 22nd Avenue, Unit 3
Bozeman, MT 59718
(406) 582-1801
wayne@jenningslawmt.com

This is to certify that a true and correct copy of the foregoing was filed in the 18th district court on September 14, 2018.

BY: _____

**Case Information**

Case Number: DA 18-0539
Jurisdiction: Supreme Court
Original Court: Gallatin County District Court
Case Type: Direct Appeal - Other
Short Title: Cattail Creek Community Assoc. v. Thompson
Full Title: CATTAIL CREEK COMMUNITY ASSOCIATION, a Montana nonprofit corporation, Plaintiff and Appellee, v. PETER THOMPSON, Defendant and Appellant.
Citation: --
Case Filing Date: 09/14/2018
Origination Court Case Number: DV 15-636CX

| | | | | | |
|---|---|---|---|---|---|
| Event - Case Sent to Court (JS) | Supreme Court | 04/12/2019 | Event | Case Sent to Court | Final |
| Brief - Appellant Reply (JS) | Supreme Court | 04/10/2019 | Brief | Appellant Reply | Final |
| Extension - Appellant Grant of Extension of time until April 10, 2019 to file the Reply Brief. (JS) | Supreme Court | 03/08/2019 | Extension | Grant of Extension | Final |
| Motion - Unopposed - Extension of Time - Brief (First Request 30 Days) (Reply Brief) (JS) | Supreme Court | 03/08/2019 | Motion - Unopposed | Extension of Time - Brief (First Request 30 Days) | Final |
| Notice - Outgoing - Brief Filed (TS) | Supreme Court | 02/26/2019 | Notice - Outgoing | Brief Filed | Final |
| Brief - Appellee's Response (DA) | Supreme Court | 02/25/2019 | Brief | Appellee's Response | Final |
| Extension - Appellee is granted an extension of time until Monday, February 25, 2019, to prepare, file, and serve their Answer Brief. (DA) | Supreme Court | 01/18/2019 | Extension | Grant of Extension | Final |
| Motion - Unopposed - Extension of Time - Appellee's Brief (First Request 30 Days) (DA) | Supreme Court | 01/18/2019 | Motion - Unopposed | Extension of Time - Brief (First Request 30 Days) | Final |
| Motion - Dismiss - Appellant's Motion to Dismiss - sent to Court w/SC File (DA) | Supreme Court | 12/31/2018 | Motion | Dismiss - Appellant's Motion to Dismiss | Final |
| Order - Thompson's Motion to Dismiss shall be deemed his Opening Brief on Appeal. Appellee shall have 30 days to file the response brief. (DG) | Supreme Court | 12/27/2018 | Order | Other | Final |
| Event - Sent to Court-Pleading (DA) | Supreme Court | 12/17/2018 | Event | Sent to Court-Pleading | Final |
| Response/Objection - Response to Motion to Dismiss (DA) | Supreme Court | 12/17/2018 | Response/Objection | Response to Motion to Dismiss | Final |
| Notice - Outgoing - Transcript Filed (DA) | Supreme Court | 12/17/2018 | Notice - Outgoing | Transcript Filed | Final |
| Record - Transcript Filed for March 7, 2017 and May 16, 2017 hearings. (DA) | Supreme Court | 12/17/2018 | Record | Transcript Filed | Final |
| Brief - Appellant's Opening (DG) | Supreme Court | 12/07/2018 | Brief | Appellant's Opening | Final |
| Motion - Opposed - Dismiss - Rule 29 Motion to Dismiss. held for objection. (DG) | Supreme Court | 12/07/2018 | Motion - Opposed | Dismiss - Appellant's Motion to Dismiss | Final |
| Notice - Outgoing - District Court Record Filed (DA) | Supreme Court | 12/07/2018 | Notice - Outgoing | District Court Record Filed | Final |
| DC Record/Exhibits/Transcript Filed for Cause No. DV-15-636C consisting of 13 manila file folders; 1 box of Exhibits; and condensed Transcripts w/DVD of February 20, 21, 22, 2018 Trial & and June 22, 2018 Atty Fees hearing. (DA) | Supreme Court | 12/07/2018 | Record | DC Record/Exhibits/Transcript Filed | Final |
| Copy of answer to motion to Rule (8B) for additional transcript. Filed in District Court (BS) | Supreme Court | 10/10/2018 | Correspondence | Incoming-Other | Final |
| Copy of Plaintiff's motion to DC for Defendant /Appellant to provide entire trial transcript (BS) | Supreme Court | 09/27/2018 | Correspondence | Incoming-Other | Final |
| Notice - Incoming - Transcripts Deemed Necessary (BS) | Supreme Court | 09/14/2018 | Notice - Incoming | Transcripts Deemed Necessary | Final |
| Notice - Outgoing - Appearance Fee Paid (BS) | Supreme Court | 09/14/2018 | Notice - Outgoing | Appearance Fee Paid | Final |
| Notice - Outgoing - Appeal Notice (BS) | Supreme Court | 09/14/2018 | Notice - Outgoing | Appeal Notice | Final |
| Fees - Appearance Fee Received (BS) | Supreme Court | 09/14/2018 | Fees | Appearance Fee Received | Final |
| Notice - Incoming - Notice of Appeal Filed (BS) | Supreme Court | 09/14/2018 | Notice - Incoming | Notice of Appeal Filed | Final |