IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| PETER THOMPSON, | CV 18–75–BU–BMM–KLD |
| Plaintiff, | |
| v. | **FINDINGS AND RECOMMENDATION** |
| CITY OF BOZEMAN, a Montana Municipal Corporation, et al., | |
| Defendants. | |

This matter is before the Court on Defendants Jennings Law Office, P.C., Wayne Jennings and Amy Hanson's (collectively "Jennings Defendants") Motion to Dismiss (Doc. 25).  For the reasons stated below, the Court recommends the motion be granted as to all claims against the Jennings Defendants.

I.      **Background**

On November 30, 2018, Plaintiff Peter Thompson ("Thompson") filed an 18 page Complaint (with an additional 102 pages of attachments) alleging various constitutional violations and torts against numerous defendants.  (Doc. 1).  On

1

January 21, 2019, Thompson, who is appearing pro se in this action, moved the Court to vacate the previously scheduled Preliminary Pretrial Conference and extend the time for service, stating that he needed additional time to file and serve an amended complaint intended to improve the clarity of his pleading and ensure the appropriate parties were named.  (Doc. 7).  The Court granted this motion, and allowed Thompson until March 14, 2019 to effectuate service on all Defendants.  (Doc. 8).  On March 14, 2019, Thompson filed his Amended Complaint, consisting 104 pages and an additional 164 pages of exhibits.  (Doc. 9).  Summons were issued on March 15, 2019, and the Jennings Defendants were ultimately served on April 1, 2019.  (Docs. 26-1 and 26-2).

Although Thompson's Amended Complaint is lengthy and confusing, it appears that the gravamen of his issues with the Jennings Defendants arises from litigation Wayne Jennings undertook against Thompson on behalf of the Cattail Creek Community Association in *Cattail Creek Community Association v. Peter Thompson*, DV-15-636CX (Mont. 18th Jud. District) ("Cattail Creek litigation"). For the purpose of addressing the Jennings Defendants' motion to dismiss, the Court summarizes the pertinent facts based on the allegations in the Amended

Complaint.[1]  The Court accepts Thompson's allegations as true for the purpose of addressing the motion to dismiss.

Cattail Creek Community Association ("CCCA") is the Homeowners' Association for the Cattail Creek Subdivision, Phases I, II and III in Gallatin County, Montana.  In 2008, Thompson purchased a lot from Richard Embry in Cattail Creek Phase II, on which he intended to build a home for himself and his family, with a basement apartment.  Thompson's understanding at the time he purchased the lot from Embry was that the lot was zoned R2, which would allow him to build a separate basement apartment contained within the home he planned to build on the lot.

On July 2, 2007, the CCCA's predecessor, the Cattail Creek Homeowner's Association, sent a letter to all homeowners in the subdivision.  (Doc. 9-8).  The letter discussed how having three separate homeowners' association ("HOA") boards and three separate covenant documents (for the three phases of the subdivision) was unwieldy, and requested the property owners to vote on consolidation of the phase HOA boards into one board and combination of the covenant documents with some modifications of the existing documents.

---

[1] Thompson's Amended Complaint contains voluminous facts alleged against multiple defendants.  For the sake of clarity, only those facts which are necessary to provide background and determine the Jennings Defendants' motion to dismiss will be set out in this document.

Thompson alleges that sometime between late 2007 and 2008, attorney Susan Swimley met with members of the three separate HOA boards to conspire to develop a system or enterprise that could be used to defraud property owners within the Cattail Creek subdivision of their right to use their property in a number of ways, including accessory dwelling units (ADUs).  This was allegedly accomplished by misleading the subdivision homeowners about the true intent of the change to the covenant documents, including removing the design regulations from the covenants.  Swimley allegedly provided the document templates which were used by the board members.

In January 2008, the homeowners were provided ballots asking them to approve amendments to the covenants for the subdivision.  The ballots were counted at a meeting on March 26, 2008, and ultimately the Amended and Restated Covenants for Cattail Creek Phases 1, 2 and 3, Design Review Regulations for Phases 1, 2 and 3, and Bylaws for the Cattail Creek Community Association Phases 1, 2 and 3 were approved by a 75% vote.  Notably, the ballots were sent prior to Thompson purchasing his property but counted and operative after Thompson purchased his property.

