IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| PETER THOMPSON, | CV 18–75–BU–BMM–KLD |
| Plaintiff, | |
| v. | **FINDINGS AND** |
| | **RECOMMENDATION** |
| CITY OF BOZEMAN, a Montana Municipal Corporation, et al., | |
| Defendants. | |

This matter is before the Court on Defendant Arthur Wittich and Wittich Law P.C.'s (collectively "Wittich Defendants") Motion to Dismiss (Doc. 67). For the reasons stated below, the Court recommends the motion be granted as to all claims against the Wittich Defendants.

## I.  Background

On November 30, 2018, Plaintiff Peter Thompson ("Thompson") filed an 18 page Complaint (with an additional 102 pages of attachments) alleging various constitutional violations and torts against numerous defendants. (Doc. 1). On January 21, 2019, Thompson, who is appearing pro se in this action, moved the Court to vacate the previously scheduled Preliminary Pretrial Conference and extend the time for service, stating that he needed additional time to file and serve

an amended complaint intended to improve the clarity of his pleading and ensure the appropriate parties were named.  (Doc. 7).  The Court granted this motion, and allowed Thompson until March 14, 2019 to effectuate service on all Defendants. (Doc. 8).  On March 14, 2019, Thompson filed his Amended Complaint, consisting of 104 pages and an additional 164 pages of exhibits.  (Doc. 9).  Summons were issued on March 15, 2019.

Although Thompson's Amended Complaint is lengthy and confusing, it appears that the gravamen of his issues with the Wittich Defendants arises from their representation of Thompson in 2011 and 2012 in connection with issues he had with property he owned in the Cattail Creek subdivision in Bozeman, Montana.

Cattail Creek Community Association ("CCCA") is the Homeowners' Association for the Cattail Creek Subdivision, Phases I, II and III in Gallatin County, Montana.  In 2008, Thompson purchased a lot from Richard Embry in Cattail Creek Phase II, on which he intended to build a home for himself and his family, with a basement apartment.  Thompson's understanding at the time he purchased the lot from Embry was that the lot was zoned R-2, which would allow him to build a separate basement apartment contained within the home he planned to build on the lot.

On July 2, 2007, the CCCA's predecessor, the Cattail Creek Homeowner's

Association, sent a letter to all homeowners in the subdivision.  (Doc. 9-8).  The letter discussed how having three separate homeowners' association ("HOA") boards and three separate covenant documents (for the three phases of the subdivision) was unwieldy, and requested the property owners to vote on consolidation of the phase HOA boards into one board and combination of the covenant documents with some modifications of the existing documents. Thompson alleges that sometime between late 2007 and 2008, attorney Susan Swimley met with members of the three separate HOA boards to conspire to develop a system or enterprise that could be used to defraud property owners within the Cattail Creek subdivision of their right to use their property in a number of ways, including accessory dwelling units (ADUs).  This was allegedly accomplished by misleading the subdivision homeowners about the true intent of the change to the covenant documents, including removing the design regulations from the covenants.  Swimley allegedly provided the document templates which were used by the board members.

In January 2008, the homeowners were provided ballots asking them to approve amendments to the covenants for the subdivision.  The ballots were counted at a meeting on March 26, 2008, and ultimately the Amended and Restated Covenants for Cattail Creek Phases 1, 2 and 3, Design Review Regulations for Phases 1, 2 and 3, and Bylaws for the Cattail Creek Community Association

Phases 1, 2 and 3 were approved by a 75% vote.  Notably, the ballots were sent prior to Thompson purchasing his property but counted and operative after Thompson purchased his property.

In May 2008, the CCCA Board filed amended and restated covenants, which applied to all three phases of the Cattail Creek subdivision.  Thompson alleges the design regulations were separated out of the new, combined covenants in an attempt to conceal new restrictions on design regulations, including a limitation on the ability of homeowners to have ADUs within the confines of their structures, as Thompson was planning to do.

