IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| PETER THOMPSON,<br><br>    Plaintiff,<br><br>  v.<br><br>CITY OF BOZEMAN, a Montana<br>Municipal Corporation, et al.,<br><br>    Defendants. | CV 18–75–BU–BMM–KLD<br><br><br>**FINDINGS AND<br>RECOMMENDATION** |

This matter is before the Court on Defendants Susan B. Swimley, Inc., and Susan B. Swimley's (collectively "Swimley Defendants") Motion to Dismiss (Doc. 20).  For the reasons stated below, the Court recommends the motion be granted as to all claims against the Swimley Defendants.

## I. Background

On November 30, 2018, Plaintiff Peter Thompson ("Thompson") filed an 18-page Complaint (with an additional 102 pages of attachments) alleging various constitutional violations and torts against numerous defendants.  (Doc. 1).  On January 21, 2019, Thompson, who is appearing pro se in this action, moved the Court to vacate the previously scheduled Preliminary Pretrial Conference and extend the time for service, stating that he needed additional time to file and serve

an amended complaint intended to improve the clarity of his pleading and ensure the appropriate parties were named.  (Doc. 7).  The Court granted this motion, and allowed Thompson until March 14, 2019 to effectuate service on all Defendants. (Doc. 8).  On March 14, 2019, Thompson filed his Amended Complaint, consisting of 104 pages and an additional 164 pages of exhibits.  (Doc. 9).  Summons were issued on March 15, 2019.

Although Thompson's Amended Complaint is lengthy and confusing, it appears that the gravamen of his issues with the Swimley Defendants is related to their involvement with the drafting and filing of Articles of Incorporation for the Cattail Creek Community Association ("CCCA"), as well as participation in an alleged conspiracy to conceal the contents of various documents filed with the Montana Secretary of State.

The CCCA is the Homeowners' Association for the Cattail Creek Subdivision, Phases I, II, and III in Gallatin County, Montana.  In 2008, Thompson purchased a lot from Richard Embry in Cattail Creek Phase II, on which he intended to build a home for himself and his family, with a basement apartment. Thompson's understanding at the time he purchased the lot from Embry was that the lot was zoned R-2, which would allow him to build a separate basement apartment contained within the home he planned to build on the lot.

On July 2, 2007, the CCCA's apparent predecessor, the Cattail Creek

Homeowner's Association, sent a letter to all homeowners in the subdivision. (Doc. 9-8). The letter discussed how having three separate homeowners' association ("HOA") boards and three separate covenant documents (for the three phases of the subdivision) was unwieldy, and requested the property owners to vote on consolidation of the phase HOA boards into one board and combination of the covenant documents with some modifications of the existing documents. Thompson alleges that sometime between late 2007 and 2008, Susan Swimley met with members of the three separate HOA boards to conspire to develop a system or enterprise that could be used to defraud property owners within the Cattail Creek subdivision of their right to use their property in a number of ways, including accessory dwelling units (ADUs). This was allegedly accomplished by misleading the subdivision homeowners about the true intent of the change to the covenant documents, including removing the design regulations from the covenants. Swimley allegedly provided the document templates which were used by the board members.

In January 2008, the homeowners were provided ballots asking them to approve amendments to the covenants for the subdivision. The ballots were counted at a meeting on March 26, 2008, and ultimately the Amended and Restated Covenants for Cattail Creek Phases 1, 2, and 3, Design Review Regulations for Phases 1, 2, and 3, and Bylaws for the Cattail Creek Community Association

Phases 1, 2, and 3 were approved by a 75% vote.  Notably, the ballots were sent prior to Thompson purchasing his property but counted and operative after Thompson purchased his property.

In May 2008, the CCCA Board filed amended and restated covenants, which applied to all three phases of the Cattail Creek subdivision.  Thompson alleges the design regulations were separated out of the new, combined covenants in an attempt to conceal new restrictions on design regulations, including a limitation on the ability of homeowners to have ADUs within the confines of their structures, as Thompson was planning to do.  The Swimley Defendants apparently prepared the documents that were used as a template for these new covenants, which were filed after Thompson closed on his property.  (Doc. 9-12 at 8; Doc. 9 at ¶ ¶ 82 and 83).

Thompson further alleges that the Swimley Defendants had "conspiratorial meetings" with employees or principals of Intrinsik Architecture for the purpose of putting together a conspiracy to develop an enterprise to defraud people of their property rights and to conceal the illegal alterations of the HOA documents, which results in the loss of certain property rights.  (Doc. 9 at ¶ ¶ 82 and 84).

