IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| PETER THOMPSON, | CV 18–75–BU–BMM–KLD |
| Plaintiff, | |
| v. | **FINDINGS AND RECOMMENDATION** |
| CITY OF BOZEMAN, a Montana Municipal Corporation, et al., | |
| Defendants. | |

This matter is before the Court on Defendant Richard Embry's ("Embry") Rule 12(b)(6), F.R.Civ.P. Motion to Dismiss (Doc. 23). For the reasons stated below, the Court recommends the motion be granted as to all claims against Embry.

## I.    Background

On November 30, 2018, Plaintiff Peter Thompson ("Thompson") filed an 18-page Complaint (with an additional 102 pages of attachments) alleging various constitutional violations and torts against numerous defendants. (Doc. 1). On January 21, 2019, Thompson, who is appearing pro se in this action, moved the Court to vacate the previously scheduled Preliminary Pretrial Conference and extend the time for service, stating that he needed additional time to file and serve

an amended complaint intended to improve the clarity of his pleading and ensure the appropriate parties were named. (Doc. 7). The Court granted this motion and allowed Thompson until March 14, 2019 to effectuate service on all Defendants. (Doc. 8). On March 14, 2019, Thompson filed his Amended Complaint, consisting of 104 pages and an additional 164 pages of exhibits. (Doc. 9). Summons were issued on March 15, 2019.

Although Thompson's Amended Complaint is lengthy and confusing, it appears that his issues with Embry stem from Embry's sale of property to Thompson in 2007/2008. Thompson generally alleges that, at the time of the sale, Embry concealed his knowledge that the covenants applicable to the property were in the process of being amended in a fashion that would significantly hamper Thompson's ability to develop the property as he wished. The property, which is located in the Cattail Creek Subdivision in Bozeman, Montana, is subject to the Cattail Creek Community Association ("CCCA").

The CCCA is the Homeowners' Association ("HOA") for the Cattail Creek Subdivision, Phases I, II, and III in Gallatin County, Montana. Thompson entered into a purchase agreement with Embry in 2007 for a parcel of undeveloped land in the Cattail Creek Subdivision, Phase II. Thompson's intent was to build a home for himself and his family, with a basement apartment, on the land he purchased. The purchase agreement was contingent on approval by the HOA of Thompson's

building plans.  Thompson's understanding at the time he purchased the lot from

Embry was that the lot was zoned R-2, which would allow him to build a separate

basement apartment contained within the home he planned to build on the lot.

Prior to his actual purchase of the property, Thompson met with numerous

people, including engineers and representatives from the City of Bozeman, in an

effort to have a full understanding of the applicable zoning and design

requirements.  Embry was copied on emails between Thompson and the CCCA

design reviewers which demonstrated Thompson's expectation that he would be

allowed to construct a basement apartment on his property.

Unbeknownst to Thompson, on July 2, 2007, the CCCA's apparent

predecessor, the Cattail Creek Homeowner's Association, sent a letter to all

homeowners in the subdivision.  (Doc. 9-8).  The letter discussed how having three

separate homeowners' association  boards and three separate covenant documents

(for the three phases of the subdivision) was unwieldy, and requested the property

owners to vote on consolidation of the phase HOA boards into one board and

combination of the covenant documents with some modifications of the existing

documents.  Thompson alleges that sometime between late 2007 and 2008, Susan

Swimley met with members of the three separate HOA boards to conspire to

develop a system or enterprise that could be used to defraud property owners

within the Cattail Creek Subdivision of their right to use their property in a number

of ways, including accessory dwelling units ("ADUs").  This was allegedly accomplished by misleading the subdivision homeowners about the true intent of the change to the covenant documents, including removing the design regulations from the covenants.  Swimley allegedly provided the document templates which were used by the board members.

