IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| PETER THOMPSON,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>CITY OF BOZEMAN, a Montana Municipal Corporation, et al.,<br><br>　　　　　Defendants. | CV 18–75–BU–BMM–KLD<br><br><br>**FINDINGS AND RECOMMENDATION** |

This matter is before the Court on Defendant Allen Armstrong's ("Armstrong") Motion to Dismiss with Prejudice Pursuant to Rule 12(b)(6), F.R.Civ.P. (Doc. 36). For the reasons stated below, the Court recommends the motion be granted as to all claims against Armstrong.

## I.　Background

On November 30, 2018, Plaintiff Peter Thompson ("Thompson") filed an 18-page Complaint (with an additional 102 pages of attachments) alleging various constitutional violations and torts against numerous defendants. (Doc. 1). On January 21, 2019, Thompson, who is appearing pro se in this action, moved the Court to vacate the previously scheduled Preliminary Pretrial Conference and extend the time for service, stating that he needed additional time to file and serve

an amended complaint intended to improve the clarity of his pleading and ensure the appropriate parties were named. (Doc. 7). The Court granted this motion and allowed Thompson until March 14, 2019 to effectuate service on all Defendants. (Doc. 8). On March 14, 2019, Thompson filed his Amended Complaint, consisting of 104 pages and an additional 164 pages of exhibits. (Doc. 9). Summons were issued on March 15, 2019.

Although Thompson's Amended Complaint is lengthy and confusing, it appears that his issues with Armstrong stem from Armstrong's role as the Gallatin County GIS Manager. Thompson generally alleges that, at some time prior to March 2012, Armstrong was involved with issuing a separate address for Thompson's intended basement apartment on property he purchased in early 2008. He further alleges Armstrong, in 2012, joined a conspiracy to prevent Thompson from building his basement apartment by refusing to help Thompson confirm that Armstrong had previously agreed the property was zoned to allow a basement apartment with a separate address.

The property, which is located in the Cattail Creek Subdivision in Bozeman, Montana, is subject to the Cattail Creek Community Association ("CCCA"). The CCCA is the Homeowners' Association ("HOA") for the Cattail Creek Subdivision, Phases I, II, and III in Gallatin County, Montana. Thompson entered into a purchase agreement with Richard Embry in 2007 for a parcel of undeveloped

land in the Cattail Creek Subdivision, Phase II. Thompson's intent was to build a home for himself and his family, with a basement apartment, on the land he purchased. The purchase agreement was contingent on approval by the HOA of Thompson's building plans. Thompson's understanding at the time he purchased the lot from Richard Embry was that the lot was zoned R-2, which would allow him to build a separate basement apartment contained within the home he planned to build on the lot.

Prior to his actual purchase of the property, Thompson met with numerous people, including engineers and representatives from the City of Bozeman, in an effort to have a full understanding of the applicable zoning and design requirements. Unbeknownst to Thompson, on July 2, 2007, the CCCA's apparent predecessor, the Cattail Creek Homeowner's Association, sent a letter to all homeowners in the subdivision. (Doc. 9-8). The letter discussed how having three separate homeowners' association boards and three separate covenant documents (for the three phases of the subdivision) was unwieldy, and requested the property owners to vote on consolidation of the phase HOA boards into one board and combination of the covenant documents with some modifications of the existing documents. Thompson alleges that sometime between late 2007 and 2008, Susan Swimley met with members of the three separate HOA boards to conspire to develop a system or enterprise that could be used to defraud property owners

3

within the Cattail Creek Subdivision of their right to use their property in a number of ways, including accessory dwelling units ("ADUs"). This was allegedly accomplished by misleading the subdivision homeowners about the true intent of the change to the covenant documents, including removing the design regulations from the covenants. Swimley allegedly provided the document templates which were used by the board members.

