IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| PETER THOMPSON, | CV 18–75–BU–BMM–KLD |
| Plaintiff, | |
| v. | **FINDINGS AND RECOMMENDATION** |
| CITY OF BOZEMAN, a Montana Municipal Corporation, et al., | |
| Defendants. | |

This matter is before the Court on Defendants Intrinsik Architecture, Inc., Tad Tsukamoto, and Allison Gilley's (collectively "Intrinsik Defendants") Rule 12(b)(6) Motion to Dismiss (Doc. 43). For the reasons stated below, the Court recommends the motion be granted as to all claims against the Intrinsik Defendants.

## I.    Background

On November 30, 2018, Plaintiff Peter Thompson ("Thompson") filed an 18-page Complaint (with an additional 102 pages of attachments) alleging various constitutional violations and torts against numerous defendants. (Doc. 1). On January 21, 2019, Thompson, who is appearing pro se in this action, moved the Court to vacate the previously scheduled Preliminary Pretrial Conference and

extend the time for service, stating that he needed additional time to file and serve an amended complaint intended to improve the clarity of his pleading and ensure the appropriate parties were named.  (Doc. 7).  The Court granted this motion, and allowed Thompson until March 14, 2019 to effectuate service on all Defendants.  (Doc. 8).  On March 14, 2019, Thompson filed his Amended Complaint, consisting of 104 pages and an additional 164 pages of exhibits.  (Doc. 9).  Summons were issued on March 15, 2019.

Although Thompson's Amended Complaint is lengthy and confusing, it appears that the gravamen of his issues with the Intrinsik Defendants is related to their involvement with the Cattail Creek Community Association's ("CCCA") efforts to amend covenants which resulted in Thompson being unable to build a basement apartment on his property.  Thompson alleges the Intrinsik Defendants conspired with a number of other co-Defendants to fraudulently interfere with his ability to build on his property as he wished.

The CCCA is the Homeowners' Association for the Cattail Creek Subdivision, Phases I, II, and III in Gallatin County, Montana.  In 2008, Thompson purchased a lot from Richard Embry in Cattail Creek Phase II, on which he intended to build a home for himself and his family, with a basement apartment.  Thompson's understanding at the time he purchased the lot from Richard Embry was that the lot was zoned R-2, which would allow him to build a separate

basement apartment contained within the home he planned to build on the lot.

On July 2, 2007, the CCCA's apparent predecessor, the Cattail Creek Homeowner's Association, sent a letter to all homeowners in the subdivision. (Doc. 9-8). The letter discussed how having three separate homeowners' association ("HOA") boards and three separate covenant documents (for the three phases of the subdivision) was unwieldy, and requested the property owners to vote on consolidation of the phase HOA boards into one board and combination of the covenant documents with some modifications of the existing documents. Thompson alleges that sometime between late 2007 and 2008, Susan Swimley met with members of the three separate HOA boards to conspire to develop a system or enterprise that could be used to defraud property owners within the Cattail Creek Subdivision of their right to use their property in a number of ways, including accessory dwelling units (ADUs). This was allegedly accomplished by misleading the subdivision homeowners about the true intent of the change to the covenant documents, including removing the design regulations from the covenants. Swimley allegedly provided the document templates which were used by the board members.

Thompson further alleges that Swimley had "conspiratorial meetings" with employees or principals of Intrinsik Architecture for the purpose of putting together a conspiracy to develop an enterprise to defraud people of their property

rights and to conceal the illegal alterations of the HOA documents, which resulted in the loss of certain property rights. (Doc. 9 at ¶ ¶ 82 and 84). In January 2008, Thompson exchanged several emails with Rob Pertzborn and Allison Gilley of Intrinsik, in which they discussed the upcoming changes in the covenants. (Doc 9-12 at 5). Thompson told Gilley that a number of current property owners felt their lots should be zoned R-2, and that the issue needed attention from the HOA and from the City of Bozeman Planning Department. (Doc. 9-12 at 5-6).

In January 2008, the homeowners were provided ballots asking them to approve amendments to the covenants for the subdivision. The ballots were counted at a meeting on March 26, 2008, and ultimately the Amended and Restated Covenants for Cattail Creek Phases 1, 2, and 3, Design Review Regulations for Phases 1, 2, and 3, and Bylaws for the Cattail Creek Community Association Phases 1, 2, and 3 were approved by a 75% vote. Notably, the ballots were sent prior to Thompson purchasing his property but counted and operative after Thompson purchased his property.

