IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| PETER THOMPSON,<br><br>　　　　　Plaintiff,<br><br>v.<br><br><br><br>CITY OF BOZEMAN, a Montana Municipal Corporation, et al.,<br><br>　　　　　Defendants. | CV 18–75–BU–BMM–KLD<br><br><br><br>ORDER |

This matter is before the Court on Plaintiff Peter Thompson's ("Thompson") Motion for Declaratory Judgment Regarding Cattail Creek Community Association's ("CCCA") Legal Capacity. (Doc. 137.) For the following reasons, this Motion is denied.

## I.   Background

Thompson filed the instant action against numerous Defendants, alleging various constitutional violations and torts. (Doc. 1). He subsequently filed his

104-page Amended Complaint, in which he again alleged various constitutional violations and torts, and which he supported with 164 pages of exhibits. (Doc. 9). Thompson's Amended Complaint contains lengthy allegations against the Cattail Creek Defendants,[1] most of which stem from Thompson's purchase of property in the Cattail Creek Subdivision Phase II and his involvement with the CCCA subsequent to that purchase.

In summary, Thompson alleges that the CCCA conspired with other Defendants to prevent Thompson from using his property by illegally and fraudulently forming as a Montana non-profit corporation and then modifying the CCCA bylaws with the use of mail-in ballots. Thompson alleges that on July 2, 2007, the CCCA's apparent predecessor, the Cattail Creek Homeowner's Association, sent a letter to homeowners in the three Phases of the subdivision to discuss the merger of the three, individual homeowners' association ("HOA") boards into one organization. (Doc. 9-8). The letter argued that having separate

---

[1] The "Cattail Creek Defendants" are the Cattail Creek Community Association, Cattail Creek Community Association(s) of Phase I, II, and III & of the 2008 Combined Covenant Association, Cattail Creek Community Association, Incorporated, At Your Service Cleaning & HOA Management, Inc., Jaymie Larsen, Sue Greeno, Katerina Freche, Angie Matsen, Jay Blaske, Neil Ramhorst, Joseph Sands, Peter Noreen, Randy Sullivan, Lola Jeffers, Sandi Rummel, Sandi Hamilton, Jeremy May, Tyler Powell, Melinda Maze-Talarico, Daniel Madison, Callie Miller, Sandy Feeney, Darrin Strosnider, Amy Hanson, John Hansen, Travis Munter, Sandy Sanders, and Rob Pertzborn, as listed in Thompson's Amended Complaint.

2

boards and separate covenant documents for each Phase was unwieldy, and it asked the homeowners to vote on consolidation of the phase HOA boards into one board and combination of the covenant documents with some modifications of the existing documents.

Thompson alleges the true intent of changing the documents was to defraud property owners of their rights to use their property in a number of ways, including being able to put accessory dwelling units ("ADUs") on their property. He alleges the proposed changes to the covenant documents were fraudulently concealed from the homeowners, and ultimately the creation of the new association, the CCCA, was fraudulent from the outset and its Articles of Incorporation were not legitimate. From that premise, he seeks a declaration from this Court that the CCCA lacked legal capacity to sue or be sued.[2] The Cattail Creek Defendants oppose this motion, arguing that the issue of legal capacity has been decided by the Montana state court system, and is thus barred by the doctrine of res judicata as well as collateral estoppel.

## II. Discussion

28 U.S.C. § 1738 requires federal courts to give full faith and credit to state

---

[2] As noted by the Cattail Creek Defendants in their response to Thompson's motion, Thompson's request to have the Court declare that the CCCA cannot be sued is confounding, given that Thompson himself sued the CCCA, not the other way around.

court judgments, and further requires federal courts to "'accept the rules chosen by the State from which the judgment is taken.'" *Noel v. Hall*, 341 F.3d 1148, 1166 (9th Cir. 2003), quoting *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 482 (1982). Accordingly, this Court applies Montana law to determine if either res judicata or collateral estoppel applies to Thompson's assertion that the CCCA lacks capacity to sue or be sued.

Res judicata, also known as claim preclusion, "bars the relitigation of a claim that the party has already had an opportunity to litigate." *Baltrusch v. Baltrusch*, 130 P.3d 1267, ¶ 15 (Mont. 2006), citing *Kullick v. Skyline Homeowners Assoc.*, 69 P.3d 225, ¶ 13 (Mont. 2003). Res judicata applies when a final judgment has been entered. *Baltrusch*, ¶ 15. In order for res judicata to bar a claim, the following elements must be met: (1) the parties or their privies are the same; (2) the subject matter of the present and past actions is the same; (3) the issues are the same, and relate to the same subject matter; and (4) the capacities of the parties are the same to the subject matter and the issues between them. *Wiser v. Mont. Bd. of Dentistry*, 251 P.3d 675, ¶ 9 (Mont. 2011) (citation omitted).