In May 2008, the CCCA Board filed amended and restated covenants, which applied to all three phases of the Cattail Creek subdivision.  Thompson alleges the design regulations were separated out of the new, combined covenants in an

attempt to conceal new restrictions on design regulations, including a limitation on the ability of homeowners to have ADUs within the confines of their structures, as Thompson was planning to do.

Over the next 4 years, Thompson had a number of significant issues relating to the construction of his home, including disputes over completion requirements, the re-zoning of his home from R-1 to R-2, and the expiration of certificates of occupancy issued by the City of Bozeman.  CCCA had multiple communications with Thompson about his failure to complete the exterior of his home, including landscaping and the driveway, as well as about his occupancy of the home despite its incomplete status.

At some point, Thompson requested minutes from all CCCA meetings during the 2007/2008 time period, in an effort to learn how the CCCA changed the covenants during the time period when Thompson owned his property.  In March 2012, Jaymie Larsen, who was then the president of the CCCA Board, informed Thompson that CCCA would provide copies of minutes for the past three years, dating back to March 2009.

On March 2012, Wayne Jennings, who was the attorney representing CCCA, wrote to Thompson, and said that CCCA was entitled to seek an injunction against Thompson for violating covenants, and that if it was successful, it would be entitled to attorney fees and costs.  Wayne Jennings told Thompson that if he

wished to avoid that expense, as well as being forced from his home, he had to agree to the following terms:  immediately remove a storage container that was on the property; immediately remove a stock trailer in which he kept his construction tools; and propose a timetable in which to complete exterior finishes to the home, the driveway and landscaping.  According to Thompson, Jennings stated that if Thompson agreed to those terms, CCCA would allow him to remain in his home while the tasks were being completed.

Thompson alleges that, in 2017, the CCCA Board amended its regulations to grant it the specific authority to evict property owners who do not complete construction within a time-table.  He alleges the amendments were illegally obtained by using mail-in ballots and that the CCCA Board fraudulently deceived the homeowners by not specifying changes in the regulations.

In Count Five, Thompson alleges Wayne Jennings and Jennings Law PC conspired with the CCCA and others to abuse the legal process by filing the Cattail Creek litigation to ratify the CCCA's existence.  Thompson's theory is that the CCCA was formed illegally and in violation of Montana law, and the Cattail Creek litigation was used to force Thompson to pay $825 in association dues, thereby allowing the CCCA to argue that Thompson "ratified" the existence of the CCCA. Thompson points out that he specifically reserved the right to challenge the

legitimacy of the amended and restated covenants, as well as the CCCA itself, in an email sent to Jennings on September 16, 2015.  (Doc. 9-15).

Thompson alternatively alleges that the conduct of the CCCA, and of the Jennings Defendants on behalf of the CCCA, resulted in malicious prosecution against him.  Specifically, he alleges that the covenants specify that mediation is to be used for disputes, and the Jennings Defendants used registered mail to contact him, which they knew he would not pick up.  Thompson alleges the Jennings Defendants conspired with others to maliciously burden him with litigation, instead of mediation, by ensuring he did not pick up the letter requesting mediation. Thompson alleges that Wayne Jennings and others conspired to maliciously abuse the legal system to retaliate against him in an effort to remove the Thompson family from their home because the co-Defendants knew Thompson would eventually expose the "skullduggery" engaged in by the co-Defendants.

In Count Six, Thompson alleges Wayne Jennings, Jennings Law PC and other co-conspirators conspired to violate his civil rights by selectively enforcing covenants in retaliation for Thompson challenging the legal authority of the CCCA.   Thompson alleges this was done under the color of law in the Cattail Creek litigation, and lists a number of conspiratorial acts he believes Jennings performed under the color of law in that litigation, including avoiding meeting and conferring on scheduling matters, conspiring with the state court to keep his

counter-claims and third-party claims from being recognized, avoiding meeting to establish undisputed facts prior to trial, and obtaining findings of fact and conclusions of law from the state court dismissing his tortious interference counter-claim without having a hearing allowing him to cross-examine people who provided affidavits. Thompson alleges all of this conduct violated his civil rights, and was done under the color of law.[2] Thompson seeks compensatory, nominal and punitive damages for his claims against the Jennings Defendants. (Doc. 9 at 88).