Over the next 4 years, Thompson had a number of significant issues relating to the construction of his home, including disputes over completion requirements, the re-zoning of his home from R-1 to R-2, and the expiration of certificates of occupancy issued by the City of Bozeman.  CCCA had multiple communications with Thompson about his failure to complete the exterior of his home, including landscaping and the driveway, as well as about his occupancy of the home despite its incomplete status.

In July 2011, Thompson hired the Wittich Defendants to represent him in connection with his ongoing disputes with the CCCA and to determine if there was a possible title insurance claim.  Thompson understood that Art Wittich was going to initiate a title insurance claim and was going to investigate the liability of the

City of Bozeman, Richard Embry, the CCCA and others for the errors of the

zoning documents and title encumbrances on his property.  (Doc. 9 at ¶ 119).

Thompson alleges that he understood Art Wittich would provide answers in short

order, but months later, Art Wittich provided a zoning report which just stated the

records were in the possession of Bozeman attorney Mike Lilly.  Art Wittich

issued an opinion letter on March 6, 2012, which was many months after

Thompson expected to receive the opinion.  Thompson then determined to move

forward without the Wittich Defendants, and he asked the CCCA for records which

might support his title insurance claim.  In March 2012, Jaymie Larsen, who was

then the president of the CCCA Board, informed Thompson that the CCCA would

provide copies of minutes for the past three years, dating back to March 2009.

There are no direct factual allegations involving the Wittich Defendants after

March 2012.

In Count Two (the ADU Conspiracy), Thompson alleges that the Wittich

Defendants conspired with other Defendants "for the purpose of abetting American

Land Title Company and Commonwealth Land Title in selling Plaintiff illusory

title insurance and for the purpose of defrauding Plaintiff of his existing property

rights to have a second dwelling unit on his property. . ."  (Doc. 9 at ¶ 102).

Thompson alleges, upon information and belief, that the Wittich law firm

represented a number of other Defendants, and that Art Wittich had a "long history

of friendship and business dealings" with American Land Title Company and its owner.  (Doc. 9 at ¶ 120).  He alleges that the Wittich Defendants violated the covenant of good faith and fair dealing by taking Thompson as a client and delaying the opinion letter, allowing the CCCA to refuse to provide him documents, and concealing from him the nature of their involvement with the CCCA and other Defendants.  Thompson alleges the Wittich Defendants conspired with other Defendants to trick him and his mortgage provider, U.S. Bank, into believing they had purchased title insurance to cover his construction of his home.  (Doc. 9 at ¶ 121).

Thompson further alleges the Wittich Defendants have refused to provide him office notes and destroyed evidence that Thompson believes would prove his case against the Wittich Defendants.  (Doc. 9 at ¶ 130).  Thompson summarizes his claims against the Wittich Defendants as "[c]onspiracy to commit and or conceal fraud" and states that his claims against the Wittich Defendants are alternately plead as a Racketeer Influenced and Corrupt Organization Act ("RICO") conspiracy and are actionable under the Montana Consumer Protection Act ("MCPA").  (Doc. 9 at ¶¶ 185 and 186).  Thompson seeks compensatory, nominal and punitive damages.  (Doc. 9 at 88).

The Wittich Defendants move to dismiss the Amended Complaint with Prejudice under Federal Rule of Civil Procedure 12(b)(6) for failure to state a

claim upon which relief can be granted.  The Wittich Defendants argue that Thompson's claims are all barred by the applicable statutes of limitation; that he failed to plead facts establishing the essential elements of his claims; and that the Amended Complaint should be dismissed because it is not a short and plain statement as required by Federal Rule of Civil Procedure 8.

## II.   Legal Standards

### A. Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint will survive a motion to dismiss if it alleges facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. But if the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory," then dismissal under Rule 12(b)(6) is appropriate.

*Mendiondo*, 521 F.3d at 1104.

In determining whether this standard is satisfied, the court must accept all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiffs. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). But the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litigation*, 536 F.3d 1049, 1055 (9th Cir. 2008). Assessing a claim's plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950.