Over the next four years, Thompson had a number of significant issues relating to the construction of his home, including disputes over completion requirements, the re-zoning of his home from R-1 to R-2, and the expiration of certificates of occupancy issued by the City of Bozeman.  CCCA had multiple

communications with Thompson about his failure to complete the exterior of his home, including landscaping and the driveway, as well as about his occupancy of the home despite its incomplete status.

In July 2011, Thompson hired Art Wittich and his firm, Wittich Law P.C., to represent him in connection with his ongoing disputes with the CCCA and to determine if there was a possible title insurance claim.  Thompson understood that Art Wittich was going to initiate a title insurance claim and was going to investigate the liability of the City of Bozeman, Richard Embry, the CCCA and others for the errors of the zoning documents and title encumbrances on his property.  (Doc. 9 at ¶ 119).  Thompson met with an employee of the Wittich Law Firm, Amanda Menasco, on July 18, 2011, and together they reviewed "title insurance documents, contacts with the HOA, HOA design review comments from Intrinsik Architecture, the seller etc."  (Doc. 9-12 at ¶ 85).  Thompson and his wife then met with Art Wittich on July 19, 2011, and they discussed "the folks involved and [the] perceived issues."  (Doc. 9-12 at ¶ 86).   At that time, Thompson understood that significant issues included whether the amended covenants were lawful, and how those covenants were amended without his knowledge.  (Doc. 9-12 at ¶ 86).

Art Wittich issued an opinion letter on March 6, 2012, which was many months after Thompson expected to receive the opinion.  Thompson then

determined to move forward without the help of the Wittich Law Firm, and he asked the CCCA for records which might support his title insurance claim.  In March 2012, Jaymie Larsen, who was then the president of the CCCA Board, informed Thompson that the CCCA would provide copies of minutes for the past three years, dating back to March 2009.

In his summary of his causes of actions, Thompson alleges that Susan Swimley "breached her duty to the original covenant contract associations" and abetted the CCCA Board in fraudulently concealing "forged" articles of incorporation and unlawful covenant amendments.  (Doc. 9 at ¶ 193).  Thompson states that the claims against Swimley are alternatively plead as mail or wire fraud.  Although Thompson's summary does not state as such, it appears based on the factual allegations in the Amended Complaint that Thompson also alleges the ADU conspiracy against Swimley.  Thompson seeks compensatory, nominal and punitive damages.  (Doc. 9 at 88).

The Swimley Defendants move to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  The Swimley Defendants argue that Thompson's claims are all barred by the applicable statutes of limitation, that he failed to plead facts establishing the essential elements of his claim, and that he failed to plead fraud with particularity.

## II.     Legal Standards

### A. Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint will survive a motion to dismiss if it alleges facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. But if the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory," then dismissal under Rule 12(b)(6) is appropriate. *Mendiondo*, 521 F.3d at 1104.

In determining whether this standard is satisfied, the court must accept all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiffs. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). But the court is "not bound to accept as true a legal conclusion couched as a factual

allegation." *Twombly*, 550 U.S. at 555. "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litigation*, 536 F.3d 1049, 1055 (9th Cir. 2008). Assessing a claim's plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950.

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted). However, a court may take judicial notice of "matters of public record." *Lee*, 250 F.3d at 688-89. Specifically, a court may take judicial notice of other state or federal court proceedings. *Duckett v. Godinez*, 67 F.3d 734, 741 (9th Cir. 1995), and *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988). *See also Burbank-Glendale-Pasadena Airport Authority v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (allowing judicial notice of pleadings in other cases).

### B. Pro se Pleadings

Because Thompson is proceeding pro se the Court must construe his pleading liberally, and "however inartfully pleaded, [it] must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). *See also Neitzke v. Williams*,

490 U.S. 319, 330 n.9 (1989).   However, "pro se litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record." *Jacobsen v. Filler,* 790 F.2d 1362, 1364 (9th Cir. 1986).  This means that "[p]ro se litigants must follow the same rules of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d 565, 576 (9th Cir. 1987).  Nevertheless, in the motion to dismiss context, courts are to construe pro se documents liberally and give pro se litigants the benefit of any doubt.  *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted).