In January 2008, the homeowners were provided ballots asking them to approve amendments to the covenants for the subdivision.  The ballots were counted at a meeting on March 26, 2008, and ultimately the Amended and Restated Covenants for Cattail Creek Phases 1, 2, and 3, Design Review Regulations for Phases 1, 2, and 3, and Bylaws for the CCCA Phases 1, 2, and 3 were approved by a 75% vote.  Notably, the ballots were sent prior to Thompson purchasing his property but counted and operative after Thompson purchased his property. Despite his knowledge that Thompson's intended use of the property would be prohibited under the amended covenants, Embry did not inform Thompson that he had received a ballot, and did not inform Thompson that he had voted in favor of amending the covenants, even though Embry would not be the owner of the property at the time the ballots were counted.  Thompson alleges by doing so, Embry either joined a conspiracy to prevent him from building an ADU or abetted those who conspired as such.  (Doc. 9 at 44).  Thompson also alleges that Embry violated the covenant of good faith and fair dealing by concealing the revision of

the covenants from him while the real estate deal was pending.

In May 2008, the CCCA Board filed amended and restated covenants, which applied to all three phases of the Cattail Creek subdivision.  Thompson alleges the design regulations were separated out of the new, combined covenants in an attempt to conceal new restrictions on design regulations, including a limitation on the ability of homeowners to have ADUs within the confines of their structures, as Thompson was planning to do.  He alleges Embry conspired with a number of other co-Defendants in an effort to assist title companies in selling him illusory title insurance and to prevent him from developing his property.

Over the next four years, Thompson had a number of significant issues relating to the construction of his home, including disputes over completion requirements, the re-zoning of his home from R-2 to R-1, and the expiration of certificates of occupancy issued by the City of Bozeman.  CCCA had multiple communications with Thompson about his failure to complete the exterior of his home, including landscaping and the driveway, as well as about his occupancy of the home despite its incomplete status.

In July 2011, Thompson hired Art Wittich and his firm, Wittich Law P.C., to represent him in connection with his ongoing disputes with the CCCA and to determine if there was a possible title insurance claim.  Thompson understood that Art Wittich was going to initiate a title insurance claim and investigate the liability

of the City of Bozeman, Richard Embry, the CCCA, and others for the errors of the zoning documents and title encumbrances on his property.  (Doc. 9 at ¶ 119). Thompson met with an employee of the Wittich Law Firm, Amanda Menasco, on July 18, 2011, and together they reviewed "title insurance documents, contacts with the HOA, HOA design review comments from Intrinsik Architecture, the seller etc."  (Doc. 9-12 at ¶ 85).  Thompson and his wife then met with Art Wittich on July 19, 2011, and they discussed "the folks involved and [the] perceived issues."  (Doc. 9-12 at ¶ 86).   At that time, Thompson understood that significant issues included whether the amended covenants were lawful, and how those covenants were amended without his knowledge.  (Doc. 9-12 at ¶ 86).

In his summary of his causes of actions, Thompson alleges Embry conspired to commit, or to conceal, fraud, which he alternatively pleads as part of a RICO conspiracy.  He also alleges Embry violated the Montana Consumer Protection Act ("MCPA").  Though not stated in the summary, Thompson also alleges Embry breached the implied covenant of good faith and fair dealing.

Embry moves to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  Embry argues Thompson's claims are all barred by the applicable statutes of limitation and that Thompson failed to plead facts establishing the essential elements of the claims against him.

## II.    Legal Standards

### A. Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint will survive a motion to dismiss if it alleges facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. But if the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory," then dismissal under Rule 12(b)(6) is appropriate. *Mendiondo*, 521 F.3d at 1104.

In determining whether this standard is satisfied, the court must accept all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiffs. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). But the court is "not bound to accept as true a legal conclusion couched as a factual

allegation." *Twombly*, 550 U.S. at 555. "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litigation*, 536 F.3d 1049, 1055 (9th Cir. 2008). Assessing a claim's plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950.

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted). However, a court may take judicial notice of "matters of public record." *Lee*, 250 F.3d at 688-89. Specifically, a court may take judicial notice of other state or federal court proceedings. *Duckett v. Godinez*, 67 F.3d 734, 741 (9th Cir. 1995), and *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988). *See also Burbank-Glendale-Pasadena Airport Authority v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (allowing judicial notice of pleadings in other cases).

**B. Pro se Pleadings**

Because Thompson is proceeding pro se the Court must construe his pleading liberally, and "however inartfully pleaded, [it] must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). *See also Neitzke v. Williams*,

490 U.S. 319, 330 n.9 (1989).   However, "pro se litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record." *Jacobsen v. Filler,* 790 F.2d 1362, 1364 (9th Cir. 1986).  This means that "[p]ro se litigants must follow the same rules of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d 565, 576 (9th Cir. 1987).  Nevertheless, in the motion to dismiss context, courts are to construe pro se documents liberally and give pro se litigants the benefit of any doubt.  *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted).