In January 2008, the homeowners were provided ballots asking them to approve amendments to the covenants for the subdivision. The ballots were counted at a meeting on March 26, 2008, and ultimately the Amended and Restated Covenants for Cattail Creek Phases 1, 2, and 3, Design Review Regulations for Phases 1, 2, and 3, and Bylaws for the CCCA Phases 1, 2, and 3 were approved by a 75% vote. Notably, the ballots were sent prior to Thompson purchasing his property but counted and operative after Thompson purchased his property in February 2008.

In May 2008, the CCCA Board filed amended and restated covenants, which applied to all three phases of the Cattail Creek subdivision. Thompson alleges the design regulations were separated out of the new, combined covenants in an attempt to conceal new restrictions on design regulations, including a limitation on the ability of homeowners to have ADUs within the confines of their structures, as Thompson was planning to do.

Over the next four years, Thompson had a number of significant issues relating to the construction of his home, including disputes over completion requirements, the re-zoning of his home from R-2 to R-1, and the expiration of certificates of occupancy issued by the City of Bozeman. CCCA had multiple communications with Thompson about his failure to complete the exterior of his home, including landscaping and the driveway, as well as about his occupancy of the home despite its incomplete status.

In July 2011, Thompson hired Art Wittich and his firm, Wittich Law P.C., to represent him in connection with his ongoing disputes with the CCCA and to determine if there was a possible title insurance claim. Thompson understood that Art Wittich was going to initiate a title insurance claim and investigate the liability of the City of Bozeman, Richard Embry, the CCCA, and others for the errors of the zoning documents and title encumbrances on his property. (Doc. 9 at ¶ 119). Thompson met with an employee of the Wittich Law Firm, Amanda Menasco, on July 18, 2011, and together they reviewed "title insurance documents, contacts with the HOA, HOA design review comments from Intrinsik Architecture, the seller etc." (Doc. 9-12 at ¶ 85). Thompson and his wife then met with Art Wittich on July 19, 2011, and they discussed "the folks involved and [the] perceived issues." (Doc. 9-12 at ¶ 86). At that time, Thompson understood that significant issues included whether the amended covenants were lawful, and how those

5

covenants were amended without his knowledge. (Doc. 9-12 at ¶ 86).

In March 2012, Art Wittich issued an opinion letter, and Thompson decided to part ways with the Wittich Law Firm. Also in March 2012, Thompson contacted Armstrong to get confirmation that Armstrong had, some years prior, verified that the property was zoned R-2, and issued an address for the basement apartment (2990 Blackbird Drive). (Doc. 9 at ¶ 138). Thompson also wanted Armstrong to confirm that he had told the United States Post Office that the County had issued the address for the apartment.

Thompson alleges Armstrong contacted someone at the City of Bozeman in March 2012 to let the City know that Armstrong had in fact issued a second address for the property because "it sounded like Thompson was getting the run around from the City regarding addresses in the 'doughnut area.'" (Doc. 9 at ¶ 139). Thompson alleges that prior to initially issuing the address some years back, Armstrong contacted a City of Bozeman GIS worker and verified that the property was zoned R-2, thus allowing a second address to be assigned. (Doc. 9 at ¶ 140).

Thompson alleges that the City of Bozeman asked Armstrong to "not find any 'official records'" of the earlier verification of the zoning and issuance of the second address. Thompson further alleges that Armstrong met with City officials and agreed to abet the City in the conspiracy to preclude him from building his basement apartment by refusing to state that he had confirmed that Thompson's lot

6

was zoned R-2 at the time Armstrong issued the 2990 Blackbird Drive address. Armstrong apparently wrote a letter stating he could not confirm the information requested by Thompson, although the date of the letter is unclear. (Doc. 9 at ¶ 144). Although it is not clear, it appears Thompson also alleges that Armstrong may have encouraged the United States Postal Service to "not find" records tending to establish when the second address was issued and may have encouraged Scott Blando, a branch manager at US Bank, to similarly not find a check Thompson wrote to pay for the issuance of the second address. (Doc. 9 at ¶¶ 141,147-148).