In May 2008, the CCCA Board filed amended and restated covenants, which applied to all three phases of the Cattail Creek Subdivision. Thompson alleges the design regulations were separated out of the new, combined covenants in an attempt to conceal new restrictions on design regulations, including a limitation on the ability of homeowners to have ADUs within the confines of their structures, as

4

Thompson was planning to do.

Over the next four years, Thompson had a number of significant issues relating to the construction of his home, including disputes over completion requirements, the re-zoning of his home from R-2 to R-1, and the expiration of certificates of occupancy issued by the City of Bozeman.  CCCA had multiple communications with Thompson about his failure to complete the exterior of his home, including landscaping and the driveway, as well as about his occupancy of the home despite its incomplete status.

In July 2011, Thompson hired Art Wittich and his firm, Wittich Law P.C., to represent him in connection with his ongoing disputes with the CCCA and to determine if there was a possible title insurance claim.  Thompson understood that Art Wittich was going to initiate a title insurance claim and was going to investigate the liability of the City of Bozeman, Richard Embry, the CCCA and others for the errors in  the zoning documents and title encumbrances on his property.  (Doc. 9 at ¶ 119).  Thompson met with an employee of the Wittich Law Firm, Amanda Menasco, on July 18, 2011, and together they reviewed "title insurance documents, contacts with the HOA, HOA design review comments from Intrinsik Architecture, the seller etc."  (Doc. 9-12 at ¶ 85).  Thompson and his wife then met with Art Wittich on July 19, 2011, and they discussed "the folks involved and [the] perceived issues."  (Doc. 9-12 at ¶ 86).   At that time, Thompson

understood that significant issues included whether the amended covenants were lawful, and how those covenants were amended without his knowledge. (Doc. 9-12 at ¶ 86).

Art Wittich issued an opinion letter on March 6, 2012, which was many months after Thompson expected to receive the opinion. Thompson then determined to move forward without the help of the Wittich Law Firm. Thompson alleges, on information and belief, that the Intrinsik Defendants received legal advice from Art Wittich regarding information about the covenants, which was allegedly incorrect.

In his summary of his causes of actions, Thompson alleges that the Intrinsik Defendants joined a conspiracy to commit and/or conceal fraud. (Doc. 9 at ¶¶ 185-186). Thompson states that the conspiracy count is alternatively pled as a RICO conspiracy, and is actionable under the Montana Consumer Protection Act ("MCPA"). Thompson seeks compensatory, nominal, and punitive damages. (Doc. 9 at 88).

The Intrinsik Defendants move to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The Intrinsik Defendants argue that Thompson's claims are all barred by the applicable statutes of limitation.

/ / /

## II.   Legal Standards

### A. Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint will survive a motion to dismiss if it alleges facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. But if the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory," then dismissal under Rule 12(b)(6) is appropriate. *Mendiondo*, 521 F.3d at 1104.

In determining whether this standard is satisfied, the court must accept all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiffs. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). But the court is "not bound to accept as true a legal conclusion couched as a factual

allegation." *Twombly*, 550 U.S. at 555. "Nor is the court required to accept as true

allegations that are merely conclusory, unwarranted deductions of fact, or

unreasonable inferences." *In re Gilead Sciences Securities Litigation*, 536 F.3d

1049, 1055 (9th Cir. 2008).  Assessing a claim's plausibility is a "context-specific

task that requires the reviewing court to draw on its judicial experience and

common sense." *Iqbal*, 129 S.Ct. at 1950.

As a general rule, "a district court may not consider any material beyond the

pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250

F.3d 668, 688 (9th Cir. 2001) (citation omitted).  However, a court may take

judicial notice of "matters of public record." *Lee*, 250 F.3d at 688-89.

Specifically, a court may take judicial notice of other state or federal court

proceedings. *Duckett v. Godinez*, 67 F.3d 734, 741 (9th Cir. 1995), and *Emrich v.

Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988).  *See also Burbank-

Glendale-Pasadena Airport Authority v. City of Burbank*, 136 F.3d 1360, 1364 (9th

Cir. 1998) (allowing judicial notice of pleadings in other cases).

## B. Pro se Pleadings

Because Thompson is proceeding pro se the Court must construe his

pleading liberally, and "however inartfully pleaded, [it] must be held to less

stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v.

Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). *See also Neitzke v. Williams*,

490 U.S. 319, 330 n.9 (1989).   However, "pro se litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record." *Jacobsen v. Filler,* 790 F.2d 1362, 1364 (9th Cir. 1986).  This means that "[p]ro se litigants must follow the same rules of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d 565, 576 (9th Cir. 1987).  Nevertheless, in the motion to dismiss context, courts are to construe pro se documents liberally and give pro se litigants the benefit of any doubt.  *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted).

In view of the required liberal construction, "a district court should grant leave to amend even if no request to amend the pleading was made, <u>unless</u> it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (emphasis added) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

## III.   Discussion

### A. State Law Claims

Construing the Amended Complaint liberally, it appears Thompson has potentially alleged two state law claims against the Intrinsik Defendants: fraud and violation of the MCPA.  The Intrinsik Defendants move to dismiss Thompson's state claims on the ground that he failed to bring them within the applicable

statutes of limitations.[1]  The Court agrees.

### 1. Fraud

Thompson alleges the Intrinsik Defendants acted fraudulently, or abetted others who acted fraudulently, in their participation in the creation of HOA documents that allegedly robbed homeowners of their right to develop their property.

The statute of limitations for fraud is two years.  Mont. Code Ann. § 27-2-203.  The cause of action accrues when the aggrieved party discovers "the facts constituting the fraud or mistake."  Mont. Code Ann. § 27-2-203.  A claim accrues "when all the elements of the claim or cause exist or have occurred, [and] the right to maintain an action on the claim or cause is complete. . . ."  Mont. Code Ann. § 27-2-102(1)(a).  "Lack of knowledge of a claim does not postpone the beginning of the period of limitation."  *Norbeck v. Flathead Cty.*, 438 P.3d 811, ¶ 18 (Mont. 2019); Mont. Code Ann. § 27-2-102(2).  "[W]hether there has been a 'discovery' of facts sufficient to start the running of the statute of limitations is a question of law."  *Holman v. Hansen*, 773 P.2d 1200, 1203 (Mont. 1989).

Thompson alleges the Intrinsik Defendants either committed actual fraud, or abetted others who did, by drafting or helping draft amended covenants which

---

[1] When a federal court exercises pendent jurisdiction over state law claims, it applies substantive state law. *Shannon-Vail Five, Inc. v. Bunch,* 270 F.3d 1207, 1210 (9th Cir. 2001).

were later enacted and resulted in Thompson not being able to develop his property as he wished.  All of the conduct the Intrinsik Defendants are accused of occurred in 2007 and 2008, when they worked with the HOA to amend the covenants and when Allison Gilley and Rob Pertzborn communicated with Thompson about zoning and covenant issues.  At that time, Thompson was on notice, or in actual possession, of facts which put him on inquiry notice which, if he followed such inquiry, would have led him to the facts of the alleged fraud. *See Holman*, 773 P.2d at 1203.

Even if Thompson claims to not have had information or notice about the facts surrounding the alleged fraud in 2008, it cannot reasonably be disputed that he had sufficient information in July 2011, when he hired Art Wittich to investigate the liability of the CCCA, among others, related to zoning documents and title encumbrances resulting in his inability to develop his property as he chose.  At that time, Thompson's claim of fraud against the Intrinsik Defendants had been discovered and had accrued: he knew the documents were different than he believed when he purchased the land and he knew he had been harmed by the change in documents.  He also knew the Intrinsik Defendants had worked with the HOA to change the documents and had discussed potential changes in the covenants with the Intrinsik Defendants.  At that time, Thompson had the right to bring a claim of fraud against the Intrinsik Defendants, and he did not do so by

July 2013, or within two years of the latest date of discovery and accrual.

Thompson claims that because he invoked equitable tolling in the body of the Amended Complaint, the statute of limitations should be tolled.  However, the Montana Supreme Court has held that, in the context of a fraud claim, a party is entitled to toll the statute of limitations only when there has been "the employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquisition of information disclosing a right of action."  *Holman*, 773 P.2d at 1203 (citing *Monroe v. Harper*, 518 P.2d 788, 790 (Mont. 1974)).