Issue preclusion, or collateral estoppel, "bars litigants from reopening all questions essential to the judgment which were determined by a prior judgment." *Baltrusch*, ¶ 18 (citing *Haines Pipeline Const. v. Montana Power*, 876 P.2d 632, 636 (Mont. 1994)). The elements of issue preclusion are: (1) the identical issue

raised was previously determined in a prior adjudication; (2) a final judgment on the merits was issued in the prior adjudication; (3) the party against whom collateral estoppel (issue preclusion) is now asserted was a party, or in privity with a party, to the prior adjudication; and (4) the party against whom issue preclusion is asserted had a full and fair opportunity to litigate any issues which may be barred. *Baltrusch*, ¶ 18.

The Cattail Creek Defendants argue that the issue of CCCA's validity was decided by the state district court, and later affirmed by the Montana Supreme Court, in *Cattail Creek Cmty. Ass'n. v. Thompson*, 450 P.3d 865 (Mont. 2019). Because Thompson had the opportunity to litigate the validity of the CCCA in the state case, the Cattail Creek Defendants assert that Thompson is precluded from seeking another determination of that issue in this case.

The *Cattail Creek* case was brought by the CCCA against Thompson in Montana state court, and it sought to enjoin Thompson from living in his home in the subdivision until the home was complete. *Cattail Creek*, ¶ 8. The suit also sought recovery of unpaid association dues and attorney fees. *Cattail Creek*, ¶ 8. After motion practice was concluded, the court held a three-day bench trial, and subsequently issued its Findings of Fact, Conclusions of Law and Order on April 23, 2018. (Doc. 144-1). The lower court noted that Thompson claimed the CCCA did not have standing to sue him, and specifically that the covenants did not give it

the authority to incorporate. (Doc. 144-1 at 19). The lower court found that "[n]othing in the Cattail Creek Phase II Covenants prevents the Association from incorporating." (Doc. 144-1 at 19). It further found that Thompson's contention that the CCCA was improperly formed was "without merit." (Doc. 144-1 at 12). The court ultimately enjoined Thompson to require him to complete construction on his home, with a removal provision if the work was not completed within 90 days, and awarded the CCCA its attorney fees and costs. (Doc. 144-1 at 26-27).

Thompson appealed, again alleging that the CCCA lacked standing to enforce the covenants because of irregularities in its incorporation and because of the 2008 amendments to the originally Phase-specific covenants. *Cattail Creek*, ¶ 11. In his filing to the Montana Supreme Court, Thompson argued that the CCCA's articles of incorporation were legally insufficient, and he specifically alleged that the corporate documents of the CCCA were forged, filed secretly without the knowledge of the homeowners, and filed fraudulently. (Doc. 144-3 at 23-24). The Montana Supreme Court agreed with the lower court, noting that nothing in the language of the covenants (whether the older Phase specific or newer 2008 covenants) precluded the incorporation of the CCCA, and that the remedies sought by the CCCA in that litigation were enforceable under both versions of the covenants as well. *Cattail Creek*, ¶ 12.

In the instant motion, Thompson argues the CCCA lacked the legal ability to

incorporate, and thus he requests the Court declare the CCCA lacks the ability to sue or be sued. The alleged irregularities, or inappropriate conduct, Thompson argues in this motion are the same issues he raised in the *Cattail Creek* litigation, namely that the CCCA's articles of incorporation were fraudulently filed without the knowledge of the homeowners or somehow forged without the consent of the homeowners. Thompson argued in *Cattail Creek* that the CCCA was improperly formed and thus did not have standing, or the legal ability, to prosecute its claims against him. He is precluded from relitigating those issues if the elements of either res judicata or collateral estoppel (claim preclusion or issue preclusion) are met. In this case, both are met.

Thompson's claim as to the legal validity of the CCCA is precluded by res judicata because (1) the parties are the same; (2) the subject matter of this case and the *Cattail Creek* case is the same (the standing and validity of the CCCA); (3) the issues are the same, and relate to the same subject matter (the alleged improprieties in the incorporation of the CCCA and the amendment to the Phase covenants); (4) the capacities of the parties are the same as to the subject matter and the issues between them; and (5) a final judgment has been entered against Thompson.