The Jennings Defendants move to dismiss the Amended Complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The Jennings Defendants argue Thompson fails to state a claim for relief because he cannot plead facts to establish the essential elements of his claims, and his claims are otherwise barred by res judicata, *Rooker-Feldman,* and the statute of limitations. Alternatively, the Jennings Defendants move to dismiss under Rule 12(b)(5) based on untimely service of process.

## II.    Legal Standards

### A. Rule 12(b)(6)

---

[2] In his response brief, Thompson argues that, although not specifically plead as such, the Court could hypothesize that Jennings is or was a principal actor in a RICO conspiracy involving multiple other defendants.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint will survive a motion to dismiss if it alleges facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. But if the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory," then dismissal under Rule 12(b)(6) is appropriate. *Mendiondo*, 521 F.3d at 1104.

In determining whether this standard is satisfied, the court must accept all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiffs. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). But the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or

unreasonable inferences." *In re Gilead Sciences Securities Litigation*, 536 F.3d 1049, 1055 (9th Cir. 2008).  Assessing a claim's plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950.

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted).  However, a court may take judicial notice of "matters of public record." *Lee*, 250 F.3d at 688-89. Specifically, a court may take judicial notice of other state or federal court proceedings.  *Duckett v. Godinez*, 67 F.3d 734, 741 (9th Cir. 1995), and *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988).  *See also Burbank-Glendale-Pasadena Airport Authority v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (allowing judicial notice of pleadings in other cases).

### B.  Pro se Pleadings

Because Thompson is proceeding pro se the Court must construe his pleading liberally, and "however inartfully pleaded, [it] must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). *See also Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989).  However, "pro se litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record."

*Jacobsen v. Filler,* 790 F.2d 1362, 1364 (9th Cir. 1986).  This means that "[p]ro se litigants must follow the same rules of procedure that govern other litigants." *King v. Atiyeh,* 814 F.2d 565, 576 (9th Cir. 1987).  Nevertheless, in the motion to dismiss context, courts are to construe pro se documents liberally and give pro se litigants the benefit of any doubt.  *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted).

In view of the required liberal construction, "a district court should grant leave to amend even if no request to amend the pleading was made, <u>unless</u> it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (emphasis added) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

## III.   Discussion

### A. Abuse of Process/Malicious Prosecution (Count Five)

The Jennings Defendants move to dismiss Thompson's claim for abuse of process, or alternatively malicious prosecution, on the ground that Thompson cannot state a claim for either cause of action.  The Court agrees.

In order to prevail on a claim for abuse of process, Thompson must show "(1) an ulterior purpose; and (2) a willful act in the use of the process not proper in the regular course of the proceeding."  *Judd v. BNSF Ry.*, 186 P.3d 214, ¶ 24 (Mont. 2008) (citing *Seltzer v. Morton*, 154 P.3d 561, ¶ 57 (Mont. 2007)).

"Pressing valid legal claims to their regular conclusion, even with an ulterior motive, does not by itself constitute abuse of process." *Brault v. Smith*, 679 P.2d 236, 240 (Mont. 1984). Instead, Thompson must show that the Jennings Defendants used process to coerce him to do "some collateral thing which he could not be legally and regularly compelled to do." *Brault*, 679 P.2d at 240. *See also Hughes v. Lynch*, 164 P.3d 913, ¶ 21 (Mont. 2007).

Malicious prosecution, on the other hand, requires Thompson to prove the following elements:

(1) A judicial proceeding was commenced and prosecuted against the plaintiff;

(2) The defendant was responsible for instigating, prosecuting or continuing such proceeding;

(3) There was a lack of probable cause for the defendant's acts;

(4) The defendant was actuated by malice;

(5) The judicial proceeding terminated favorably for the plaintiff; and

(6) The plaintiff suffered damage.

*White v. State*, 305 P.3d 795, ¶ 31 (Mont. 2013) (citing *Hughes* at ¶ 12). Each of the elements must be satisfied, and a failure to prove even one of the elements justifies entering judgment as a matter of law against the plaintiff. *White*, 305 P.3d at ¶ 32.