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted). However, a court may take judicial notice of "matters of public record." *Lee*, 250 F.3d at 688-89. Specifically, a court may take judicial notice of other state or federal court proceedings. *Duckett v. Godinez*, 67 F.3d 734, 741 (9th Cir. 1995), and *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988). *See also Burbank-Glendale-Pasadena Airport Authority v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (allowing judicial notice of pleadings in other cases).

**B. Pro se Pleadings**

Because Thompson is proceeding pro se the Court must construe his pleading liberally, and "however inartfully pleaded, [it] must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). *See also Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989).   However, "pro se litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record." *Jacobsen v. Filler,* 790 F.2d 1362, 1364 (9th Cir. 1986).  This means that "[p]ro se litigants must follow the same rules of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d 565, 576 (9th Cir. 1987).  Nevertheless, in the motion to dismiss context, courts are to construe pro se documents liberally and give pro se litigants the benefit of any doubt.  *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted).

In view of the required liberal construction, "a district court should grant leave to amend even if no request to amend the pleading was made, <u>unless</u> it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (emphasis added) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

/ / /

/ / /

## III.   Discussion

### A. State Law Claims

Construing the Amended Complaint liberally, it appears Thompson has potentially alleged four state law claims against the Wittich Defendants:  fraud, breach of the covenant of good faith and fair dealing, violation of the MCPA, and intentional or negligent spoliation of evidence.  The Wittich Defendants move to dismiss Thompson's state claims on the ground that he failed to bring them within the applicable statutes of limitations.[1]  The Court agrees.

### 1.  Fraud, Covenant of Good Faith and Fair Dealing, Montana Consumer Protection Act and Spoliation of Evidence

Thompson makes four state law claims against the Wittich Defendants, including fraud, violation of the covenant of good faith and fair dealing, violation of the MCPA, and spoliation of evidence.[2]   Thompson vaguely alleges that the Wittich Defendants' conduct could support a claim for violation of the covenant of good faith and fair dealing.  Although technically this claim could sound in contract, which has a longer statute of limitations, the Montana Supreme Court has consistently held that "[t]he gravamen of the claim, not the label attached, controls

---

[1] When a federal court exercises pendent jurisdiction over state law claims, it applies substantive state law. *Shannon-Vail Five, Inc. v. Bunch,* 270 F.3d 1207, 1210 (9th Cir. 2001).

[2] Although Thompson does not specifically allege the elements of these claims, the Court will construe his Amended Complaint liberally and consider whether he is able to proceed with each of the claims.

the limitations period to be applied to that claim." *Erickson v. Croft*, 760 P.2d 706, 710 (Mont. 1988). When a claim sounds in legal malpractice, the three-year statute of limitations in Mont. Code Ann. § 27-2-206 applies.[3] *Schweitzer v. Estate of Halko*, 751 P.2d 1064, 1066 (Mont. 1988).

All of Thompson's allegations of misconduct by the Wittich Defendants arise from the attorney-client relationship, and are based on the theory that, as his attorney, Art Wittich owed Thompson a duty of care. Accordingly, Thompson's claims for fraud, breach of the covenant of good faith and fair dealing, violation of the MCPA, and spoliation of evidence sound in legal malpractice, and are subject to a three-year statute of limitations.

The facts giving rise to Thompson's claims that the Wittich Defendants committed fraud, breached the covenant of good faith and fair dealing, violated the MCPA, and spoliated evidence were known to Thompson shortly after he terminated his professional relationship with the Wittich Defendants. By March 2012, Thompson knew the opinion letter was delayed and he knew he was unable to get documents from the CCCA. Thompson knew he requested documents from the Wittich Defendants shortly after parting ways with the firm, and that they

---

[3] Thompson appears to acknowledge this concept, as he argues that the two-year fraud statute of limitations in Montana Code Annotated § 27-2-203 does not apply to his fraud claim based on the attorney-client relationship.

refused to provide those documents to him.[4]  (Doc. 9-12 at 23).