In view of the required liberal construction, "a district court should grant leave to amend even if no request to amend the pleading was made, <u>unless</u> it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (emphasis added) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

## III.   Discussion

### A. State Law Claims

Construing the Amended Complaint liberally, it appears Thompson has potentially alleged two state law claims against the Swimley Defendants:  fraud and breach of duty, which the Court interprets to be negligence.  The Swimley Defendants move to dismiss Thompson's state claims on the ground that he failed

to bring them within the applicable statutes of limitations.[1]  The Court agrees.

### 1. Fraud

Thompson alleges the Swimley Defendants acted fraudulently, or abetted others who acted fraudulently, in the creation of HOA documents that allegedly robbed homeowners of their right to develop their property.[2]

The statute of limitations for fraud is two years.  Mont. Code Ann. § 27-2-203.  The cause of action accrues when the aggrieved party discovers "the facts constituting the fraud or mistake."  Mont. Code Ann. § 27-2-203.  A claim accrues "when all the elements of the claim or cause exist or have occurred, [and] the right to maintain an action on the claim or cause is complete. . . ."  Mont. Code Ann. § 27-2-102(1)(a).  "Lack of knowledge of a claim does not postpone the beginning of the period of limitation."  *Norbeck v. Flathead Cty.*, 438 P.3d 811, ¶ 18 (Mont. 2019); Mont. Code Ann. § 27-2-102(2).   "[W]hether there has been a 'discovery' of facts sufficient to start the running of the statute of limitations is a question of law."  *Holman v. Hansen*, 773 P.2d 1200, 1203 (Mont. 1989).

---

[1] When a federal court exercises pendent jurisdiction over state law claims, it applies substantive state law. *Shannon-Vail Five, Inc. v. Bunch,* 270 F.3d 1207, 1210 (9th Cir. 2001).

[2] The Swimley Defendants note Thompson does not plead fraud specifically as required by both F.R.Civ.P. 9(b) and Mont.R.Civ.P. 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2008) (federal courts look to state law for elements of fraud claim but apply F.R.Civ.P 9(b)'s heightened pleading standard). However, the Court will construe his Amended Complaint liberally and consider whether he is able to proceed with his fraud claims.

Thompson alleges the Swimley Defendants either committed actual fraud, or abetted others who did, by drafting and filing the Articles of Incorporation for the CCCA and by providing or drafting documents or document templates which were used by the CCCA to change the covenants applicable to the property he purchased in early 2008.[3]  All of the conduct the Swimley Defendants are accused of occurred, at the latest, by 2008, when templates were used to revise the covenants for the CCCA.   At that time, Thompson was on notice, or in actual possession, of facts which put him on inquiry notice which, if he followed such inquiry, would have led him to the facts of the alleged fraud.  *See Holman*, 773 P.2d at 1203.

Even if Thompson claims to not have had information or notice about the facts surrounding the alleged fraud in 2008, it cannot reasonably be disputed that he had sufficient information in July 2011, when he hired Art Wittich to investigate the liability of the CCCA, among others, related to zoning documents and title encumbrances resulting in his inability to develop his property as he chose.  At that time, Thompson's claim of fraud against the Swimley Defendants had been discovered and had accrued: he knew the documents were different than he believed when he purchased the land and he knew he had been harmed by the

---

[3] Swimley Defendants ask the Court to take judicial notice of Montana Secretary of State website which reflects the actual date of filing the original Articles of Incorporation as 2006, not 2007 as alleged in the Amended Complaint. Thompson does not appear to challenge this date.  *See* Doc. 53 at 12.

change in documents.  At that time, he had the right to bring a claim of fraud against the Swimley Defendants, and he did not do so by July 2013, or within two years of the latest date of discovery and accrual.

Thompson argues that the 2008 revised covenant document "is a tainted document that stains all those who handled it."  (Doc. 53 at 12).  Thompson argues that the Swimley Defendants are "at the heart of everything" and states that Susan Swimley is "in effect the founding architect of the ongoing live conspiracy against Plaintiff Thompson and hundreds of others."  (Doc. 53 at 15).  Even assuming for the purpose of this motion that the Swimley Defendants' alleged fraud in 2008 is the bedrock of the larger conspiracy Thompson alleges, the facts which form the basis of the Swimley Defendants' fraud were known to Thompson, at the latest, in July 2011 when he sought legal counsel for the purpose of suing a number of people.