In view of the required liberal construction, "a district court should grant leave to amend even if no request to amend the pleading was made, <u>unless</u> it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (emphasis added) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

## III.   Discussion

### A. State Law Claims

Construing the Amended Complaint liberally, it appears Thompson has alleged three state law claims against Embry:  breach of the covenant of good faith and fair dealing, fraud, and violation of the MCPA.  Embry moves to dismiss Thompson's state claims on the ground that he failed to bring them within the

applicable statutes of limitations.[1]  The Court agrees.

### 1.  Breach of the Covenant of Good Faith and Fair Dealing

Thompson asserts Embry breached the covenant of good faith and fair dealing by selling him the property without disclosing the pending covenant changes and by voting for the changes, which resulted in an impairment to Thompson's use of the property.

In Montana, "every contract, regardless of type, contains an implied covenant of good faith and fair dealing." *Puryer v. HSBC Bank USA, N.A.*, 419 P.3d 105, ¶ 23 (Mont. 2018) (citing *Story v. Bozeman*, 791 P.2d 767, 775 (Mont. 1990)).  A claim for breach of the covenant of good faith and fair dealing may be simply a contract claim, or, if there is a "special relationship" between the parties, it may be a claim for a tortious breach of the implied covenant.  *Puryer*, ¶ 23 (citing *Story*, 791 P.2d at 775-76).

It is not clear whether Thompson is alleging a simple contract breach or a tortious breach of the covenant, although under either theory, he failed to bring his claim within the applicable statute of limitations.  The statute of limitations for breach of contract is eight years.  *Bank of Am., N.A. v. Alexander*, 389 P.3d 1020, ¶ 21 (Mont. 2017); Mont. Code Ann. § 27-2-202(1).  The statute of limitations for a

---

[1] When a federal court exercises pendent jurisdiction over state law claims, it applies substantive state law. *Shannon-Vail Five, Inc. v. Bunch,* 270 F.3d 1207, 1210 (9th Cir. 2001).

liability which is not based on a writing is three years.  Mont. Code Ann. § 27-2-204.

Thompson's claim for violation of the covenant of good faith and fair dealing is premised on Embry's concealment of the proposed change in the covenants which would prohibit a basement apartment in Thompson's property. Thompson knew of the proposed change, however, as early as January of 2008, when he had a conversation with Rob Pertzborn in which Pertzborn told Thompson that Instrinsik Architecture was preparing new covenants which would change the zoning from R-2 to R-1.  (Doc. 9-12 at 5).  Shortly after that, Thompson emailed Allison Gilley, also of Intrinsik Architecture, and noted that a number of current owners felt their lots should be zoned R-2 and the issue needed attention from the HOA and from the City of Bozeman Planning Department.  (Doc. 9-12 at 5). Ballots seeking approval of the change in the covenants were sent to current owners in January 2008, and counted in March 26, 2008, HOA Board meeting. (Doc. 9-8 at 3).  Prior to February 9, 2010, when the City of Bozeman issued Thompson a building permit, Thompson had actual knowledge that the property was zoned R-1 and that he could not build his basement apartment as he wished. (Doc. 9 at ¶ 7; Doc. 9-12 at 14-15).

A cause of action for breach of contract accrues upon the breach.  *Alexander*, ¶ 22.  Discovery would only toll the running of the statute from the breach "if

fraudulent concealment has hindered a party from discovering a breach." *Textana,*

*Inc. v. Klabzuba Oil & Gas*, 222 P.3d 580, ¶ 35 (Mont. 2009).  Thompson alleges

that Embry breached the covenant, and fraudulently concealed his breach, but

Thompson had actual knowledge that the covenants were changed by February

2010, at the absolute latest.  Arguably, Thompson was on notice inquiry of the

change in the covenants in May 2008, as he was by then the owner of the property

and had knowledge that there was a move afoot to revise the covenants to change

the zoning.  Nonetheless, he knew by February 2010 that the property had been

rezoned in a manner that prohibited him from building his basement apartment,

and thus knew that Embry had not advised him of the change by the time the sale

was consummated.  At the very latest, Thompson was required to bring a breach of

contract claim against Embry by February 2018, which he did not.  Accordingly,

his claim for a contract breach of the covenant of good faith and fair dealing is

barred.