Although Thompson does not list any specific causes of action against Armstrong in his summary, it appears that he alleges Armstrong joined the ADU conspiracy, which could potentially also include a claim for fraud. Thompson also alleges that the ADU conspiracy is plead alternatively as a RICO conspiracy claim.

Armstrong moves to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Armstrong argues Thompson's claims are all barred by the applicable statutes of limitation and that Thompson failed to plead facts establishing the essential elements of the claims against him.

/ / /

/ / /

## II. Legal Standards

### A. Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint will survive a motion to dismiss if it alleges facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. But if the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory," then dismissal under Rule 12(b)(6) is appropriate. *Mendiondo*, 521 F.3d at 1104.

In determining whether this standard is satisfied, the court must accept all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiffs. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). But the court is "not bound to accept as true a legal conclusion couched as a factual

8

allegation." *Twombly*, 550 U.S. at 555. "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litigation*, 536 F.3d 1049, 1055 (9th Cir. 2008). Assessing a claim's plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950.

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted). However, a court may take judicial notice of "matters of public record." *Lee*, 250 F.3d at 688-89. Specifically, a court may take judicial notice of other state or federal court proceedings. *Duckett v. Godinez*, 67 F.3d 734, 741 (9th Cir. 1995), and *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988). *See also Burbank-Glendale-Pasadena Airport Authority v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (allowing judicial notice of pleadings in other cases).

**B. Pro se Pleadings**

Because Thompson is proceeding pro se the Court must construe his pleading liberally, and "however inartfully pleaded, [it] must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). *See also Neitzke v. Williams*,

490 U.S. 319, 330 n.9 (1989). However, "pro se litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record." *Jacobsen v. Filler,* 790 F.2d 1362, 1364 (9th Cir. 1986). This means that "[p]ro se litigants must follow the same rules of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d 565, 576 (9th Cir. 1987). Nevertheless, in the motion to dismiss context, courts are to construe pro se documents liberally and give pro se litigants the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted).

In view of the required liberal construction, "a district court should grant leave to amend even if no request to amend the pleading was made, <u>unless</u> it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (emphasis added) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

## III. Discussion

### A. Federal Law Claims[1]

Thompson alleges Armstrong joined the ADU conspiracy, which he

---

[1] Although Armstrong discusses abuse of process as a potential state law claim, Armstrong is not named in Count Five (abuse of process) and Thompson does not contend in his response brief that he has any state law claims against Armstrong. Accordingly, the Court does not address this issue other than to note that the statute of limitations for an abuse of process claim is three years. Mont. Code Ann. § 27-2-204.

generally describes in the Amended Complaint as a conspiracy to prevent him from being allowed to use his property as he wished, specifically to construct an ADU on his property. Thompson alleges this goal was accomplished by illegally changing the HOA documents, concealing the changes, and taking steps to prevent him from being able to either build the ADU or recover on a title insurance claim.

### 1. 42 U.S.C § 1983

Although it is not technically plead within the body of the First Amended Complaint, Thompson entitled the document "Title 42 Section 1983, 1985, 1986, 1988 Civil Rights Complaint with Alternative Pleading as Civil RICO Act Violations." Thompson does not directly state that he did, or intended to, bring federal civil rights claims, or a claim of conspiracy to violate federal civil rights, against Armstrong, so it is unclear to the Court whether such claims exist.[2] Nevertheless, even if the Amended Complaint is construed liberally to incorporate such allegations, Thompson's civil rights claims are barred by the statute of limitations.