Contrary to Thompson's assertion, he cannot rely on tolling to resurrect his fraud claim.  First, Thompson had actual knowledge of the Intrinsik Defendants' role in working with the HOA Board to amend the covenants; he had communications with the Intrinsik Defendants in which they discussed the potential changes.  Second, there is no evidence or even allegation that the Intrinsik Defendants took action that could be considered "affirmative conduct . . . calculated to obscure the existence of the cause of action" as required under Montana law.  *Holman*, 773 P.2d at 1203.  To the contrary, Thompson knew he had potential claims against numerous individuals and entities when he hired Art Wittich in 2011 to investigate those claims.  There is no basis to invoke the tolling of the statute of limitations as to Thompson's claim of fraud.  Because Thompson failed to bring his fraud claim within the statute of limitations, it is barred as a

matter of law.

### 2. MCPA

Thompson does not specifically allege facts giving rise to a claim under the MCPA; he simply states that the fraud claim may be actionable as a claim under the MCPA as well.

The statute of limitations for a claim for a liability created by statute, such as the MCPA, is two years.  Mont. Code Ann. § 27-2-211(1)(c).  "[I]f a defendant 'has taken action which prevents the injured party from discovering [an] injury or its cause,' the limitations period does not begin 'until the facts constituting the claim have been discovered or, in the exercise of due diligence, should have been discovered by the injured party.'"  *Hein v. Sott*, 353 P.3d 494, ¶ 13 (Mont. 2015) (citing Mont. Code Ann. § 27-2-102(3)(b)).

As noted above, Thompson had actual knowledge that the covenants had been changed, restricting his right to use his property as he wished, and was on inquiry notice, at the very least, of the facts which resulted in the property restriction in 2008.  He knew the Intrinsik Defendants had participated in the drafting of the amended covenants and were involved with the HOA Board throughout that process.  In 2011, he went to Art Wittich for the specific purpose of investigating and evaluating claims he had arising from the changed covenants and the resulting restrictions on his property.  At the very latest, he had discovered,

or using due diligence, should have discovered, the facts giving rise to his claim under the MCPA by July 2011, and so was required to bring an MCPA claim by 2013.  Because he failed to do so, this claim is barred.

**B. Federal Law Claims**

Although Thompson does not specifically state so in his summary of claims against the Intrinsik Defendants in his Amended Complaint, he alleges in his response brief that the Intrinsik Defendants are part of the "ADU conspiracy," which he generally describes in the Amended Complaint as a conspiracy to prevent him from being allowed to use his property as he wished, specifically to construct an ADU on his property.  Thompson alleges this goal was accomplished by illegally changing the HOA documents, concealing the changes, and taking steps to prevent him from being able to either build the ADU or recover on a title insurance claim.

**1.  42 U.S.C § 1983**

Although it is not technically plead within the body of the First Amended Complaint, Thompson entitled the document "Title 42 Section 1983, 1985, 1986, 1988 Civil Rights Complaint with Alternative Pleading as Civil RICO Act Violations."  Thompson does not allege that he did, or intended to, bring federal civil rights claims, or a claim of conspiracy to violate federal civil rights, against

the Intrinsik Defendants, so it is unclear to the Court whether such claims exist.[2]

Nevertheless, even if the Amended Complaint is construed liberally to incorporate

such allegations, Thompson's civil rights claims are barred by the statute of

limitations.[3]

The statute of limitations for actions brought under 42 U.S.C. § 1983 is

determined by looking to the forum state for the statute of limitations applicable to

personal injury cases. *Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004).

Accrual of a civil rights claim is determined by federal law. *Maldonado*, 370 F.3d

at 955. A federal civil rights claim "accrues when the plaintiff knows or has

reason to know of the injury which is the basis of the action." *Maldonado*, 370

F.3d at 955 (citation omitted). In Montana, the statute of limitations for personal

injury actions is three years. Mont. Code Ann. § 27-2-204. Accordingly,

Thompson had three years after he learned of, or had reason to know of, the injury

which forms the basis of any civil rights claim under 42 U.S.C. § 1983.

---

[2] The Court notes that Thompson would not be able to bring a claim under 42 U.S.C. § 1985, as such claims require a showing of racial or class-based animus, which has not been alleged. *See Arres v. City of Fresno*, 2011 U.S. Dist. LEXIS 10425, * 28-29 (E.D. Cal. January 26, 2011). In the absence of a § 1985 claim, Thompson cannot maintain a claim under 42 U.S.C. § 1986. *Brown v. Contra Costa Cnty.*, 2012 U.S. Dist. Lexis 145431, * 28 (N.D. Cal. October 9, 2012).