Thompson's motion to declare that the CCCA lacks legal capacity to sue or be sued is also barred by collateral estoppel, or issue preclusion, because (1) the identical issue was raised in the *Cattail Creek* litigation; (2) a final judgment was

issued on the merits in the *Cattail Creek* litigation; (3) Thompson was a party to the state-court litigation; and (4) Thompson was afforded a full and fair opportunity to litigate the issue of the CCCA's legal capacity.

In his reply, Thompson argues that the *Cattail Creek* litigation should be disregarded, as it is "the result of institutional corruption" and "evidences actual malice towards Thompson because the [Montana Supreme] Court disregarded the truth in their memorandum." Thompson argues because he contests the conclusions of the Montana Supreme Court, this Court should disregard it. He also notes that he filed a petition for writ of certiorari with the United States Supreme Court, which he believes makes the judgment non-final for the purposes of res judicata or collateral estoppel. Finally, Thompson claims that Montana Code Annotated § 27-2-407 authorizes him to "remove" his state claims to federal court without running afoul of the prohibitions of res judicata and collateral estoppel. None of Thompson's arguments has merit.

First, Thompson's incredulity at the conclusions of the lower court and the Montana Supreme Court notwithstanding, there is no indication that there is any "institutional corruption" or actual malice from the state judiciary directed toward Thompson. The state courts simply did not agree with his arguments, based on the law and the facts presented after a three-day bench trial and apparently significant motion practice.

Thompson's argument that the opinion in *Cattail Creek* is not a final judgment for res judicata and collateral estoppel purposes is similarly unavailing. A final judgment has preclusive effect, even while post-trial motions or appeals are pending. *Baltrusch*, ¶ 21. Of course, should the judgment be set aside by an appeal, it would cease to be final, and neither res judicata nor collateral estoppel would apply at that point. *Baltrusch*, ¶ 21. Thompson appealed the lower court's conclusions to the Montana Supreme Court, which not only affirmed the lower court's rulings, but also denied Thompson's subsequent Petition for Rehearing. *Cattail Creek Cmty. Ass'n. v. Thompson*, 2019 Mont. LEXIS 775 (Mont. 2019). Thompson notes that he has filed a petition for writ of certiorari with the United States Supreme Court, but there is no indication that certiorari has been granted. For these reasons, the rulings in *Cattail Creek* are entitled to preclusive effect, barring Thompson's claims that the CCCA lacks capacity to sue or be sued.

Finally, Thompson argues that Montana Code Annotated § 27-2-407 allows him to bring his otherwise barred claim that the CCCA lacks capacity to sue or be sued. However, Thompson overlooks the plain language of the statute, which states:

> If an action is commenced within the time limited for the action and a judgment is reversed on appeal without awarding a new trial **or the action is terminated in any other manner than by a voluntary discontinuance, a dismissal of the complaint for neglect to prosecute the action, *or a final judgment upon the merits*,** the plaintiff or, if the plaintiff dies and the cause of action survives, the

9

> plaintiff's representative may commence a new action for the same cause after the expiration of the time limited and within 1 year after a reversal or termination.

Mont. Code Ann. § 27-2-407 (emphasis and italics added).  By its own terms, this statute does not apply when the action is terminated by a final judgment on the merits, which is what occurred in the *Cattail Creek* litigation.  Thompson argues that he did not get a determination on the merits because the lower court's scheduling order prejudiced him and resulted in him not being able to present all his arguments.  Yet this issue, too, was considered by the Montana Supreme Court, which noted that the lower court did not act arbitrarily or without conscientious judgment when it considered but ultimately rejected Thompson's numerous objections to the scheduling order.  *Cattail Creek*, ¶ 16.

Quite simply, Thompson had a full and fair opportunity to litigate his claim that the CCCA lacked standing based on allegedly being illegally created, and he did not prevail on that argument.  The validity of the CCCA has been decided in the *Cattail Creek* litigation, and a final judgment entered.  Thompson's request that this Court declare that the CCCA lacks standing to sue or be sued is barred by res judicata and collateral estoppel.

### III.  Conclusion

For the foregoing reasons, Thompson's Motion for Declaratory Judgment

Regarding CCCA's Legal Capacity (Doc. 137) is **DENIED**. [3]

DATED this 1st day of September, 2020.

_____
Kathleen L. DeSoto
United States Magistrate Judge

---

[3] As noted by the Cattail Creek Defendants, Thompson did not plead a claim for declaratory judgment in his Amended Complaint, but instead has asked the Court to declare a fact. Accordingly, the Court has jurisdiction to enter this Order, as it is not dispositive of a pleaded claim.

11