The Cattail Creek litigation resulted in a judicial determination that the formation of the CCCA was appropriate and that, regardless of which version of the covenants was used, Thompson was required to finish building his home within a year. (Doc. 26-1 at ¶ 12, 14). The state court enjoined Thompson from residing in his home while he remained in breach of the covenants of the CCCA, though it gave him ninety days from the date of the order to complete the construction on the house and have it satisfactorily inspected by the City of Bozeman Building Inspection Division. (Doc. 26-1 at ¶ 21). The state court also awarded the CCCA its reasonable attorney fees and costs. (Doc. 26-1 at ¶ 22). Thompson appealed this decision to the Montana Supreme Court, as was his right to do so. However, the Montana Supreme Court agreed with the CCCA, and upheld the injunction, as well as the attorney fee award. *Cattail Creek Comm. Ass'n. v. Thompson*, 450 P.3d 865 (Mont. 2019).

The Jennings Defendants correctly note that Thompson was not the prevailing party in the Cattail Creek litigation, and thus he cannot meet the fifth element of a malicious prosecution claim, namely that the judicial proceeding terminated favorably for him. Thompson also cannot establish the third factor, that the Jennings Defendants acted without probable cause. "[P]robable causes exists to initiate a civil suit when a party reasonably believes that facts exist and (1) the party correctly or reasonably believes that the facts support a valid claim under the

applicable law; or (2) the party takes this position in reliance upon the advice of counsel, sought in good faith and received after a full disclosure of all relevant facts within the party's knowledge and information."  *Judd*,  ¶ 16, citing *Hughes*, ¶ 16.

The Jennings Defendants, of course, were the lawyer and law firm hired by the CCCA to bring the lawsuit against Thompson in state court.  Thompson has not argued that there is any evidence that the Jennings Defendants unreasonably believed that he was in violation of the covenants by failing to complete construction on his home within one year.  In fact, the state court found as a matter of law that the position argued by the Jennings Defendants in the Cattail Creek litigation was reasonable and correct.  Because Thompson cannot establish all five elements of malicious prosecution, to the extent he has pleaded that claim against the Jennings Defendants, it fails as a matter of law.

Similarly, Thompson cannot proceed on an abuse of process claim against the Jennings Defendants because he cannot establish that the Jennings Defendants used process to coerce him into doing a collateral thing which he could not be regularly compelled to do.  The Montana Supreme Court has noted that "there is no liability where the defendant has done nothing more than carry out the process to its authorized intentions, even though with bad intentions."  *Hughes*, ¶ 21, citing Prosser, *The Law of Torts* § 121, at 857 (4th ed., West 1971).  Thompson appears to

claim that the payment of dues he initially disputed was the result of the filing of the Cattail Creek litigation, and that it was an improper abuse of process for the lawsuit to be filed for that purpose.  However, there is no dispute that the dues were owed to the CCCA, and if it took filing the Cattail Creek litigation to get Thompson to pay the dues, there is nothing improper as Thompson could be regularly compelled to pay the CCCA dues, per the applicable covenants.  Absent a factually supported allegation that the Cattail Creek litigation coerced Thompson into doing something he could not be regularly compelled to do, Thompson's claim for abuse for process fails as a matter of law.

### B. Civil Rights Conspiracy Claim (Count Six)

Thompson alleges the Jennings Defendants, along with other defendants, conspired to violate his civil rights by seeking to enforce the covenants against him through the Cattail Creek litigation, which he alleges is the basis for acting "under the color of law."  He alleges Wayne Jennings conspired with the state court to keep his claims against the CCCA from being recognized, thus robbing him of his right to have a civil jury trial and that, in general, Jennings' litigation conduct violated his civil rights.   (Doc. 9 at ¶¶ 176-178).  Although it is not technically plead within the body of the First Amended Complaint, Thompson entitled the document "Title 42 Section 1983, 1985, 1986, 1988 Civil Rights Complaint with Alternative Pleading as Civil RICO Act Violations," so the Court presumes Count

Six is meant to allege application of those statutes.[3]   However, as neither the

Jennings Defendants nor Thompson argue that he has brought a § 1985 or § 1986

claim against the Jennings Defendants, the Court considers those statutes

inapplicable to the Jennings Defendants.[4]

### 1.  42 U.S.C. § 1983

"Section 1983 affords a remedy for civil rights violations by state actors, not

private citizens or entities.  *Ezra v. Leifer*, 2018 U.S. Dist. LEXIS 145796, at *19

(C.D. Cal. 2018).  "A private individual may be liable under § 1983 if []he

conspired or entered joint action with a state actor."  *Franklin*, 312 F.3d 423, 441

(9th Cir. 2002) (citing *Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 783 (9th Cir

2001).