Thompson argues that the Wittich Defendants' "feigned fidelity" to him is another basis for a claim of violation of the covenant of good faith and fair dealing, and he claims the feigned fidelity is ongoing.  However, the professional relationship between the Wittich Defendants and Thompson ended in March 2012, and Thompson does not allege any conduct against the Wittich Defendants after that date.  The facts giving rise to any claims Thompson had against the Wittich Defendants were known to him in March 2012, and by his own admission, he was damaged shortly thereafter.  Thus, his claims had both been discovered and accrued, and at that point the period of limitation began.  Because Thompson failed to bring these claims within three years of that date, they are barred.

### 2.  Equitable Tolling

Thompson argues that even if the statutes of limitations ran on his state law claims, the Court should equitably toll the statutes because of the attorney-client relationship.  In support of that argument, Thompson cites *Estate of Watkins v. Hedman, Hileman & Lacosta*, 91 P.3d 1264, in which the Montana Supreme Court held that in the attorney-client context, failure to discover facts constituting a claim may be excused, and the statute of limitations tolled, based on the confidential

---

[4] The Wittich Defendants note that Thompson does not actually allege that the law firm notes were destroyed, but for the purposes of determining whether the statute of limitations bars the claim, the Court is assuming that they were.

relationship between the parties.  *Watkins*, ¶ 19.  The plaintiff in *Watkins* alleged the attorney for Carolyn Watkins negligently drafted a will and trust for Carolyn and her husband in 1992.  *Watkins*, ¶ 1.  The estate plan was very complex, and consisted of wills as well as trusts that were set up pursuant to a trust agreement.  *Watkins*, ¶ 5.  Carolyn wanted the trust agreement to remain revocable, and over a number of years she asked the attorney multiple times if the trust was revocable.  The attorney constantly assured Carolyn that it was, but in 1995 finally admitted that it was irrevocable.  *Watkins*, ¶ ¶ 5-8.

After Carolyn died, her estate sued the attorney, who raised a statute of limitations defense.  The Montana Supreme Court held that Carolyn did not discover the facts giving rise to her claim until 1995, when the attorney's admission was confirmed by an expert tax attorney.  *Watkins*, ¶¶ 9, 20.  The Court noted ". . .Carolyn's mistake was in relying upon her attorney.  However, that is not a mistake for which she should be punished."  *Watkins*, ¶ 21.

*Watkins* also noted that Carolyn's failure to discover her attorney's negligence could be excused because the legal transaction was incredibly complex.  *Watkins*, ¶ 22.  Because numerous tax and legal professionals could not understand the estate plan, the Court found it was clearly beyond Carolyn's understanding, and thus her failure to discover the negligence was excusable.  *Watkins*, ¶ 23.

Finally, the *Watkins* court held that if the attorney had fraudulently

concealed her malpractice, the statute of limitations would be tolled pursuant to Mont. Code Ann. § 27-2-206, which tolls the statute until the plaintiff discovers, or with reasonable diligence, should have discovered, the error or omission. *Watkins*, ¶ 24. In the attorney-client relationship, that can be a failure by the attorney to reveal pertinent information, such as the fact that the trust agreement was irrevocable, or active concealment by the attorney of her mistake. *Watkins*, ¶ 25.

Contrary to Thompson's assertions, the *Watkins* case does not provide support for his claim of equitable tolling of the statute of limitations applicable to his state law claims. Thompson had actual knowledge of the facts giving rise to his claims against the Wittich Defendants in March 2012, and he admits that the delay in providing the opinion and the failure to provide law firm documents in 2012 are the basis of his claims. Thompson argues that because he claims these facts were concealed, the Court must take that assertion as true, but the Court is not required to accept conclusory, unwarranted deductions of fact or legal conclusions couched as factual allegations. Unlike the plaintiff in *Watkins*, Thompson knew of the facts giving rise to his claims against the Wittich Defendants, and he failed to act on them. He did not rely on misrepresentations by the Wittich Defendants, and in fact parted ways with the Wittich Defendants after the delay in providing the legal opinion. There are no grounds for equitable tolling.