Thompson claims that he did not receive a copy of the Articles of Incorporation until 2017, presumably in the course of separate state litigation with the CCCA, and he argues that the statute of limitations should be tolled.  However, the Montana Supreme Court has held that, in the context of a fraud claim, a party is entitled to toll the statute of limitations only when there has been "the employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquisition of information disclosing a right of action."  *Holman*, 773 P.2d

at 1203 (citing *Monroe v. Harper*, 518 P.2d 788, 790 (Mont. 1974)).

Contrary to Thompson's assertion, he cannot rely on tolling to resurrect his fraud claim. First, while he claims to have not received the Articles of Incorporation until 2017, that document is publicly filed with the Montana Secretary of State and available to anyone who chooses to inquire. Second, there is no evidence or even allegation that the Swimley Defendants took action that could be considered "affirmative conduct . . . calculated to obscure the existence of the cause of action" as required under Montana law. *Holman*, 773 P.2d at 1203. There is no basis to invoke the tolling of the statute of limitations as to Thompson's claim of fraud. Because Thompson failed to bring his fraud claim within the statute of limitations, it is barred as a matter of law.

### 2.  Negligence

Although it is not entirely clear, it appears Thompson alleges the Swimley Defendants breached duties they owed to the original covenant contract associations, which appears to include the original three separate HOA boards which existed prior to the creation of the CCCA. A claim for negligence must be brought within three years. Mont. Code Ann. § 27-2-2-4; *Norbeck*, ¶ 17. As with Thompson's fraud claim, the negligence claim against the Swimley Defendants is barred as a matter of law because Thompson did not bring it within the statute of limitations.

Thompson claims that the Swimley Defendants breached their duty to the original covenant contract associations, assumedly by revising the covenants in a manner which prejudiced homeowners such as himself.  But even if that is true, Thompson knew about that in 2011 when he sought legal counsel to advise him on potential liability for the changes in the covenants that restricted his use of his property.  The statute of limitations on his negligence claim against the Swimley Defendants ran in July 2014, long before Thompson filed this case.  Accordingly, the negligence claim fails as a matter of law.

### B.  Federal Law Claims

Although Thompson does not specifically state so in his summary of claims against the Swimley Defendants in his Amended Complaint, he alleges in his response brief that the Swimley Defendants are part of the "ADU conspiracy," which he generally describes in the Amended Complaint as a conspiracy to prevent him from being allowed to use his property as he wished, specifically to construct an ADU on his property.  Thompson alleges this goal was accomplished by illegally changing the HOA documents, concealing the changes, and taking steps to prevent him from being able to either build the ADU or recover on a title insurance claim.

### 1.  42 U.S.C § 1983

The Swimley Defendants correctly note that, under Montana law, the

inability to bring an underlying tort claim is fatal to a claim of civil conspiracy. *See Hughes v. Pullman*, 36 P.3d 339, ¶ 26 (Mont. 2001).  As the Court has found that the state tort law claims alleged by Thompson are barred by the applicable statutes of limitation, he cannot bring a claim for civil conspiracy under Montana law.  Although it is not technically plead within the body of the First Amended Complaint, Thompson entitled the document "Title 42 Section 1983, 1985, 1986, 1988 Civil Rights Complaint with Alternative Pleading as Civil RICO Act Violations."  Thompson does not directly state that he did, or intended to, bring federal civil rights claims, or a claim of conspiracy to violate federal civil rights, against the Swimley Defendants, so it is unclear to the Court whether such claims exist.[4]  Nevertheless, even if the Amended Complaint is construed liberally to incorporate such allegations, Thompson's civil rights claims are barred by the statute of limitations.

The statute of limitations for actions brought under 42 U.S.C. § 1983 is determined by looking to the forum state for the statute of limitations applicable to personal injury cases.  *Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004).

---

[4] The Court notes that Thompson would not be able to bring a claim under 42 U.S.C. § 1985, as such claims require a showing of racial or class-based animus, which has not been alleged.  *See Arres v. City of Fresno*, 2011 U.S. Dist. LEXIS 10425, * 28-29 (E.D. Cal. January 26, 2011).  In the absence of a § 1985 claim, Thompson cannot maintain a claim under 42 U.S.C. § 1986.  *Brown v. Contra Costa Cnty.*, 2012 U.S. Dist. Lexis 145431, * 28 (N.D. Cal. October 9, 2012).