Alternatively, if Thompson is asserting a tortious breach of the covenant of

good faith and fair dealing, he had three years from that time to bring the claim.

Because he failed to bring such a claim by February 2013, it is also time-barred.

## 2.  Fraud

Thompson alleges Embry acted fraudulently by failing to reveal the

amendments to the covenants which were pending at the time of the sale of the

property and by failing to advise Thompson that Embry voted in favor of the covenant amendments.[2]

The statute of limitations for fraud is two years. Mont. Code Ann. § 27-2-203. The cause of action accrues when the aggrieved party discovers "the facts constituting the fraud or mistake." Mont. Code Ann. § 27-2-203. A claim accrues "when all the elements of the claim or cause exist or have occurred, [and] the right to maintain an action on the claim or cause is complete. . .." Mont. Code Ann. § 27-2-102(1)(a). "Lack of knowledge of a claim does not postpone the beginning of the period of limitation." *Norbeck v. Flathead Cty.*, 438 P.3d 811, ¶ 18 (Mont. 2019); Mont. Code Ann. § 27-2-102(2). "[W]hether there has been a 'discovery' of facts sufficient to start the running of the statute of limitations is a question of law." *Holman v. Hansen*, 773 P.2d 1200, 1203 (Mont. 1989).

Thompson alleges Embry acted fraudulently when he failed to disclose to Thompson that the CCCA was trying to amend the covenants in a manner which would prohibit Thompson from building an ADU basement apartment on his property. He also alleges Embry acted fraudulently by not revealing his vote in

---

[2] Embry notes Thompson does not plead fraud specifically as required by both F.R.Civ.P. 9(b) and Mont.R.Civ.P. 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2008) (federal courts look to state law for elements of fraud claim but apply F.R.Civ.P 9(b)'s heightened pleading standard). However, the Court will construe his Amended Complaint liberally and consider whether he is able to proceed with his fraud claims.

favor of the amendments.  All of the conduct Embry is accused of occurred by the time the property sale concluded in February 2008.  At that time, Thompson was on notice, or in actual possession, of facts which put him on inquiry notice which, if he followed such inquiry, would have led him to the facts of the alleged fraud. *See Holman*, 773 P.2d at 1203.  Thompson had actual knowledge that the CCCA was trying to amend the covenants, and he knew specifically that such amendments could impair his right to use his property as he chose.

Even if Thompson claims to not have had information or notice about the facts surrounding the alleged fraud in 2008, it cannot reasonably be disputed that he had sufficient information in July 2011, when he hired Art Wittich to investigate the liability of Embry, the CCCA, and others, related to zoning documents and title encumbrances resulting in his inability to develop his property as he chose.  At that time, Thompson's claim of fraud against Embry had been discovered and had accrued: he knew the documents were different than he believed when he purchased the land and he knew he had been harmed by the change in documents.  At that time, he had the right to bring a claim of fraud against Embry, and he did not do so by July 2013, or within two years of the latest date of discovery and accrual.

Thompson argues that "Embry is alleged to have committed a series of acts which helped put the wheels on the vehicle making it easier" for the CCCA to

continue its conspiracy against him and other landowners.  (Doc. 55 at 15).  Even assuming for the purpose of this motion that Embry's alleged fraud in 2008 is the catalyst of the larger conspiracy Thompson alleges, the facts which form the basis of Embry's fraud were known to Thompson, at the latest, in July 2011 when he sought legal counsel for the purpose of suing a number of people.

Thompson claims that he did not know Embry's vote was counted after Thompson owned the property until 2018, when Jaymie Larsen testified about the vote count in the separate state court Cattail Creek litigation.  (Doc. 55 at 16).  Because he did not learn of Embry's vote until that time, he argues the statute of limitations should be tolled.  However, the Montana Supreme Court has held that, in the context of a fraud claim, a party is entitled to toll the statute of limitations only when there has been "the employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquisition of information disclosing a right of action."  *Holman*, 773 P.2d at 1203 (citing *Monroe v. Harper*, 518 P.2d 788, 790 (Mont. 1974)).