The statute of limitations for actions brought under 42 U.S.C. § 1983 is

---

[2] The Court notes that Thompson would not be able to bring a claim under 42 U.S.C. § 1985, as such claims require a showing of racial or class-based animus, which has not been alleged. *See Arres v. City of Fresno*, 2011 U.S. Dist. LEXIS 10425, * 28-29 (E.D. Cal. January 26, 2011). In the absence of a § 1985 claim, Thompson cannot maintain a claim under 42 U.S.C. § 1986. *Brown v. Contra Costa Cnty.*, 2012 U.S. Dist. Lexis 145431, * 28 (N.D. Cal. October 9, 2012).

determined by looking to the forum state for the statute of limitations applicable to personal injury cases. *Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004). Accrual of a civil rights claim is determined by federal law. *Maldonado*, 370 F.3d at 955. A federal civil rights claim "accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Maldonado*, 370 F.3d at 955 (citation omitted). In Montana, the statute of limitations for personal injury actions is three years. Mont. Code Ann. § 27-2-204. Accordingly, Thompson had three years after he learned of, or had reason to know of, the injury which forms the basis of any civil rights claim under 42 U.S.C. § 1983.

Thompson had actual knowledge in March 2012 that Armstrong was refusing to corroborate or confirm the information Thompson sought, namely that Armstrong had earlier confirmed that Thompson's property was zoned R-2 and that Armstrong issued a second address for the property on that basis. The most recent conduct that can be reasonably construed as implicating Armstrong is his alleged communication with Scott Blando of US Bank in April 2012, which resulted in Blando stating he could not locate a check that would evidence Thompson's purchase of the second address from Armstrong. Because Thompson failed to bring his § 1983 claims against Armstrong within three years of April 2012, those claims are barred as a matter of law.

Thompson argues that the conspiracy is "live" and ongoing, and that he has

adequately alleged that ongoing conspiracies and alleged retaliation are "last acts in furtherance" of the ADU conspiracy. Accordingly, he argues the Court should deny Armstrong's motion.[3] This theory is inconsistent with Ninth Circuit law, which holds that "injury and damage in a civil conspiracy flow from the overt acts, not from 'the mere continuance of a conspiracy.'" *Gibson v. U.S.*, 781 F.2d 1334, 1340 (9th Cir. 1984) (citing *Kadar Corp. v. Milbury*, 549 F.2d 230, 234 (1st Cir. 1977)). Accordingly, "the cause of action runs separately from each overt act that is alleged to cause damage to the plaintiff." *Gibson*, 781 F.2d at 1340. As a result, "separate conspiracies may not be characterized as a single grand conspiracy for procedural advantage." *Gibson*, 781 F.2d at 1340 (citing *Fitzgerald v. Seamans*, 553 F.2d 220, 240 (D.C. Cir. 1977)).

The conspiracy Thompson alleges against Armstrong is that he joined the ADU conspiracy when he refused to agree with Thompson's contention that Armstrong had earlier confirmed the zoning of the property with the City of Bozeman and issued a second address. Thompson alleges Armstrong acted in furtherance of the conspiracy by allegedly encouraging the United States Postal Service and US Bank to "not find" evidence which would support Thompson's

---

[3] Thompson devotes much of his response to arguing that Gallatin County may be a Defendant at a later date and challenging the propriety of Armstrong's counsel representing him. These are not issues before the Court and will not be addressed.

13

theories. All of Armstrong's conduct ended in 2012, and all of Armstrong's conduct was known, or reasonably should have been discovered, by Thompson at that time. To the extent Thompson has alleged Armstrong's conduct was part of a larger conspiracy, there is just a continuation of the effects of any conspiracy attributable to Armstrong after 2012, when he last committed any overt acts in furtherance of the conspiracy. Accordingly, Thompson was required to bring his § 1983 conspiracy claims by April 2015 at the latest; because he did not, his claims are barred. As Thompson cannot proceed on his § 1983 claims, any claim for attorney fees under 42 U.S.C. § 1988 is similarly precluded.

### 2. RICO Conspiracy

Thompson alleges that his conspiracy claim is alternately plead as a RICO claim. Armstrong argues any possible RICO claim is barred by the statute of limitations.