[3] Although not directly raised by the Intrinsik Defendants, likely because they are not state actors, the Court will analyze any potential federal civil rights claims as they have a shorter statute of limitations than RICO.

As discussed above, Thompson had actual knowledge, at the latest, by July 2011 when he sought legal counsel to assist him in bringing claims against a variety of people for the damage he allegedly suffered as a result of the original and revised HOA documents.  Because he failed to bring his § 1983 claims against the Intrinsik Defendants within three years, those claims are barred as a matter of law.

Thompson appears to argue that the Intrinsik Defendants are responsible for actions long after their involvement, apparently on the theory that once they allegedly joined the conspiracy, the Intrinsik Defendants are forever bound by the continuing effects of the changed covenants.  This theory is inconsistent with Ninth Circuit law, which holds that "injury and damage in a civil conspiracy flow from the overt acts, not from 'the mere continuance of a conspiracy.'"  *Gibson v. U.S.*, 781 F.2d 1334, 1340 (9th Cir. 1984) (citing *Kadar Corp. v. Milbury*, 549 F.2d 230, 234 (1st Cir. 1977)).  Accordingly, "the cause of action runs separately from each overt act that is alleged to cause damage to the plaintiff."  *Gibson*, 781 F.2d at 1340.  As a result, "separate conspiracies may not be characterized as a single grand conspiracy for procedural advantage."  *Gibson*, 781 F.2d at 1340 (citing *Fitzgerald v. Seamans*, 553 F.2d 220, 240 (D.C. Cir. 1977)).

The conspiracy Thompson alleges against the Intrinsik Defendants is that they assisted the HOA in revising covenants and the changed covenants had the

practical effect of limiting his ability to develop his property as he wanted.  The

actions of the Intrinsik Defendants ended in 2008, when they allegedly met and

conspired with the HOA Board to change the covenants and allegedly met with Art

Wittich to discuss the changes.  To the extent Thompson has alleged the Intrinsik

Defendants' acts were part of a larger conspiracy, there is just a continuation of the

effects of any conspiracy attributable to the Intrinsik Defendants after 2008 and

discovered at the latest by July 2011.  Accordingly, Thompson was required to

bring his § 1983 conspiracy claims by July 2014 at the latest; because he did not,

his claims are barred.  As Thompson cannot proceed on his § 1983 claims, any

claim for attorney fees under 42 U.S.C. § 1988 is similarly precluded.

### 2.  RICO Conspiracy

The Racketeer Influenced and Corrupt Organizations Act authorizes a civil

action for anyone who is injured in his business or property by a violation of

RICO's criminal provisions.  18 U.S.C. § 1964(c).  To establish a RICO claim, a

plaintiff must show "(1) conduct (2) of an 'enterprise' (3) through a 'pattern' (4) of

racketeering activity (or 'predicate acts') (5) causing injury to the plaintiff's

'business or property.'"  *Tanaka v. First Haw. Bank*, 104 F.Supp.2d 1243, 1245

(D. Haw. 2000).

The statute of limitations for bringing a RICO claim is four years.  *Rotella v.

Wood*, 528 U.S. 549, 552 (2000).  The Ninth Circuit follows the two-part "injury

discovery rule," which provides that "the civil RICO limitations period 'begins to run when a plaintiff knows or should know of the injury that underlies his cause of action.'" *Grimmett v. Wood*, 75 F.3d 506, 510 (9th Cir. 1996) (citing *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 220 (4th Cir. 1987)). "The plaintiff need not discover that the injury is part of a 'pattern of racketeering' for the period to begin to run." *Grimmett*, 75 F.3d at 510 (citing *McCool v. Strata Oil Co.*, 972 F.2d 1452, 1465 (7th Cir. 1992)).

Additionally, under the second, "separate accrual rule" of the injury discovery rule, "a new cause of action accrues for each new and independent injury, even if the RICO violation causing the injury happened more than four years before." *Grimmett*, 75 F.3d at 510 (citing *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1103 (2nd Cir. 1988)).  For the statute of limitations to restart, there must be an action which is a "new and independent act that is not merely a reaffirmation of a previous act" and that act "must inflict new and accumulating injury on the plaintiff." *Grimmett*, 75 F.3d at 513.  A continuation of an allegedly fraudulent scheme does not restart the statute of limitations.  *Lockwood v. Sheppard, Mullin, Richter & Hampton, LLP*, 2009 U.S. Dist. LEXIS 133046, *13 (C.D. Cal. Nov. 24, 2009).