---

[3] Thompson did not include a RICO allegation against the Jennings Defendants in his First Amended Complaint, although he included a RICO allegation against other defendants in the conspiracy count in the section entitled "Summary of the preceding causes of action."  Doc. 9 at ¶¶ 180-197.  Thompson argues that he plead sufficient facts to make out a RICO claim against the Jennings Defendants. Although it is a stretch, the Court will liberally construe the First Amended Complaint to incorporate a RICO allegation against the Jennings Defendants.

[4] The Court notes that Thompson would not be likely to bring a claim under 42 U.S.C. § 1985, as such claims require a showing of racial or class based animus, which has not been alleged.  *See Arres v. City of Fresno*, 2011 U.S. Dist. LEXIS 10425, * 28-29 (E.D. Cal. January 26, 2011).  In the absence of a § 1985 claim, Thompson cannot maintain a claim under 42 U.S.C. § 1986.  *Brown v. Contra Costa Cnty.*, 2012 U.S. Dist. Lexis 145431, * 28 (N.D. Cal. October 9, 2012).

Thompson makes no attempt to establish that the Jennings Defendants were state actors in relation to the Cattail Creek litigation, and "[a]n attorney's role in representing a client in civil litigation and '[i]nvoking state legal procedures does not constitute 'joint action' or 'conspiracy' with state officials sufficient to satisfy section 1983's state action requirement.'" *Spreadbury v. Bitterroot Pub. Library*, 2011 U.S. Dist. LEXIS 115651, * 17 (D. Mont. July 21, 2011) (citing *Schucker v. Rockwood*, 846 F.2d 1202, 1205 (9th Cir. 1988).   To the extent Thompson claims a direct § 1983 violation against the Jennings Defendants, that claim fails as a matter of law.

To the extent Thompson has alleged a conspiracy to violate his civil rights under 42 U.S.C. § 1983, he must prove "an agreement or 'meeting of the minds' to violate constitutional rights." *Franklin v. Fox*, 312 F.3d at 441 (citing *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989).  Thompson "must show (1) an agreement between the defendants to deprive the plaintiff of a constitutional right, (2) an overt act in furtherance of the conspiracy, and (3) a constitutional deprivation."  *Davis v. Powell*, 901 F.Supp. 2d 1196, 1217 (9th Cir. 2012) (citations omitted).   Vague and conclusory allegations that a state actor participated in an alleged civil rights violation "are not sufficient to withstand a motion to dismiss." *Davis*, 901 F.Supp. 2d at 1217.

Thompson's argument appears to be that the Jennings Defendants conspired "with the allegedly corrupt state district court Judge to deny Thompson his due process right to have his counter claims heard in state court" while the state court was hearing the Cattail Creek litigation.  (Doc. 56 at 18).  Thompson refers to page 81 of Doc. 9, wherein he apparently quotes an exchange between himself, the state court judge, and Wayne Jennings about whether certain counterclaims should be characterized as such, or as affirmative defenses.  Thompson apparently believes that this exchange is evidence of a conspiracy to deny him due process in the Cattail Creek litigation, but provides no specific facts to even suggest a meeting of the minds.   Moreover, an attorney's opinion about the characterization of legal claims, in response to a question from a judge, cannot reasonably be construed to be an overt act in furtherance of any conspiracy.  Finally, any determination of the validity of Thompson's claims against the CCCA in the Cattail Creek litigation was ultimately made by the judge, not the Jennings Defendants.  Because there is no reasonable factual allegation supporting a claim that the Jennings Defendants acted jointly with a state actor, Thompson's § 1983 claim fails as a matter of law.  Because he cannot proceed on his § 1983 claim, any claim for attorney fees under 42 U.S.C. § 1988 is similarly precluded.[5]

---

[5] The Jennings Defendants also argue that Thompson's claim for abuse of process and 42 U.S.C. § 1983 claims were brought outside the applicable statute of

### 2. Racketeer Influenced and Corrupt Organizations Act ("RICO")

Thompson's First Amended Complaint did not plead an alternatively plead RICO conspiracy against the Jennings Defendants.  However, Thompson argues that the Court could "hypothesize" facts which would make out a RICO claim against the Jennings Defendants.  (Doc. 56 at 2).  The Court will construe Thompson's § 1983 conspiracy liberally, and will analyze his conspiracy allegations as if they were plead as a RICO claim.