/ / /

### B. Federal Law Claims

Thompson alleges the Wittich Defendants joined the "ADU conspiracy," which he generally describes as a conspiracy to prevent him from being allowed to use his property as he wished, specifically to construct an ADU on his property. Thompson alleges this goal was accomplished by illegally changing the HOA documents, concealing the changes and taking steps to prevent him from being able to either build the ADU or recover on a title insurance claim.

### 1. 42 U.S.C § 1983

Although it is not technically plead within the body of the First Amended Complaint, Thompson entitled the document "Title 42 Section 1983, 1985, 1986, 1988 Civil Rights Complaint with Alternative Pleading as Civil RICO Act Violations." The Wittich Defendants move the court to find that Thompson did not bring any civil rights claims under these statutes within the applicable statute of limitations. Thompson does not directly state that he did, or intended to, bring civil rights claims against the Wittich Defendants, so it is unclear to the Court whether such claims exist.[5] Nevertheless, even if the Amended Complaint is

---

[5] The Court notes that Thompson would not be able to bring a claim under 42 U.S.C. § 1985, as such claims require a showing of racial or class based animus, which has not been alleged. *See Arres v. City of Fresno*, 2011 U.S. Dist. LEXIS 10425, * 28-29 (E.D. Cal. January 26, 2011). In the absence of a § 1985 claim, Thompson cannot maintain a claim under 42 U.S.C. § 1986. *Brown v. Contra Costa Cnty.*, 2012 U.S. Dist. Lexis 145431, * 28 (N.D. Cal. October 9, 2012).

construed liberally to incorporate such allegations, Thompson's civil rights claims are barred by the statute of limitations.

The statute of limitations for actions brought under 42 U.S.C. § 1983 is determined by looking to the forum state for the statute of limitations applicable to personal injury cases. *Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004). Accrual of a civil rights claim is determined by federal law. *Maldonado*, 370 F.3d at 955. A federal civil rights claim "accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Maldonado*, 370 F.3d at 955 (citation omitted). In Montana, the statute of limitations for personal injury actions is three years. Mont. Code Ann. § 27-2-204. Accordingly, Thompson had three years after he learned of, or had reason to know of, the injury which forms the basis of any civil rights claim under 42 U.S.C. § 1983.

As discussed above, Thompson had actual knowledge in March 2012 of the conduct he alleges forms the basis of his complaints against the Wittich Defendants. Because he failed to bring his § 1983 claims against the Wittich Defendants within three years, those claims are barred as a matter of law.

Thompson argues that because he alleges a conspiracy against all Defendants, the "last overt act" in furtherance of the conspiracy governs the running of the statute of limitations, and he argues that other Defendants have committed acts in furtherance of the conspiracy in 2017 and 2019. However,

Thompson misapprehends the last overt act doctrine.  In *Gibson v. U.S.*, 781 F.2d 1334 (9th Cir. 1984), the Ninth Circuit explained that "injury and damage in a civil conspiracy flow from the overt acts, not from 'the mere continuance of a conspiracy.'"  *Gibson*, 781 F.2d at 1340 (citing *Kadar Corp. v. Milbury*, 549 F.2d 230, 234 (1st Cir. 1977)).  Accordingly, "the cause of action runs separately from each overt act that is alleged to cause damage to the plaintiff."  *Gibson*, 781 F.2d at 1340.  The Court noted that "separate conspiracies may not be characterized as a single grand conspiracy for procedural advantage."  *Gibson*, 781 F.2d at 1340 (citing *Fitzgerald v. Seamans*, 553 F.2d 220, 240 (D.C. Cir. 1977)).