Accrual of a civil rights claim is determined by federal law.  *Maldonado*, 370 F.3d at 955.  A federal civil rights claim "accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action."  *Maldonado*, 370 F.3d at 955 (citation omitted).  In Montana, the statute of limitations for personal injury actions is three years.  Mont. Code Ann. § 27-2-204.  Accordingly, Thompson had three years after he learned of, or had reason to know of, the injury which forms the basis of any civil rights claim under 42 U.S.C. § 1983.

As discussed above, Thompson had actual knowledge, at the latest, by July 2011 when he sought legal counsel to assist him in bringing claims against a variety of people for the damage he allegedly suffered as a result of the original and revised HOA documents.   Because he failed to bring his § 1983 claims against the Swimley Defendants within three years, those claims are barred as a matter of law.

Thompson argues that the conspiracy is "live" and that the Swimley Defendants are accountable for all actions involving the HOA documents after Susan Swimley drafted or revised them.  This theory is inconsistent with Ninth Circuit law, which holds that "injury and damage in a civil conspiracy flow from the overt acts, not from 'the mere continuance of a conspiracy.'"  *Gibson v. U.S.*, 781 F.2d 1334, 1340 (9th Cir. 1984) (citing *Kadar Corp. v. Milbury*, 549 F.2d 230, 234 (1st Cir. 1977)).  Accordingly, "the cause of action runs separately from each

overt act that is alleged to cause damage to the plaintiff." *Gibson*, 781 F.2d at

1340. As a result, "separate conspiracies may not be characterized as a single

grand conspiracy for procedural advantage." *Gibson*, 781 F.2d at 1340 (citing

*Fitzgerald v. Seamans*, 553 F.2d 220, 240 (D.C. Cir. 1977)).

The conspiracy Thompson alleges against the Swimley Defendants is that

they drafted and revised a number of HOA documents that had the practical effect

of limiting his ability to develop his property as he wanted. The actions of the

Swimley Defendants ended in 2008, when the last documents were apparently

drafted, and Thompson admits that "Swimley may not have had a direct hand in

the usurpers reaching their alleged conspiracy. . . but Swimley provided the illegal

vehicle that was used in the crime." (Doc. 53 at 22). To the extent Thompson has

alleged the Swimley Defendants' acts were part of a larger conspiracy, there is just

a continuation of the effects of any conspiracy attributable to the Swimley

Defendants after 2008 and discovered at the latest by July 2011. Accordingly,

Thompson was required to bring his § 1983 conspiracy claims by July 2014 at the

latest; because he did not, his claims are barred. As Thompson cannot proceed on

his § 1983 claims, any claim for attorney fees under 42 U.S.C. § 1988 is similarly

precluded.

### 2. RICO Conspiracy

The Swimley Defendants also correctly note that Thompson's Amended

Complaint does not plead a RICO conspiracy against them.  In his response brief,

Thompson does not directly rebut this contention, but argues that any RICO claim

he might have against the Swimley Defendants should proceed because the statute

of limitations for his RICO claim has been tolled.  The Swimley Defendants

contend that the statute of limitations on all claims has run.  Despite the pleading

deficiency, and construing the Amended Complaint as liberally as possible, the

Court will examine whether Thompson could proceed on a RICO claim against the

Swimley Defendants.

The Racketeer Influenced and Corrupt Organizations Act authorizes a civil

action for anyone who is injured in his business or property by a violation of

RICO's criminal provisions.  18 U.S.C. § 1964(c).  To establish a RICO claim, a

plaintiff must show "(1) conduct (2) of an 'enterprise' (3) through a 'pattern' (4) of

racketeering activity (or 'predicate acts') (5) causing injury to the plaintiff's

'business or property.'"  *Tanaka v. First Haw. Bank*, 104 F.Supp.2d 1243, 1245

(D. Haw. 2000).

The statute of limitations for bringing a RICO claim is four years.  *Rotella v.*

*Wood*, 528 U.S. 549, 552 (2000).  The Ninth Circuit follows the two-part "injury

discovery rule," which provides that "the civil RICO limitations period 'begins to

run when a plaintiff knows or should know of the injury that underlies his cause of

action.'"  *Grimmett v. Wood*, 75 F.3d 506, 510 (9th Cir. 1996) (citing *Pocahontas*

*Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 220 (4th Cir. 1987)).

"The plaintiff need not discover that the injury is part of a 'pattern of racketeering'

for the period to begin to run." *Grimmet*, 75 F.3d at 510 (citing *McCool v. Strata*

*Oil Co.*, 972 F.2d 1452, 1465 (7th Cir. 1992)).