Contrary to Thompson's assertion, he cannot rely on tolling to resurrect his fraud claim.  There is no evidence or even allegation that Embry took action that could be considered "affirmative conduct . . . calculated to obscure the existence of the cause of action" as required under Montana law.  *Holman*, 773 P.2d at 1203. Thompson knew that the covenants had been changed and that there had been a

vote at some time that resulted in the change to the covenants.  He knew by 2011 that he had claims against Embry for errors in zoning documents and title encumbrances.  There is no basis to invoke the tolling of the statute of limitations as to Thompson's claim of fraud.  Because Thompson failed to bring his fraud claim within the statute of limitations, it is barred as a matter of law.

### 3.  MCPA

Thompson does not specifically allege facts giving rise to a claim under the MCPA; he simply states that the fraud claim may be actionable as a claim under the MCPA as well.

The statute of limitations for a claim for a liability created by statute, such as the MCPA, is two years.  Mont. Code Ann. § 27-2-211(1)(c).  "[I]f a defendant 'has taken action which prevents the injured party from discovering [an] injury or its cause,' the limitations period does not begin 'until the facts constituting the claim have been discovered or, in the exercise of due diligence, should have been discovered by the injured party.'"  *Hein v. Sott*, 353 P.3d 494, ¶ 13 (Mont. 2015) (citing Mont. Code Ann. § 27-2-102(3)(b)).

As noted above, Thompson had actual knowledge that the covenants had been changed, restricting his right to use his property as he wished, and was on inquiry notice, at the very least, of the facts which resulted in the property restriction in 2008.  In 2011, he went to Art Wittich for the specific purpose of

investigating and evaluating claims he had against Embry, among others.  At the very latest, he had discovered, or using due diligence, should have discovered, the facts giving rise to his claim under the MCPA by July 2011, and so was required to bring an MCPA claim by 2013.  Because he failed to do so, this claim is barred.

### B. Federal Law Claims

Thompson alleges Embry committed conspiracy to commit fraud, which he alternately pleads as a RICO conspiracy.  It appears that the conspiracy which Embry allegedly joined is what Thompson entitles the "ADU conspiracy," which he generally describes in the Amended Complaint as a conspiracy to prevent him from being allowed to use his property as he wished, specifically to construct an ADU on his property.  Thompson alleges this goal was accomplished by illegally changing the HOA documents, concealing the changes, and taking steps to prevent him from being able to either build the ADU or recover on a title insurance claim.

### 1.  42 U.S.C § 1983

Embry correctly notes that, under Montana law, the inability to bring an underlying tort claim is fatal to a claim of civil conspiracy.  *See Hughes v. Pullman*, 36 P.3d 339, ¶ 26 (Mont. 2001).  As the Court has found that the state tort law claims alleged by Thompson are barred by the applicable statutes of limitation, he cannot bring a claim for civil conspiracy under Montana law.  Although it is not technically plead within the body of the First Amended

Complaint, Thompson entitled the document "Title 42 Section 1983, 1985, 1986, 1988 Civil Rights Complaint with Alternative Pleading as Civil RICO Act Violations."  Thompson does not directly state that he did, or intended to, bring federal civil rights claims, or a claim of conspiracy to violate federal civil rights, against Embry, so it is unclear to the Court whether such claims exist.[3] Nevertheless, even if the Amended Complaint is construed liberally to incorporate such allegations, Thompson's civil rights claims are barred by the statute of limitations.

The statute of limitations for actions brought under 42 U.S.C. § 1983 is determined by looking to the forum state for the statute of limitations applicable to personal injury cases.  *Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004). Accrual of a civil rights claim is determined by federal law.  *Maldonado*, 370 F.3d at 955.  A federal civil rights claim "accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action."  *Maldonado*, 370 F.3d at 955 (citation omitted).  In Montana, the statute of limitations for personal injury actions is three years.  Mont. Code Ann. § 27-2-204.  Accordingly,

---

[3] The Court notes that Thompson would not be able to bring a claim under 42 U.S.C. § 1985, as such claims require a showing of racial or class-based animus, which has not been alleged.  *See Arres v. City of Fresno*, 2011 U.S. Dist. LEXIS 10425, * 28-29 (E.D. Cal. January 26, 2011).  In the absence of a § 1985 claim, Thompson cannot maintain a claim under 42 U.S.C. § 1986.  *Brown v. Contra Costa Cnty.*, 2012 U.S. Dist. Lexis 145431, * 28 (N.D. Cal. October 9, 2012).