The Racketeer Influenced and Corrupt Organizations Act authorizes a civil action for anyone who is injured in his business or property by a violation of RICO's criminal provisions. 18 U.S.C. § 1964(c). To establish a RICO claim, a plaintiff must show "(1) conduct (2) of an 'enterprise' (3) through a 'pattern' (4) of racketeering activity (or 'predicate acts') (5) causing injury to the plaintiff's 'business or property.'" *Tanaka v. First Haw. Bank*, 104 F.Supp.2d 1243, 1245 (D. Haw. 2000).

14

The statute of limitations for bringing a RICO claim is four years. *Rotella v. Wood*, 528 U.S. 549, 552 (2000). The Ninth Circuit follows the two-part "injury discovery rule," which provides that "the civil RICO limitations period 'begins to run when a plaintiff knows or should know of the injury that underlies his cause of action.'" *Grimmett v. Wood*, 75 F.3d 506, 510 (9th Cir. 1996) (citing *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 220 (4th Cir. 1987)). "The plaintiff need not discover that the injury is part of a 'pattern of racketeering' for the period to begin to run." *Grimmet*, 75 F.3d at 510 (citing *McCool v. Strata Oil Co.*, 972 F.2d 1452, 1465 (7th Cir. 1992)).

Additionally, under the second, "separate accrual rule" of the injury discovery rule, "a new cause of action accrues for each new and independent injury, even if the RICO violation causing the injury happened more than four years before." *Grimmett*, 75 F.3d at 510 (citing *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1103 (2nd Cir. 1988)). For the statute of limitations to restart, there must be an action which is a "new and independent act that is not merely a reaffirmation of a previous act" and that act "must inflict new and accumulating injury on the plaintiff." *Grimmett*, 75 F.3d at 513. A continuation of an allegedly fraudulent scheme does not restart the statute of limitations. *Lockwood v. Sheppard, Mullin, Richter & Hampton, LLP*, 2009 U.S. Dist. LEXIS 133046, *13 (C.D. Cal. Nov. 24, 2009).

Thompson alleges Armstrong is part of a conspiracy to commit fraud, resulting in his inability to build an ADU basement apartment on his property. The last overt act he alleges against Armstrong took place, at the latest, in April 2012, when Armstrong allegedly was involved in persuading US Bank to "not find" a check which Thompson believes would evidence his purchase of a second address for the property. Thompson alleges that if the check had been located, it would support his claim that Armstrong had issued a second address for the property after confirming with the City of Bozeman that the property was zoned R-2 and thus able to have an ADU. Even assuming that is true, Armstrong's conduct was completed at that time and Thompson knew that Armstrong did not support Thompson's version of events. In April 2012, Thompson knew the United States Postal Service claimed to not have a record of the second address and that US Bank claimed to not have any record of the check paid by Thompson for the second address. At that point, his RICO conspiracy claim against Armstrong was both discovered and accrued under the injury discovery rule, and the four-year statute of limitations began to run. Accordingly, Thompson should have filed his RICO claim against Armstrong by April 2016 at the latest.

Thompson argues that the RICO statute of limitations should be equitably tolled because the alleged co-conspirators kept him from finding information which would be helpful to his assertion that he should be able to build his

16

basement apartment.[4] Equitable tolling, whether it is called fraudulent concealment or equitable estoppel, only applies when "the plaintiff shows that he neither knew, nor in the exercise of due diligence, could reasonably have known of the offense." *Tanaka*, 104 F.Supp.2d at 1252 (citing *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 195 (1997)). To succeed on a claim of equitable estoppel, or fraudulent concealment, Thompson must show: "(1) knowledge of the true facts by the party to be estopped, (2) intent to induce reliance or actions giving rise to a belief of that intent, (3) ignorance of the true facts by the relying party, and (4) detrimental reliance." *Estate of Amaro v. City of Oakland*, 653 F.3d 808, 813 (9th Cir. 2011) (citing *Bolt v. U.S.*, 944 F.2d 603, 609 (9th Cir. 1991)). When the party against whom the estoppel is sought is a government actor, the plaintiff must show "affirmative misconduct (not mere negligence) and a serious injustice outweighing the damage to the public interest of estopping the government." *Estate of Amaro*, 653 F.3d at 813 (citing *Bolt*, 944 F.2d at 609). In a case alleging fraud, there must be allegations of ". . . 'active conduct by a defendant, *above and beyond the wrongdoing upon which the plaintiff's claim is filed*, to prevent the plaintiff from