Thompson contends that the Intrinsik Defendants are part of a RICO conspiracy to commit fraud, resulting in his inability to build an ADU on his

property.  The last overt act he alleges against the Intrinsik Defendants was in 2008, when the covenant documents were revised and when the Intrinsik Defendants allegedly met with Art Wittich to discuss problems with information about the proposed revised covenants.  By July 2011, Thompson was seeking legal counsel to bring claims against whomever might be responsible for changing the documents and impairing his ability to develop his property.  At that point, his RICO conspiracy claim against the Intrinsik Defendants was both discovered and accrued under the injury discovery rule, and the four-year statute of limitations began to run.[4]  Accordingly, Thompson should have filed his RICO claim against the Intrinsik Defendants by July 2015 at the latest.

Thompson argues that the RICO statute of limitations should be equitably tolled.  Equitable tolling, whether it is called fraudulent concealment or equitable estoppel, only applies when "the plaintiff shows that he neither knew, nor in the exercise of due diligence, could reasonably have known of the offense."  *Tanaka*, 104 F.Supp.2d at 1252 (citing *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 195 (1997)).  In a case alleging fraud, there must be allegations of ". . . 'active conduct by a defendant, *above and beyond the wrongdoing upon which the plaintiff's claim*

---

[4]Thompson appears to argue that he has not sustained any damage to his property or business, and thus his RICO claim has not yet accrued.  This is not only contrary to his lengthy recitation in the Amended Complaint, but also calls into question the basis of this entire lawsuit.

*is filed*, to prevent the plaintiff from suing in time'. . . . Otherwise there would always be tolling in a case alleging fraud." *Tanaka*, 104 F.Supp.2d at 1253 (emphasis added) (citing *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1177 (9th Cir. 2000)).

Thompson had actual knowledge in July 2011 of the issues with the development of his property, and knew he had potential claims against any person or entity involved with the drafting of the HOA documents; accordingly, equitable tolling does not save his RICO claim.  Unlike a situation in which the alleged bad actor conceals the injury, thus lulling the plaintiff into sleeping on his rights, the fraud alleged by Thompson is the creation of the original CCCA Articles of Incorporation and subsequent revision of covenant documents, which Thompson undisputedly knew about, or was on inquiry notice of, by July 2011 at the latest. Because Thompson cannot show that the Intrinsik Defendants fraudulently concealed their alleged bad acts, equitable tolling does not apply.

Thompson also argues that his answer and affidavit in state court litigation against the CCCA effectively tolls the statute of limitation against the Intrinsik Defendants because he discusses the same conduct which forms the basis of his claims in this case.  (Doc. 9-12).  However, the Intrinsik Defendants were not served as parties in that case, and no claims were made against them in that case. Merely mentioning a party in a separate case does not toll the statute of limitations.

Additionally, as noted by the Intrinsik Defendants, even if the affidavit is considered to be a claim against them, it was filed on April 25, 2016, which is still after the four-year RICO statute of limitations had run.  Even under this theory, Thompson did not bring his claim in a timely manner and it is barred.

### C. Dismissal with Prejudice

A pro se plaintiff must be given leave to amend unless it is "absolutely clear that the deficiencies of the complaint cannot be cured by amendment." *Weilburg v. Shapiro*, 488 F.3d 1202, 1205 (9th Cir. 2007).  Although leave to amend is liberally granted, dismissal with prejudice is appropriate where amendment would be futile. *Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015). Here, Thompson has already had one opportunity to amend his Complaint. The Court concludes that the pleading deficiencies set forth above cannot be cured by the allegation of additional facts, and it would be futile to permit Thompson to file a Second Amended Complaint as to the Intrinsik Defendants. Because amendment would be futile, Thompson's claims against the Intrinsik Defendants should be dismissed with prejudice pursuant to Rule 12(b)(6) on the ground that his claims are barred by the applicable statutes of limitation.

### IV.   Conclusion

For the reasons explained above, the Court concludes that the Amended Complaint fails to state a claim for relief against the Intrinsik Defendants.

Accordingly,

IT IS RECOMMENDED that the Intrinsik Defendants' Rule 12(b)(6) Motion to Dismiss the Amended Complaint be GRANTED, and Thompson's claims against them be dismissed with prejudice.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived.

DATED this 30th day of March, 2020.

Kathleen L. DeSoto
United States Magistrate Judge