The Racketeer Influenced and Corrupt Organizations Act authorizes a civil action for anyone who is injured in his business or property by a violation of RICO's criminal provisions.  18 U.S.C. § 1964(c).  To establish a RICO claim, a plaintiff must show "(1) conduct (2) of an 'enterprise' (3) through a 'pattern' (4) of racketeering activity (or 'predicate acts') (5) causing injury to the plaintiff's 'business or property.'"  *Tanaka v. First Haw. Bank*, 104 F.Supp.2d 1243, 1245 (D. Haw. 2000).  A RICO claim alleging fraud must be alleged with particularity under F.R.Civ.P 9(b), and must provide notice of "the time, place, manner of each predicate act, the nature of the scheme involved, and the role of each defendant in the scheme."  *Pfau v. Mortenson*, 858 F.Supp. 2d 1150, 1155 (D. Mont. 2012)

---

limitations.  Because the Court is disposing of these claims on substantive grounds, it does not reach this issue.

(citing *Lancaster Cmty Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405

(9th Cir. 1991)).  Conduct which does not rise to the level of organized criminal

activity will not support a finding of a RICO conspiracy.  *Lockwood v. Sheppard,*

*Mullin, Richter & Hampton, LLP*, 2009 U.S. Dist. LEXIS 133046 (C.D. Cal 2009)

(November 24, 2009) (noting that only attorney conduct which goes "well beyond"

capacity as a legal representative will give rise to RICO liability).

The predicate acts complained of by Thompson are found in paragraphs 176-

178, in which he alleges that the Jennings Defendants conspired with the CCCA,

its board members and management entities by retaliating against Thompson for

challenging the legal authority of the CCCA.  (Doc. 9 at 79-80.)  However, even

construed liberally, the complaints made by Thompson simply allege a

dissatisfaction with how litigation was conducted.  For example, he claims that

Wayne Jennings avoided meeting with him to discuss scheduling matters and to

negotiate undisputed facts prior to trial, and he argues that Jennings committed

fraud upon the court at the cost hearing.  Yet Thompson has no specific facts to

support any claim of fraud, and his dissatisfaction with how Wayne Jennings

litigated the Cattail Creek case falls far short of the pattern of predicate criminal

acts needed to prosecute a viable RICO claim.  As noted above, Thompson also

relies on a verbal exchange between the state court judge and Wayne Jennings as

evidence of a conspiracy with the judge to dismiss his counterclaims.  However,

there is no evidence of fraud in that exchange---Wayne Jennings simply responded to a direct question from the state court judge about his opinion of Thompson's proposed counterclaims.  Because Thompson's allegations do not rise to the level of a RICO conspiracy, to the extent that he actually pleaded such a conspiracy against the Jennings Defendants, it must be dismissed as a matter of law.

### C.   Dismissal with Prejudice

A pro se plaintiff must be given leave to amend unless it is "absolutely clear that the deficiencies of the complaint cannot be cured by amendment." *Weilburg v. Shapiro*, 488 F.3d 1202, 1205 (9th Cir. 2007).  Although leave to amend is liberally granted, dismissal with prejudice is appropriate where amendment would be futile. *Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015). Here, Thompson has already had one opportunity to amend his Complaint. The Court concludes that the pleading deficiencies set forth above cannot be cured by the allegation of additional facts, and it would be futile to permit Thompson to file a Second Amended Complaint as to the Jennings Defendants. Because amendment would be futile, Thompson's claims against the Jennings Defendants should be dismissed with prejudice pursuant to Rule 12(b)(6) on the ground that he cannot plead facts to establish the essential elements of his claims. Having so concluded, the Court need not address the Jennings Defendants' arguments that Thompson's claims are

otherwise barred by res judicata, *Rooker-Feldman*, and the statute of limitations or their alternative motion to dismiss under Rule 12(b)(5).

## IV.    Conclusion

For the reasons explained above, the Court concludes that the Amended Complaint fails to state a claim for relief against the Jennings Defendants. Accordingly,

IT IS RECOMMENDED that the Jennings Defendants' Rule 12(b)(6) motion to dismiss the Amended Complaint be GRANTED, and Thompson's claims against them be dismissed with prejudice.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived.

DATED this 3rd day of March, 2020.

Kathleen L. DeSoto
United States Magistrate Judge