The conspiracy Thompson alleges against the Wittich Defendants is to commit fraud by preventing him from accessing HOA documents and preventing him from accessing law firm documents which he believes would help in his lawsuit.  Those are the last overt acts alleged against the Wittich Defendants, and Thompson admits his professional relationship with the Wittich Defendants ended in 2012.  To the extent Thompson has alleged those acts were part of a larger conspiracy, there is just a continuation of the effects of any conspiracy attributable to the Wittich Defendants, with a complete absence of any overt acts involving the Wittich Defendants after March 2012.  Accordingly, Thompson was required to bring his § 1983 conspiracy claims by March 2015; because he did not, his claims are barred.  As Thompson cannot proceed on his § 1983 claims, any claim for

attorney fees under 42 U.S.C. § 1988 is similarly precluded.

### 2. RICO Conspiracy

Thompson's First Amended Complaint alternately pleads the ADU conspiracy counts as a RICO conspiracy against the Wittich Defendants. The Racketeer Influenced and Corrupt Organizations Act authorizes a civil action for anyone who is injured in his business or property by a violation of RICO's criminal provisions. 18 U.S.C. § 1964(c). To establish a RICO claim, a plaintiff must show "(1) conduct (2) of an 'enterprise' (3) through a 'pattern' (4) of racketeering activity (or 'predicate acts') (5) causing injury to the plaintiff's 'business or property.'" *Tanaka v. First Haw. Bank*, 104 F.Supp.2d 1243, 1245 (D. Haw. 2000).

The statute of limitations for bringing a RICO claim is four years. *Rotella v. Wood*, 528 U.S. 549, 552 (2000). The Ninth Circuit follows the two-part "injury discovery rule," which provides that "the civil RICO limitations period 'begins to run when a plaintiff knows or should know of the injury that underlies his cause of action.'" *Grimmett v. Wood*, 75 F.3d 506, 510 (9th Cir. 1996) (citing *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 220 (4th Cir. 1987)). "The plaintiff need not discover that the injury is part of a 'pattern of racketeering' for the period to begin to run." *Grimmet*, 75 F.3d at 510 (citing *McCool v. Strata Oil Co.*, 972 F.2d 1452, 1465 (7th Cir. 1992)).

Additionally, under the second, "separate accrual rule" of the injury discovery rule, "a new cause of action accrues for each new and independent injury, even if the RICO violation causing the injury happened more than four years before." *Grimmett*, 75 F.3d at 510 (citing *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1103 (2nd Cir. 1988). For the statute of limitations to restart, there must be an action which is a "new and independent act that is not merely a reaffirmation of a previous act" and that act "must inflict new and accumulating injury on the plaintiff." *Grimmett*, 75 F.3d at 513. A continuation of an allegedly fraudulent scheme does not restart the statute of limitations. *Lockwood v. Sheppard, Mullin, Richter & Hampton, LLP*, 2009 U.S. Dist. LEXIS 133046, *13 (C.D. Cal. Nov. 24, 2009).

Thompson contends that the Wittich Defendants are part of a RICO conspiracy to commit fraud, resulting in his inability to build an ADU on his property. The last overt act he alleges against the Wittich Defendants was in March 2012, at which time Thompson knew he was unable to build on his property and knew that he was unable to get the documents he wanted from the CCCA because Art Wittich's opinion was delayed. Thompson knew the Wittich Defendants were not giving him the law firm documents he wanted, and knew that, in his opinion, those actions by the Wittich Defendants were causing him harm. At that point, his RICO conspiracy claim against the Wittich Defendants was both

discovered and accrued under the injury discovery rule, and the four-year statute of limitations began to run.  Accordingly, Thompson should have filed his RICO claim against the Wittich Defendants by March 2016 at the latest.[6]

Thompson argues that the statute of limitations for his RICO claim either has not yet accrued, or accrued in 2019, because others with whom the Wittich Defendants allegedly conspired committed acts in furtherance of the conspiracy as late as 2019.  However, this "last predicate act" theory has been rejected by the United States Supreme Court and the Ninth Circuit.  *See Rotella*, 528 U.S. at 554-555 and *Grimmett*, 75 F.3d at 511.  As soon as Thompson knew of the injury which he claims the Wittich Defendants inflicted, the statute began to run; any subsequent acts which are mere continuations of the original conspiracy to commit fraud do not restart the statute of limitations.