Additionally, under the second, "separate accrual rule" of the injury

discovery rule, "a new cause of action accrues for each new and independent

injury, even if the RICO violation causing the injury happened more than four

years before." *Grimmett*, 75 F.3d at 510 (citing *Bankers Trust Co. v. Rhoades*, 859

F.2d 1096, 1103 (2nd Cir. 1988)).  For the statute of limitations to restart, there

must be an action which is a "new and independent act that is not merely a

reaffirmation of a previous act" and that act "must inflict new and accumulating

injury on the plaintiff." *Grimmett*, 75 F.3d at 513.  A continuation of an allegedly

fraudulent scheme does not restart the statute of limitations.  *Lockwood v.*

*Sheppard, Mullin, Richter & Hampton, LLP*, 2009 U.S. Dist. LEXIS 133046, *13

(C.D. Cal. Nov. 24, 2009).

Thompson apparently contends that the Swimley Defendants are part of a

RICO conspiracy to commit fraud, resulting in his inability to build an ADU on his

property.  The last overt act he alleges against the Swimley Defendants was in

2008, when the covenant documents were revised.  By July 2011, Thompson was

seeking legal counsel to bring claims against whomever might be responsible for

changing the documents and impairing his ability to develop his property.   At that point, his RICO conspiracy claim against the Swimley Defendants was both discovered and accrued under the injury discovery rule, and the four-year statute of limitations began to run.   Accordingly, Thompson should have filed his RICO claim against the Swimley Defendants by July 2015 at the latest.

Thompson argues that the RICO statute of limitations should be equitably tolled.   Equitable tolling, whether it is called fraudulent concealment or equitable estoppel, only applies when "the plaintiff shows that he neither knew, nor in the exercise of due diligence, could reasonably have known of the offense."   *Tanaka*, 104 F.Supp.2d at 1252 (citing *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 195 (1997)).   In a case alleging fraud, there must be allegations of ". . . 'active conduct by a defendant, *above and beyond the wrongdoing upon which the plaintiff's claim is filed*, to prevent the plaintiff from suing in time'. . . . Otherwise there would always be tolling in a case alleging fraud."   *Tanaka*, 104 F.Supp.2d at 1253 (emphasis added) (citing *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1177 (9th Cir. 2000)).

Thompson had actual knowledge in July 2011 of the issues with the development of his property, and knew he had potential claims against any person or entity involved with the drafting of the HOA documents; accordingly, equitable tolling does not save his RICO claim.   Unlike a situation in which the alleged bad

actor conceals the injury, thus lulling the plaintiff into sleeping on his rights, the fraud alleged by Thompson is the creation of the original CCCA Articles of Incorporation and subsequent revision of covenant documents, which Thompson undisputedly knew about, or was on inquiry notice of, by July 2011 at the latest. Because Thompson cannot show that the Swimley Defendants fraudulently concealed their alleged bad acts, equitable tolling does not apply.

### C. Dismissal with Prejudice

A pro se plaintiff must be given leave to amend unless it is "absolutely clear that the deficiencies of the complaint cannot be cured by amendment." *Weilburg v. Shapiro*, 488 F.3d 1202, 1205 (9th Cir. 2007).  Although leave to amend is liberally granted, dismissal with prejudice is appropriate where amendment would be futile. *Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015). Here, Thompson has already had one opportunity to amend his Complaint. The Court concludes that the pleading deficiencies set forth above cannot be cured by the allegation of additional facts, and it would be futile to permit Thompson to file a Second Amended Complaint as to the Swimley Defendants. Because amendment would be futile, Thompson's claims against the Swimley Defendants should be dismissed with prejudice pursuant to Rule 12(b)(6) on the ground that his claims are barred by the applicable statutes of limitation.  Having so concluded, the Court need not address the Swimley Defendants' arguments that Thompson's claims should be

dismissed because he fails to plead facts establishing the essential elements of his claims and because he failed to plead fraud with particularity.

## IV.    Conclusion

For the reasons explained above, the Court concludes that the Amended Complaint fails to state a claim for relief against the Swimley Defendants. Accordingly,

IT IS RECOMMENDED that the Swimley Defendants' Motion to Dismiss the Amended Complaint be GRANTED, and Thompson's claims against them be dismissed with prejudice.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived.

DATED this 20th day of March, 2020.

Kathleen L. DeSoto
United States Magistrate Judge