Thompson had three years after he learned of, or had reason to know of, the injury which forms the basis of any civil rights claim under 42 U.S.C. § 1983.

As discussed above, Thompson had actual knowledge, at the latest, by July 2011 when he sought legal counsel to assist him in bringing claims against a variety of people for the damage he allegedly suffered as a result of the original and revised HOA documents.  Because he failed to bring his § 1983 claims against Embry within three years, those claims are barred as a matter of law.

Thompson argues that the conspiracy is ongoing, and that Embry's participation in the creation of the covenant documents which continue to violate his civil rights justifies letting his claim for conspiracy go forward.  This theory is inconsistent with Ninth Circuit law, which holds that "injury and damage in a civil conspiracy flow from the overt acts, not from 'the mere continuance of a conspiracy.'"  *Gibson v. U.S.*, 781 F.2d 1334, 1340 (9th Cir. 1984) (citing *Kadar Corp. v. Milbury*, 549 F.2d 230, 234 (1st Cir. 1977)).  Accordingly, "the cause of action runs separately from each overt act that is alleged to cause damage to the plaintiff."  *Gibson*, 781 F.2d at 1340.  As a result, "separate conspiracies may not be characterized as a single grand conspiracy for procedural advantage."  *Gibson*, 781 F.2d at 1340 (citing *Fitzgerald v. Seamans*, 553 F.2d 220, 240 (D.C. Cir. 1977)).

The conspiracy Thompson alleges against Embry is that he conspired to

commit fraud by concealing the change in the covenants and concealing that he

voted for the covenants. Thompson also appears to allege that Embry was

responsible for closing documents inaccurately reflecting the change in zoning.

All of Embry's conduct ended in 2008, when the property sale was concluded and

any alleged misrepresentations or omissions were made.  To the extent Thompson

has alleged Embry's conduct was part of a larger conspiracy, there is just a

continuation of the effects of any conspiracy attributable to Embry after 2008 and

discovered at the latest by July 2011.  Accordingly, Thompson was required to

bring his § 1983 conspiracy claims by July 2014 at the latest; because he did not,

his claims are barred.  As Thompson cannot proceed on his § 1983 claims, any

claim for attorney fees under 42 U.S.C. § 1988 is similarly precluded.

### 2. RICO Conspiracy

Thompson alleges that his conspiracy claim is alternately plead as a RICO

claim.  Embry asserts that even if the RICO claim was adequately plead, which he

disputes, it is barred by the statute of limitations.  Despite the alleged pleading

deficiency, the Court will examine whether Thompson's claim is permissible under

the statute of limitations applicable to a RICO claim.

The Racketeer Influenced and Corrupt Organizations Act authorizes a civil

action for anyone who is injured in his business or property by a violation of

RICO's criminal provisions.  18 U.S.C. § 1964(c).  To establish a RICO claim, a

plaintiff must show "(1) conduct (2) of an 'enterprise' (3) through a 'pattern' (4) of racketeering activity (or 'predicate acts') (5) causing injury to the plaintiff's 'business or property.'" *Tanaka v. First Haw. Bank*, 104 F.Supp.2d 1243, 1245 (D. Haw. 2000).

The statute of limitations for bringing a RICO claim is four years. *Rotella v. Wood*, 528 U.S. 549, 552 (2000).  The Ninth Circuit follows the two-part "injury discovery rule," which provides that "the civil RICO limitations period 'begins to run when a plaintiff knows or should know of the injury that underlies his cause of action.'" *Grimmett v. Wood*, 75 F.3d 506, 510 (9th Cir. 1996) (citing *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 220 (4th Cir. 1987)). "The plaintiff need not discover that the injury is part of a 'pattern of racketeering' for the period to begin to run." *Grimmet*, 75 F.3d at 510 (citing *McCool v. Strata Oil Co.*, 972 F.2d 1452, 1465 (7th Cir. 1992)).