---

[4] Thompson also alleges that he filed a claim against Armstrong on April 25, 2016, which is the date he filed an answer in the Cattail Creek litigation. (Doc. 87 at 27-28; Doc. 9-12 at 49). However, Armstrong, while discussed in Thompson's state court filings, was not a party to that litigation and so that filing date is irrelevant to establish the filing date for this case.

suing in time'. . . . Otherwise there would always be tolling in a case alleging fraud." *Tanaka*, 104 F.Supp.2d at 1253 (emphasis added) (citing *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1177 (9th Cir. 2000)).

Thompson had actual knowledge in March and April 2012 that Armstrong, whom he believed would support his claim of being able to build an apartment ADU, was in fact unwilling to state in writing that he had confirmed the zoning of the property and issued a second address for Thompson. Thompson argues that Armstrong and others withheld information which would have been helpful to him, which forms the basis of his claims against Armstrong. This conduct was not concealed from Thompson; to the contrary, the "concealing" of the information is the conduct Armstrong complains of, and of which he was aware in March and April 2012.

To the extent Armstrong's conduct contributed to Thompson's inability to convince the City of Bozeman to allow him to build the basement apartment, Thompson had actual knowledge of the conduct and he was damaged at that time; accordingly, equitable tolling does not save his RICO claim. Unlike a situation in which the alleged bad actor conceals the injury, thus lulling the plaintiff into sleeping on his rights, the fraud alleged by Thompson is the refusal by Armstrong to support him and Armstrong's alleged encouragement of the United States Postal Service and US Bank to similarly refuse to help Thompson in his efforts to

establish the date of a second address being assigned to the property. Thompson knew none of those persons or entities would assist him by April 2012 at the latest. As Thompson cannot show that Armstrong fraudulently concealed his alleged bad acts, equitable tolling does not apply.

### B. Dismissal with Prejudice

A pro se plaintiff must be given leave to amend unless it is "absolutely clear that the deficiencies of the complaint cannot be cured by amendment." *Weilburg v. Shapiro*, 488 F.3d 1202, 1205 (9th Cir. 2007). Although leave to amend is liberally granted, dismissal with prejudice is appropriate where amendment would be futile. *Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015). Here, Thompson has already had one opportunity to amend his Complaint. The Court concludes that the pleading deficiencies set forth above cannot be cured by the allegation of additional facts, and it would be futile to permit Thompson to file a Second Amended Complaint as to Armstrong. Because amendment would be futile, Thompson's claims against Armstrong should be dismissed with prejudice pursuant to Rule 12(b)(6) on the ground that his claims are barred by the applicable statutes of limitation. Having so concluded, the Court need not address Armstrong's arguments that Thompson's claims should be dismissed because he fails to plead facts establishing the essential elements of his claims.

/ / /

## IV. Conclusion

For the reasons explained above, the Court concludes that the Amended Complaint fails to state a claim for relief against Armstrong. Accordingly,

IT IS RECOMMENDED that the Armstrong's Motion to Dismiss with Prejudice Pursuant to Rule 12(b)(6), F.R.Civ.P. (Doc. 36) be GRANTED, and Thompson's claims against him be dismissed with prejudice.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived.

DATED this 27th day of March, 2020.

_____
Kathleen L. DeSoto
United States Magistrate Judge