Thompson also argues that the RICO statute of limitations should be equitably tolled.  Equitable tolling, whether it is called fraudulent concealment or equitable estoppel, only applies when "the plaintiff shows that he neither knew, nor in the exercise of due diligence, could reasonably have known of the offense." *Tanaka*, 104 F.Supp.2d  at 1252 (citing *Klehr v. A.O. Smith Corp.*, 521 U.S. 179,

---

[6] Thompson also alleges that he filed a claim against the Wittich Defendants on April 25, 2016, which is the date he filed an answer in the Cattail Creek litigation.  (Doc. 152-1 at 2; Doc. 9 at 12).  However, the Wittich Defendants, while discussed in Thompson's state court filings, were not parties to that litigation and so that filing date is irrelevant to this case as to the Wittich Defendants.

195 (1997)).  In a case alleging fraud, there must be allegations of ". . . 'active

conduct by a defendant, *above and beyond the wrongdoing upon which the*

*plaintiff's claim is filed*, to prevent the plaintiff from suing in time' . . . . Otherwise

there would always be tolling in a case alleging fraud."  *Tanaka*, 104 F.Supp.2d at

1253 (emphasis added) (citing *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1177 (9th

Cir. 2000)).

Thompson had actual knowledge in March 2012 of the fraud he alleges the

Wittich Defendants committed, and thus equitable tolling does not save his RICO

claim.  Unlike a situation in which the alleged bad actor conceals the injury, thus

lulling the plaintiff into sleeping on his rights, the fraud alleged by Thompson is

the withholding of documents and delaying of providing an opinion letter, which

Thompson undisputedly knew about in March 2012.  He had actual knowledge of

the injury and he had actual knowledge of the claimed damages resulting from that

injury.  Because Thompson cannot show that the Wittich Defendants fraudulently

concealed their alleged bad acts, equitable tolling does not apply.

### C. Dismissal with Prejudice

A pro se plaintiff must be given leave to amend unless it is "absolutely clear

that the deficiencies of the complaint cannot be cured by amendment." *Weilburg v.*

*Shapiro*, 488 F.3d 1202, 1205 (9th Cir. 2007).  Although leave to amend is liberally

granted, dismissal with prejudice is appropriate where amendment would be futile.

*Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015). Here, Thompson has already had one opportunity to amend his Complaint. The Court concludes that the pleading deficiencies set forth above cannot be cured by the allegation of additional facts, and it would be futile to permit Thompson to file a Second Amended Complaint as to the Wittich Defendants. Because amendment would be futile, Thompson's claims against the Wittich Defendants should be dismissed with prejudice pursuant to Rule 12(b)(6) on the ground that his claims are barred by the applicable statutes of limitation.  Having so concluded, the Court need not address the Wittich Defendants' arguments that Thompson's claims should be dismissed because he fails to plead facts establishing the essential elements of his claims and because his Amended Complaint is not a short and plain statement as required by Federal Rule of Civil Procedure 8.

## IV.    Conclusion

For the reasons explained above, the Court concludes that the Amended Complaint fails to state a claim for relief against the Wittich Defendants. Accordingly,

IT IS RECOMMENDED that the Wittich Defendants' Rule 12(b)(6) motion to dismiss the Amended Complaint be GRANTED, and Thompson's claims against them be dismissed with prejudice.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of

the Findings and Recommendation of the United States Magistrate Judge upon the

parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to

the findings and recommendations must be filed with the Clerk of Court and copies

served on opposing counsel within fourteen (14) days after entry hereof, or

objection is waived.

DATED this 16th day of March, 2020.

Kathleen L. DeSoto
United States Magistrate Judge