Additionally, under the second, "separate accrual rule" of the injury discovery rule, "a new cause of action accrues for each new and independent injury, even if the RICO violation causing the injury happened more than four years before." *Grimmett*, 75 F.3d at 510 (citing *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1103 (2nd Cir. 1988)).  For the statute of limitations to restart, there must be an action which is a "new and independent act that is not merely a reaffirmation of a previous act" and that act "must inflict new and accumulating

injury on the plaintiff." *Grimmett*, 75 F.3d at 513.  A continuation of an allegedly fraudulent scheme does not restart the statute of limitations.  *Lockwood v. Sheppard, Mullin, Richter & Hampton, LLP*, 2009 U.S. Dist. LEXIS 133046, *13 (C.D. Cal. Nov. 24, 2009).

Thompson alleges Embry is part of a RICO conspiracy to commit fraud, resulting in his inability to build an ADU on his property.  The last overt act he alleges against Embry was in 2008, when Embry failed to advise Thompson of the potential change in covenants, failed to advise Thompson that he voted for the change, and then apparently caused the wrong document to be attached to the closing papers.  By July 2011, Thompson was seeking legal counsel to bring claims against whomever might be responsible for changing the documents and impairing his ability to develop his property.  At that point, his RICO conspiracy claim against Embry was both discovered and accrued under the injury discovery rule, and the four-year statute of limitations began to run.  Accordingly, Thompson should have filed his RICO claim against Embry by July 2015 at the latest.

Thompson argues that the RICO statute of limitations should be equitably tolled.  Equitable tolling, whether it is called fraudulent concealment or equitable estoppel, only applies when "the plaintiff shows that he neither knew, nor in the exercise of due diligence, could reasonably have known of the offense." *Tanaka*, 104 F.Supp.2d at 1252 (citing *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 195

(1997)).  In a case alleging fraud, there must be allegations of ". . . 'active conduct by a defendant, *above and beyond the wrongdoing upon which the plaintiff's claim is filed*, to prevent the plaintiff from suing in time'. . . . Otherwise there would always be tolling in a case alleging fraud."  *Tanaka*, 104 F.Supp.2d at 1253 (emphasis added) (citing *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1177 (9th Cir. 2000)).

Thompson had actual knowledge in July 2011 of the issues with the development of his property, and knew he had potential claims against any person or entity involved with the change in the covenants; accordingly, equitable tolling does not save his RICO claim.  Unlike a situation in which the alleged bad actor conceals the injury, thus lulling the plaintiff into sleeping on his rights, the fraud alleged by Thompson is the revision to the covenant documents and concealment of that potential change at the time of the property sale, which Thompson undisputedly knew about, or was on inquiry notice of, by July 2011 at the latest. Because Thompson cannot show that Embry fraudulently concealed his alleged bad acts, equitable tolling does not apply.

## C. Dismissal with Prejudice

A pro se plaintiff must be given leave to amend unless it is "absolutely clear that the deficiencies of the complaint cannot be cured by amendment." *Weilburg v. Shapiro*, 488 F.3d 1202, 1205 (9th Cir. 2007).  Although leave to amend is liberally

granted, dismissal with prejudice is appropriate where amendment would be futile. *Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015). Here, Thompson has already had one opportunity to amend his Complaint. The Court concludes that the pleading deficiencies set forth above cannot be cured by the allegation of additional facts, and it would be futile to permit Thompson to file a Second Amended Complaint as to Embry.  Because amendment would be futile, Thompson's claims against Embry should be dismissed with prejudice pursuant to Rule 12(b)(6) on the ground that his claims are barred by the applicable statutes of limitation.  Having so concluded, the Court need not address Embry's arguments that Thompson's claims should be dismissed because he fails to plead facts establishing the essential elements of his claims.

## IV.   Conclusion

For the reasons explained above, the Court concludes that the Amended Complaint fails to state a claim for relief against Richard Embry. Accordingly,

IT IS RECOMMENDED that the Embry's Rule 12(b)(6), F.R.Civ.P. Motion to Dismiss the Amended Complaint (Doc. 23) be GRANTED, and Thompson's claims against him be dismissed with prejudice.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to

the findings and recommendations must be filed with the Clerk of Court and copies

served on opposing counsel within fourteen (14) days after entry hereof, or

objection is waived.

DATED this 25th day of March, 2020.

Kathleen L. DeSoto
United States Magistrate Judge